UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**Richard W. DeOtte**, on behalf of himself and others similarly situated; **Yvette DeOtte**; **John Kelley**; **Alison Kelley**; **Braidwood Management Inc.**, on behalf of itself and others similarly situated,

Plaintiffs,

v.

**Alex M. Azar II**, in his official capacity as Secretary of Health and Human Services; **Steven T. Mnuchin**, in his official capacity as Secretary of the Treasury; **R. Alexander Acosta**, in his official capacity as Secretary of Labor; **United States of America**,

Defendants.

Case No. 4:18-cv-825-O

**FIRST AMENDED COMPLAINT—CLASS ACTION**

Federal regulations require health insurance to cover all FDA-approved contraceptive methods. *See* 45 C.F.R. § 147.130(a)(1)(iv); 29 C.F.R. § 2590.715–2713(a)(1)(iv); 26 C.F.R. § 54.9815-2713(a)(1)(iv). This "Contraceptive Mandate" violates the Religious Freedom Restoration Act because it substantially burdens the religious exercise of employers and individuals who object to contraception and abortifacients.

The defendants recently issued a final rule that would exempt these religious objectors from the Contraceptive Mandate. *See* Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 83 Fed. Reg. 57,536 (November 15, 2018) (attached as Exhibit 9). But two weeks ago,

a federal judge in Philadelphia issued a preliminary injunction against the enforcement of this final rule. *See Pennsylvania v. Trump*, No. 2:17-cv-04540-WB (E.D. Pa.), ECF No. 135 (attached as Exhibit 10); *id.*, ECF No. 136 (attached as Exhibit 11). Because of this nationwide injunction, the plaintiffs and their fellow class members remain subject to the requirements of the Contraceptive Mandate, and they seek an injunction against its enforcement.

## JURISDICTION AND VENUE

1. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

2. Venue is proper because a substantial part of the events giving rise to the claims occurred in this judicial district. *See* 28 U.S.C. § 1391(b)(2).

## PARTIES

3. Plaintiff Richard W. DeOtte resides in Tarrant County, Texas.

4. Plaintiff Yvette DeOtte resides in Tarrant County, Texas.

5. Plaintiff John Kelley resides in Tarrant County, Texas.

6. Plaintiff Alison Kelley resides in Tarrant County, Texas.

7. Plaintiff Braidwood Management Inc. is a for-profit, closely held corporation incorporated under the laws of Texas.

8. Defendant Alex M. Azar II is the U.S. Secretary of Health and Human Services. His office is located at 200 Independence Avenue SW, Washington, D.C. 20201. Secretary Azar is sued in his official capacity.

9. Defendant Steven T. Mnuchin is the U.S. Secretary of the Treasury. His office is located at 1500 Pennsylvania Avenue NW, Washington, D.C. 20220. Secretary Mnuchin is sued in his official capacity.

10. Defendant R. Alexander Acosta is the U.S. Secretary of Labor. His office is located at 200 Constitution Avenue NW, Washington, D.C. 20210. Secretary Acosta is sued in his official capacity.

11. Defendant United States of America is the federal government of the United States of America.

## THE CONTRACEPTIVE MANDATE

12. The Affordable Care Act requires group health plans and health insurance issuers to cover "preventive care" for women without any cost-sharing requirements such as deductibles or co-pays. *See* 42 U.S.C. § 300gg-13(a)(4) (attached as Exhibit 1). The statute empowers the Health Resources and Services Administration to determine the "preventive care" that health insurance plans must cover. *See id*.

13. In 2011, the Health Resources and Services Administration decided that all FDA-approved contraceptive methods must be covered as "preventive care" under the Affordable Care Act. This "Contraceptive Mandate" is codified at 45 C.F.R. § 147.130(a)(1)(iv), 29 C.F.R. § 2590.715–2713(a)(1)(iv), and 26 C.F.R. § 54.9815–2713(a)(1)(iv) (attached as Exhibits 2–4).

14. The Contraceptive Mandate exempts church employers. *See* Coverage of Certain Preventive Services Under the Affordable Care Act, 78 Fed. Reg. 39870, 39,896 (July 2, 2013) (attached as Exhibit 5).

15. The Contraceptive Mandate also exempts the "grandfathered" plans that are protected under section 1251 of the Affordable Care Act. *See* 29 C.F.R. § 2590.715–1251.

16. The Contraceptive Mandate also offered an "accommodation"—not an exemption—to religious non-profits who object to covering contraception for sincere religious reasons. *See* Coverage of Certain Preventive Services Under the Affordable Care Act, 78 Fed. Reg. 39870, 39896–97 (July 2, 2013) (describing provisions that

were formerly codified at 45 C.F.R. § 147.131(c)) (attached as Exhibit 5). To use this accommodation, an entity was required to certify that it is a religious non-profit that objects to covering some or all methods of contraception on religious grounds. *See id.* at 39896 (describing provisions that were formerly codified at 45 CFR § 147.131(b)). Then the issuer of the group health insurance used by the religious non-profit must exclude contraceptive coverage from that employer's plan, but the issuer must pay for any contraception used by the non-profit's employees. *See id.* (describing provisions that were formerly codified at 45 C.F.R. § 147.131(c)). The issuer may not shift any of those costs on to the religious non-profit, its insurance plan, or its employee beneficiaries. *See id.*

17. If a religious non-profit is self-insured, then its third-party administrator must pay for the employees' contraception, without shifting any costs on to the religious non-profit, its insurance plan, or its employee beneficiaries. *See* Coverage of Certain Preventive Services Under the Affordable Care Act, 78 Fed. Reg. 39870, 39893 (July 2, 2013) (describing provisions that were formerly codified at 26 C.F.R. § 54.9815–2713A(b)(2)) (attached as Exhibit 5).

18. In *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014), the Supreme Court held that the Contraceptive Mandate violated the Religious Freedom Restoration as applied to closely held, for-profit corporations that oppose the coverage of contraception for sincere religious reasons. *See id.* at 2798.

19. In *Wheaton College v. Burwell*, 134 S. Ct. 2806 (2014), the Supreme Court enjoined federal officials from requiring a religious non-profit to directly notify its health insurance issuers or third-party administrators about its religious objections to the Contraceptive Mandate.

20. In response to *Hobby Lobby* and *Wheaton College*, the Obama Administration amended the Contraceptive Mandate in two ways. First, it allowed closely held for-profit corporations to use the accommodation offered to religious non-profits. *See*

Coverage of Certain Preventive Services Under the Affordable Care Act, 80 Fed. Reg. 41318, 41346 (July 14, 2015) (describing provisions formerly codified at 45 C.F.R. § 147.131(b)) (attached as Exhibit 6); *id*. at 41345 (describing provisions formerly codified at 29 C.F.R. § 2590.715–2713A(a)); *id*. at 41343 (describing provisions formerly codified at 26 C.F.R. § 54.9815–2713A(a)). Second, it allowed employers seeking this accommodation to choose whether to directly notify their health insurance issuers or third-party administrators—or whether to notify the Secretary of Health or Human Services, who would then inform the health insurance issuers or third-party administrators of the employer's religious objections and of their need to pay for the contraception of the affected employees. *See* Coverage of Certain Preventive Services Under the Affordable Care Act, 80 Fed. Reg. 41318, 41346 (July 14, 2015) (describing provisions formerly codified at 45 C.F.R. § 147.131(b)(3)); *id*. at 41345 (describing provisions formerly codified at 29 C.F.R. § 2590.715–2713A(a)(3)); *id*. at 41344 (describing provisions formerly codified at 26 C.F.R. § 54.9815–2713A(b)(ii)). Under the previous version of Contraceptive Mandate, objecting religious non-profits were compelled to directly notify their health insurance issuers or third-party administrators. *See, e.g.*, *Wheaton College*, 134 S. Ct. 2806.

21. On May 4, 2017, President Trump issued an executive order instructing the Secretary of the Treasury, the Secretary of Labor, and the Secretary of Health and Human Services to amend the Contraceptive Mandate to address conscience-based objections. *See* Executive Order 13798 (attached as Exhibit 7).

22. In response to this order, the Department of the Treasury, the Department of Labor, and the Department of Health and Human Services issued an interim final rule that exempts any non-profit or for-profit employer from the Contraceptive Mandate if it opposes the coverage of contraception for sincere religious reasons. *See* Religious Exemptions and Accommodations for Coverage of Certain Preventive Services

Under the Affordable Care Act, 82 Fed. Reg. 47792 (October 13, 2017) (attached as Exhibit 8).

23. Under this interim final rule, objecting employers are no longer required to use the accommodation process that requires their health insurance issuer or third-party administrator to pay for their employees' contraception. *See id.* at 47835 (codified at 45 C.F.R. § 147.132(a)). And there is no longer any requirement that objecting employers notify the government or take any steps that would facilitate or assist in the provision of objectionable contraception. *See id.* at 47835 (codified at 45 C.F.R. § 147.132(a)(2)).

24. The interim final rule also accommodated individuals who object to contraceptive coverage in their health insurance for sincere religious reasons. *See id.* at 47835 (creating a new provision in 45 C.F.R. § 147.132(b)). Under the original Contraceptive Mandate, individual religious objectors were forced to choose between purchasing health insurance that covers contraception or forgoing health insurance entirely—unless they could obtain insurance through a grandfathered plan or a church employer that was exempt from Contraceptive Mandate. The interim final rule ensured that individual religious objectors would have the option to purchase health insurance that excludes contraception from any willing health insurance issuer.

25. Several states challenged the interim final rule's accommodation of religious objectors. In *Pennsylvania v. Trump*, 281 F. Supp. 3d 553 (E.D. Pa. 2017), a federal district court issued a nationwide preliminary injunction against the interim final rule. In *California v. Health and Human Services*, 281 F. Supp. 3d 806 (N.D. Cal. 2017), a different federal district issued a second nationwide preliminary injunction against the interim final rule.

26. The Departments then issued a final rule on November 15, 2018, which preserved the interim final rule's exemptions for objecting employers and individuals. *See* Religious Exemptions and Accommodations for Coverage of Certain Preventive

Services Under the Affordable Care Act, 83 Fed. Reg. 57,536 (November 15, 2018) (attached as Exhibit 9). The final rule was scheduled to take effect on January 14, 2019. On January 14, 2019, however, the federal district court in Pennsylvania issued a nationwide preliminary injunction against its enforcement. *See Pennsylvania v. Trump*, No. 2:17-cv-04540-WB (E.D. Pa.), ECF No. 135 (attached as Exhibit 10); *id.*, ECF No. 136 (attached as Exhibit 11).

27. As a result of this nationwide injunction, the Obama-era Contraceptive Mandate remains in place, which compels religious employers and individual insurance beneficiaries to subsidize or facilitate the provision of abortifacient contraception.

## STATEMENT OF THE CLAIM—OBJECTING INDIVIDUALS

28. Plaintiffs Richard and Yvette DeOtte and plaintiffs John and Alison Kelley are Christians who believe that life begins at conception, and that all human life is sacred from conception until natural death.

29. Because of their religious beliefs, the DeOttes and the Kelleys regard the use of abortifacient contraception as morally equivalent to abortion.

30. Mr. DeOtte and Mr. Kelley are self-employed and responsible for purchasing their own health insurance for themselves and for their families.

31. The Contraceptive Mandate violates the Religious Freedom Restoration Act because it forces the DeOttes and the Kelleys, and other religious believers, to choose between purchasing health insurance that makes them complicit in abortifacient contraception, or forgoing health insurance entirely. That is a substantial burden on the exercise of their religion. *See Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2770 (2014).

32. The DeOttes and the Kelleys have opted to forego health insurance rather than pay for insurance that subsidizes abortifacient contraception. They would, however, be willing to purchase health insurance if it were possible to buy insurance that excludes contraceptive coverage.

33. There is no compelling governmental interest in requiring religious believers to subsidize other people's contraception as a condition of purchasing health insurance.

34. Even if one were to assume that the government has a compelling interest in ensuring that women can access contraception at zero marginal cost, there are other ways for the government to achieve that goal without burdening the religious freedom of those who object to abortifacient contraception on religious grounds.

35. Mr. DeOtte sues as representative of a class of all current and future individuals in the United States who: (1) object to coverage or payments for some or all contraceptive services based on sincerely held religious beliefs; and (2) would be willing to purchase or obtain health insurance that excludes coverage or payments for some or all contraceptive services from a health insurance issuer, or from a plan sponsor of a group plan, who is willing to offer a separate benefit package option, or a separate policy, certificate, or contract of insurance that excludes coverage or payments for some or all contraceptive services.

**STATEMENT OF THE CLAIM—OBJECTING EMPLOYERS**

36. Dr. Steven F. Hotze is the founder, owner, and CEO of the Hotze Health & Wellness Center. The Hotze Health & Wellness Center is the DBA ("doing business as") name of Hotze Medical Association P.A., a Texas professional association.

37. The people who work at the Hotze Health & Wellness Center are employed by a separate management company called Braidwood Management Inc. Braidwood Management Inc. is a Texas corporation, and it is owned by a trust of which Dr.

Hotze is the sole trustee and beneficiary. Dr. Hotze is also the President, Secretary, Treasurer, and sole member of the Board of Braidwood Management Inc.

38. Braidwood Management Inc. employs approximately 70 individuals, and its employees work at one of the following three business entities, each of which is owned or controlled by Dr. Hotze: the Hotze Health & Wellness Center, Hotze Vitamins, or Physicians Preference Pharmacy International LLC.

39. Braidwood Management Inc. is self-insured and provides health insurance to its employees. Because Braidwood has more than 50 employees, it is compelled to offer ACA-compliant health insurance to its employees or face heavy financial penalties. *See* 26 U.S.C. § 4980H(c)(2).

40. Dr. Hotze is a Christian, and he operates his business according to Christian principles and teaching.

41. Dr. Hotze believes that life begins at conception, and that the use of abortifacient contraception is tantamount to abortion. Dr. Hotze's beliefs on this matter are rooted in his Christian faith, which teaches that all human life is sacred from conception until natural death.

42. Dr. Hotze also believes that the Bible is the Word of God, and the Bible teaches that sexual relations may occur only within a marriage between one man and one woman.

43. Although Dr. Hotze's Christian beliefs do not oppose the use of non-abortifacient contraception by married couples to prevent pregnancy, Dr. Hotze nevertheless objects to the Contraceptive Mandate's requirement that he provide non-abortifacient contraception to his employees at zero marginal cost because it facilitates sexual activity outside of marriage.

44. The Contraceptive Mandate violates the Religious Freedom Restoration Ac because it forces Braidwood to subsidize or facilitate the provision of abortifacient contraception. It also forces Braidwood to subsidize or facilitate the provision of non-

abortifacient contraception which is often (though not always) used to facilitate non-marital sexual activity. Under the Contraceptive Mandate, Braidwood must choose between: (1) Providing contraception to its employees; (2) Executing a self-certification form that leads to the provision of contraception by others; or (3) Paying a tax penalty of $100 per employee per day under 26 U.S.C. § 4980D. That is a substantial burden on the exercise of its religion. *See Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2775–79 (2014).

45. Dr. Hotze refuses to allow Braidwood to execute the self-certification form that the Contraceptive Mandate offers to objecting employers. Dr. Hotze regards the submission of that form as an act that affirmatively assists and facilitates the provision of abortifacient and non-abortifacient contraception, in violation of his sincere religious beliefs. Dr. Hotze believes that executing a certification form that enables his company's employees to obtain and use abortifacient contraceptive methods free of charge, or that enables them to obtain non-abortifacient contraception for use in non-marital sexual activity, is as much a violation of his religious beliefs as providing the contraception directly.

46. Instead, Dr. Hotze has instructed Braidwood to terminate contraceptive coverage in its self-insured health plan effective December 1, 2018. Braidwood implemented this new policy after the religious exemptions had been announced in the final rule of November 15, 2018. The nationwide injunction issued by the Pennsylvania district court, however, has subjected Braidwood to the previous iteration of the Contraceptive Mandate, so Braidwood is now facing substantial tax penalties—$100 per employee per day—for conduct that is entirely within the company's rights under the Religious Freedom Restoration Act. *See* 26 U.S.C. § 4980D.

47. There is no "compelling governmental interest" in ensuring that women can access contraception at zero cost, and even if there were, there are many ways to achieve this goal in a manner that is less restrictive of Braidwood's religious freedom.

48. Braidwood Management Inc. sues as representative of a class of every present and future employer in the United States that objects, based on its sincerely held religious beliefs, to establishing, maintaining, providing, offering, or arranging for: (i) coverage or payments for some or all contraceptive services; or (ii) a plan, issuer, or third-party administrator that provides or arranges for such coverage or payments.

## CLASS-ACTION ALLEGATIONS—OBJECTING INDIVIDUALS

49. Mr. DeOtte brings this class action under Rule 23(b)(2) of the federal rules of civil procedure.

50. The class comprises all current and future individuals in the United States who: (1) object to coverage or payments for some or all contraceptive services based on sincerely held religious beliefs; and (2) would be willing to purchase or obtain health insurance that excludes coverage or payments for some or all contraceptive services from a health insurance issuer, or from a plan sponsor of a group plan, who is willing to offer a separate benefit package option, or a separate policy, certificate, or contract of insurance that excludes coverage or payments for some or all contraceptive services.

51. The number of persons in the class makes joinder of the individual class members impractical.

52. There are questions of law common to the class. All class members are consumers of health insurance who object on religious grounds to the coverage of contraception, yet are forced to choose between participating in an insurance policy or plan that subsidizes and provides for objectionable contraception in violation of their religious beliefs, or foregoing health insurance entirely. The common legal questions are whether this substantially burdens the religious freedom of the class members, and whether this burden represents the least restrictive means of advancing a compelling governmental interest. *See* 42 U.S.C. § 2000bb-1.

53. Mr. DeOtte's claims are typical of other members of the class. The Contraceptive Mandate substantially burdens the religious freedom of each class member in the same way—by compelling them to forego health insurance if they want to avoid participating in an insurance policy or plan that covers objectionable contraceptive methods.

54. Mr. DeOtte adequately represents the interests of the class, and he has no interests antagonistic to the class.

55. A class action is appropriate under Rule 23(b)(2) because the defendants are acting on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

**CLASS-ACTION ALLEGATIONS—OBJECTING EMPLOYERS**

56. Braidwood Management Inc. brings this class action under Rule 23(b)(2) of the federal rules of civil procedure.

57. The class comprises every current and future employer in the United States that objects, based on its sincerely held religious beliefs, to establishing, maintaining, providing, offering, or arranging for: (i) coverage or payments for some or all contraceptive services; or (ii) a plan, issuer, or third-party administrator that provides or arranges for such coverage or payments.

58. The number of persons in the class makes joinder of the individual class members impractical.

59. There are questions of law common to the class. All class members are employers who object on religious grounds to some or all methods of contraception. Yet the Contraceptive Mandate forces them to choose from among the following options: (1) Providing contraceptive coverage in their employees' health insurance; (2) Filling out and submitting a form that leads directly to the provision of objectionable contraceptive methods by others; or (3) Paying a tax penalty of $100 per employee per

day under 26 U.S.C. § 4980D. The common legal questions are whether this substantially burdens the religious freedom of the employer class members, and whether this burden represents the least restrictive means of advancing a compelling governmental interest. *See* 42 U.S.C. § 2000bb-1.

60. Braidwood's claims are typical of other members of the class. The Contraceptive Mandate substantially burdens the religious freedom of each class member in the same way—by compelling them to choose between providing contraceptive coverage in their employees' health insurance; filling out and submitting a form that leads directly to the provision of objectionable contraceptive methods by others; or paying a heavy financial penalty under 26 U.S.C. § 4980D.

61. Braidwood adequately represents the interests of the employer class, and it has no interests antagonistic to the class.

62. A class action is appropriate under Rule 23(b)(2) because the defendants are acting on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## CAUSES OF ACTION

63. The plaintiffs are suing under the Religious Freedom Restoration Act and the Administrative Procedure Act, each of which supplies a cause of action for the claims that they are asserting. *See* 42 U.S.C. 2000bb-1(c); 5 U.S.C. § 702.

## DEMAND FOR RELIEF

64. The plaintiffs respectfully request that the court:

   a. certify a class of all current and future individuals in the United States who: (1) object to coverage or payments for some or all contraceptive services based on sincerely held religious beliefs; and (2) would be willing to purchase or obtain health insurance that excludes coverage

        or payments for some or all contraceptive services from a health insurance issuer, or from a plan sponsor of a group plan, who is willing to offer a separate benefit package option, or a separate policy, certificate, or contract of insurance that excludes coverage or payments for some or all contraceptive services;

b. certify a separate class of every current and future employer in the United States that objects, based on its sincerely held religious beliefs, to establishing, maintaining, providing, offering, or arranging for: (i) coverage or payments for some or all contraceptive services; or (ii) a plan, issuer, or third-party administrator that provides or arranges for such coverage or payments;

c. declare that the Contraceptive Mandate violates the rights of the plaintiffs and their fellow class members under the Religious Freedom Restoration Act;

d. hold unlawful and set aside any agency action that seeks to enforce the Contraceptive Mandate without adequately accommodating the rights of religious objectors under the Religious Freedom Restoration Act;

e. permanently enjoin the defendants from enforcing the Contraceptive Mandate in a manner that fails to adequately accommodate the rights of religious objectors under the Religious Freedom Restoration Act;

f. award costs and attorneys' fees under 42 U.S.C. § 1988;

g. award all other relief that the Court deems just, proper, or equitable.

|  | Respectfully submitted. |
|---|---|
|  | /s/ Jonathan F. Mitchell |
| CHARLES W. FILLMORE | JONATHAN F. MITCHELL |
| H. DUSTIN FILLMORE | Texas Bar No. 24075463 |
| The Fillmore Law Firm, L.L.P. | Mitchell Law PLLC |
| 1200 Summit Avenue, Suite 860 | 106 East Sixth Street, Suite 900 |
| Fort Worth, Texas 76102 | Austin, Texas 78701 |
| (817) 332-2351 (phone) | (512) 686-3940 (phone) |
| (817) 870-1859 (fax) | (512) 686-3941 (fax) |
| chad@fillmorefirm.com | jonathan@mitchell.law |
| dusty@fillmorefirm.com |  |
|  | *Counsel for Plaintiffs and* |
| Dated: February 5, 2019 | *the Proposed Classes* |

## CERTIFICATE OF SERVICE

I certify that on February 5, 2019, I served this document through CM/ECF upon:

Daniel Riess
U.S. Department of Justice
Civil Division, Room 6122
20 Massachusetts Avenue, NW
Washington, D.C. 20530
(202) 353-3098
Daniel.Riess@usdoj.gov

*Counsel for Defendants*

                                       /s/ Jonathan F. Mitchell
                                       Jonathan F. Mitchell
                                       *Counsel for Plaintiffs and*
                                       *the Proposed Classes*