# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |
|---|---|
| **Richard W. DeOtte**, et al., | |
| Plaintiffs, | |
| v. | Case No. 4:18-cv-825-O |
| **Alex M. Azar II**, et al., | |
| Defendants. | |

## BRIEF IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

CHARLES W. FILLMORE
H. DUSTIN FILLMORE
The Fillmore Law Firm, L.L.P.
1200 Summit Avenue, Suite 860
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
chad@fillmorefirm.com
dusty@fillmorefirm.com

JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
106 East Sixth Street, Suite 900
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiffs and
the Proposed Classes*

# TABLE OF CONTENTS

Table of contents ........................................................................................................i

Table of authorities ....................................................................................................ii

    I.  The Court should certify the Braidwood class under Rule 23(b)(2) ......................2

        A.  The class is so numerous that joinder of all members is impractical ...................2

        B.  There are questions of law or fact common to the members of the class.............3

        C.  Braidwood's claims are typical of the claims of the class .....................................4

        D.  Braidwood will fairly and adequately protect the interests of the class ...............5

        E.  The Braidwood class satisfies Rule 23(b)(2) ......................................................6

    II.  The Court should certify the DeOtte class under Rule 23(b)(2)...........................7

        A.  The class is so numerous that joinder of all members is impractical ...................7

        B.  There are questions of law or fact common to the members of the class.............8

        C.  Mr. DeOtte's claims are typical of the claims of the class ..................................9

        D.  Mr. DeOtte will fairly and adequately protect the interests of the class.............10

        E.  The DeOtte class satisfies Rule 23(b)(2) .........................................................10

    III.Class discovery is not needed ................................................................................11

Conclusion ................................................................................................................12

Certificate of conference ..........................................................................................13

Certificate of service ................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................................5, 10

*Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014) .............................................5

*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) ...............................................4, 9

*In re Nat'l Football League Players Concussion Injury Litig.*,
821 F.3d 410 (3d Cir. 2016) .................................................................................2

*James v. City of Dallas,* 254 F.3d 551 (5th Cir. 2001) ...............................................4, 5, 9

*M.D. v. Perry*, 675 F.3d 832 (5th Cir. 2012)......................................................4, 6, 9, 10

*Pennsylvania v. Trump*, No. 2:17-cv-04540-WB (E.D. Pa. Jan. 14, 2019)..................7, 11

*Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338 (2011) ...............................................passim

**Statutes**

42 U.S.C. § 1988(b) ...............................................................................................11

**Other Authorities**

P.J. Kenedy & Sons, *The Official Catholic Directory Anno Domini* 2016...........................8

National Catholic Educational Association, *Catholic School Data*,
http://www.ncea.org/NCEA/Proclaim/Catholic_School_
Data/Catholic_School_Data.aspx ........................................................................2

Pew Research Center, *Where the Public Stands on Religious Liberty vs.*
*Nondiscrimination* (Sept. 28, 2016), http://assets.pewresearch.org/wp-
content/uploads/sites/11/2016/09/Religious-Liberty-full-for-web.pdf ...................7

**Rules**

Fed. R. Civ. P. 23(b)(2) .......................................................................................6, 7, 10, 11

Local Rule 23.2(b)(3)...........................................................................................1

Local Rule 23.2(b)(1)...........................................................................................3, 8

Local Rule 23.2(c)................................................................................................6, 11

Local Rule 23.2(d) ...............................................................................................12

Local Rule 23.2(e)................................................................................................11

Local Rule 23.2(f) ................................................................................................11

Local Rule 23.2(g)................................................................................................11

**Regulations**

Group Health Plans and Health Insurance Issuers Relating to Coverage of
Preventive Services Under the Patient Protection and Affordable Care Act,
76 Fed. Reg. 46,621 (Aug. 3, 2011)............................................................................2

Religious Exemptions and Accommodations for Coverage of Certain
Preventive Services Under the Affordable Care Act,
83 Fed. Reg. 57,536 (Nov. 15, 2018) ................................................................2, 3, 8

The plaintiffs respectfully move to certify two classes under Rule 23(b)(2). The first class is represented by plaintiff Braidwood Management Inc., and it consists of

> Every current and future employer in the United States that objects, based on its sincerely held religious beliefs, to establishing, maintaining, providing, offering, or arranging for: (i) coverage or payments for some or all contraceptive services; or (ii) a plan, issuer, or third-party administrator that provides or arranges for such coverage or payments.

The common characteristics of these class members is that they are all employers, and they all object to providing or facilitating contraceptive coverage for sincere religious reasons. *See* Local Rule 23.2(b)(3). The distinguishing characteristics are that some of these employers are for-profit while others are non-profit; some are large employers while others are small; and the employers are geographically dispersed throughout the United States. *See id.*

The second class is represented by plaintiff Richard W. DeOtte, and it consists of

> All current and future individuals in the United States who: (1) object to coverage or payments for some or all contraceptive services based on sincerely held religious beliefs; and (2) would be willing to purchase or obtain health insurance that excludes coverage or payments for some or all contraceptive services from a health insurance issuer, or from a plan sponsor of a group plan, who is willing to offer a separate benefit package option, or a separate policy, certificate, or contract of insurance that excludes coverage or payments for some or all contraceptive services.

The common characteristics of these class members is that they are all individual consumers of health insurance who object to contraceptive coverage for sincere religious reasons, and they wish to purchase or obtain health insurance that excludes coverage for some or all contraceptive methods. *See* Local Rule 23.2(b)(3). The distinguishing characteristics are that some class members object to all contraceptive coverage, while others object only to coverage of the subset of contraceptives that act as abortifacients. The class members are also geographically dispersed throughout the United States. *See id.*

## I.   THE COURT SHOULD CERTIFY THE BRAIDWOOD CLASS UNDER RULE 23(b)(2)

A party that moves for class certification must satisfy all of the requirements of Rule 23(a) and at least one of the subdivisions in Rule 23(b). The Braidwood class meet each of these requirements.

### A.   The Class Is So Numerous That Joinder Of All Members Is Impractical

The number of employers who object to contraceptive coverage on religious grounds easily exceeds the numerosity threshold. *See In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016) ("[N]umerosity is generally satisfied if there are more than 40 class members."). There are 5,158 Catholic elementary schools and 1,194 Catholic secondary schools in the United States. *See* National Catholic Educational Association, *Catholic School Data*, http://www.ncea.org/NCEA/Proclaim/Catholic_School_Data/Catholic_School_Data.aspx (last visited Feb. 4, 2019); *see also* Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 83 Fed. Reg. 57,536, 57,580 (Nov. 15, 2018); App. 412 (relying on this data). And although some of these Catholic schools are already exempt from the Contraceptive Mandate as "integrated auxiliaries" of the Catholic church,[1] many others are not. *See id.* What's more, Christian Brothers — a self-insured health plan for Catholic employers — has stated in litigation that it covers approximately 500 Catholic organizations that are not exempt from the Mandate as church employers. *See id.* Guidestone, another self-insured plan organized by the Southern Baptist Convention, covers 38,000 employers, only some of which are protected by the existing exemption for church employers. *See id.* These data alone are enough to

---

[1]   The Contraceptive Mandate exempted church employers from the outset of its existence. *See* Group Health Plans and Health Insurance Issuers Relating to Coverage of Preventive Services Under the Patient Protection and Affordable Care Act, 76 Fed. Reg. 46,621, 46,623 (Aug. 3, 2011); App. 225 (exempting "churches, their integrated auxiliaries, and conventions or associations of churches, as well as to the exclusively religious activities of any religious order"). This exemption for church employers was not affected by Judge Beetlestone's nationwide preliminary injunction against the final rule of November 15, 2018. *See* Br. in Support of Mot. for Prelim. Inj. at 3–4.

establish that the number of objecting employers exceeds 40. And the class includes not only the present-day objecting employers, but also *future* employers who will object to contraceptive coverage on religious grounds. It is inconceivable that this class would fail to meet the numerosity threshold of Rule 23(a)(1).

The local rules of this Court require us to provide the "approximate number of class members." Local Rule 23.2(b)(1). It is difficult, however, to calculate the number of present and future employers who hold religious objections to contraceptive coverage. The defendants have noted that approximately 87 for-profit employers have filed lawsuits challenging the Contraceptive Mandate, and approximately 122 nonprofit employers have challenged the accommodation process. *See* Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 83 Fed. Reg. at 57,575 (Nov. 15, 2018); App. 407. But there are countless other objecting employers that have not yet sued, including Mr. DeOtte's company,[2] and including the hundreds of Catholic schools that have not yet challenged the Mandate in court. Based on these data, one can confidently estimate that the Braidwood class members number in the hundreds or even thousands, but it is difficult to come up with a more precise calculation.

### B.     There Are Questions Of Law Or Fact Common To The Members Of The Class

Braidwood seeks to litigate a question of law common to all class members: Does the Contraceptive Mandate violate the Religious Freedom Restoration Act by compelling objecting employers to choose among the following three options: (1) Provide contraceptive coverage in their employees' health insurance; (2) Fill out and submit a form that leads directly to the provision of objectionable contraception by their insurer or third-party administrator; or (3) Pay a heavy financial penalty. *See* Br. in Support of Mot. for Prelim. Inj. at 11. This common question of law comprises three other legal questions common to each mem-

---

2.   See Affidavit of Richard W. DeOtte ¶ 10–12; App. 217–18.

ber of the class: (1) Does the Contraceptive Mandate substantially burden the religious freedom of employers who object to contraceptive coverage for sincere religious reasons? *See id.* at 11–17. (2) Is there a "compelling governmental interest" in enforcing the Contraceptive Mandate against these objecting employers? *See id.* at 19–22. (3) Is the Contraceptive Mandate the "least restrictive means" of advancing those "compelling governmental interests"? *See id.* at 22–24.

These questions affect all class members because each of them is subject to the Contraceptive Mandate—and each is compelled to choose between violating its religious beliefs or paying a substantial fine. Each class member will "suffer the same injury" on account of the Contraceptive Mandate, and that is all that needed to satisfy Rule 23(a)(2)'s commonality requirement. *Wal-Mart Stores, Inc.* v. *Dukes*, 564 U.S. 338, 348 (2011) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 403 (1977)); *see also Wal-Mart*, 564 U.S. at 360 ("[E]ven a single [common] question will do." (citation and internal quotation marks omitted)); *In re Deepwater Horizon*, 739 F.3d 790, 812 (5th Cir. 2014) (same). And a ruling on these employer-related RFRA issues "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350; *see also M.D. v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012).

### C.    Braidwood's Claims Are Typical Of The Claims Of The Class

Braidwood contends that the Contraceptive Mandate violates the Religious Freedom Restoration Act as applied to employers who object to contraceptive coverage for sincere religious reasons—the precise claim that it seeks to litigate on behalf of the absent class members. *See* Br. in Support of Mot. for Prelim. Inj. at 11–17, 19–24. The interests of Braidwood are aligned with those of the class, as each class member benefits from a ruling that prevents federal agencies from punishing them for refusing to provide or facilitate contraceptive coverage in their health-insurance plans. *See James v. City of Dallas,* 254 F.3d 551, 571 (5th Cir. 2001) ("[T]he test for typicality is not demanding. It focuses on the similarity

between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." (citations and quotation marks omitted)); *id*. ("[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." (citations and quotation marks omitted)); *see also Wal-Mart*, 564 U.S. at 350 n.5 ("[T]he commonality and typicality requirements of Rule 23(a) tend to merge." (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–158 n.13 (1982)).

### D.   Braidwood Will Fairly And Adequately Protect The Interests Of The Class

Braidwood will fairly and adequately represent the interests of its fellow class members, and there are no conflicts of interest between Braidwood and the other members of this class. The class members consist of employers who object to providing or facilitating contraceptive coverage for sincere religious reasons, and every member of this class benefits from an injunction that prevents the Contraceptive Mandate from being enforced against objecting employers. *Hobby Lobby* holds that compelling unwilling employers to "arrange for" contraceptive coverage is a substantial burden on religious freedom. *See Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2775 (2014). *Hobby Lobby* also observed that the "most straightforward way" for the government to expand contraceptive coverage without infringing religious liberty "would be for the Government to assume the cost of providing" the disputed contraception. *Id*. at 2780. There is no conceivable conflict of interest that could arise from Braidwood's efforts to enforce these rights of objecting employers on a classwide basis. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent."). The Religious Freedom Restoration Act protects *all* religious employers from being compelled to facilitate the provision of contraception that violates their

religious beliefs, and a classwide injunction will serve only to enhance the freedom and au-
tonomy of each of the class members.

Braidwood is an appropriate class representative because Dr. Hotze's religious objections
to contraceptive coverage are sincere and deeply held, and Braidwood operates overtly as a
Christian business. *See* Affidavit of Steven F. Hotze; App. 4–9. Braidwood's attorneys are
self-financing this litigation, but the legal issues are straightforward and the case will not be
expensive to litigate. *See* Local Rule 23.2(c).

### E.    The Braidwood Class Satisfies Rule 23(b)(2)

The final criterion for class certification under Rule 23(b)(2) is that "the party opposing
the class has acted or refused to act on grounds that apply generally to the class, so that final
injunctive relief or corresponding declaratory relief is appropriate respecting the class as a
whole." Fed. R. Civ. P. 23(b)(2). The Supreme Court has held that this requirement is sat-
isfied "when a single injunction or declaratory judgment would provide relief to each mem-
ber of the class." *Wal-Mart*, 564 U.S. at 360; *see also id.* at 361–62 ("[T]he relief sought
must perforce affect the entire class at once . . . ."). That is precisely what Braidwood is re-
questing: A single injunction that stops the defendants from enforcing the Contraceptive
Mandate against each of the class members. No one is seeking individualized relief for any
class member or for any subset of the class. *Compare with M.D.*, 675 F.3d at 845 (disapprov-
ing class certification under Rule 23(b)(2) when individualized relief was sought). Braidwood
is requesting a simple, classwide injunction that halts the enforcement of the Contraceptive
Mandate against employers who object to contraceptive coverage for sincere religious rea-
sons.

In addition, the defendant agencies are "act[ing] . . . on grounds that apply generally to
the class." Fed. R. Civ. P. 23(b)(2). The Contraceptive Mandate applies to every employer
that offers health insurance to its employees, and it requires each of the class members to
choose from among the following three options: (1) Provide contraceptive coverage in their

employees' health insurance; (2) Fill out and submit a form that leads directly to the provision of objectionable contraception by their insurer or third-party administrator; or (3) Pay a heavy financial penalty. *See* Br. in Support of Mot. for Prelim. Inj. at 11. The Mandate "appl[ies] generally to the class" because Judge Beetlestone has enjoined the enforcement of the agencies' religious exemptions on a nationwide basis. *See Pennsylvania v. Trump*, No. 2:17-cv-04540-WB (E.D. Pa. Jan. 14, 2019), ECF Nos. 135, 136; App. 425–26, 483–91. And the Mandate violates RFRA as applied to all class members, which makes "final injunctive relief or corresponding declaratory relief . . . appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Wal–Mart*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.").

## II.   THE COURT SHOULD CERTIFY THE DEOTTE CLASS UNDER RULE 23(B)(2)

The DeOtte class likewise meets each of the four requirements of Rule 23(a) as well as Rule 23(b)(2).

### A.   The Class Is So Numerous That Joinder Of All Members Is Impractical

Mr. DeOtte sues on behalf of all current and future individuals in the United States who oppose contraceptive coverage for sincere religious reasons, and who would be willing to purchase or obtain health insurance that excludes contraceptive coverage from a willing provider. The number of individuals who meet this description far exceeds the numerosity threshold. According to a 2016 poll, 4% of Americans believe that using contraception is morally wrong, including 8% of Catholics. *See* Pew Research Center, *Where the Public Stands on Religious Liberty vs. Nondiscrimination* 26 (Sept. 28, 2016), http:// assets.pewresearch.org/wp-content/uploads/sites/11/2016/09/Religious-Liberty-full-for-web.pdf; *see also* Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 83 Fed. Reg. at 57,580–81 (Nov. 15,

2018); App. 412–13 (citing this poll in estimating the impact of the proposed religious exemptions). There are 70.4 million registered Catholics in the United States. *See* P.J. Kenedy & Sons, *The Official Catholic Directory Anno Domini* 2016. So if one considers only the number of Catholic objectors, the class exceeds 5.6 million. Of course, some of these individuals will be on public insurance (such Medicare or Medicaid) and will not be seeking coverage from private insurers. But even if we cut the number in half to account for that, the class far exceeds the numerosity threshold—and that doesn't even begin to count the non-Catholic objectors or the evangelical Christians who object only to abortifacient contraception.

Based on these data, one can confidently estimate that the "approximate number of class members" exceeds one million. *See* Local Rule 23.2(b)(1).

### B.    There Are Questions Of Law Or Fact Common To The Members Of The Class

Mr. DeOtte seeks to litigate a question of law common to all class members: Does the Contraceptive Mandate violate the Religious Freedom Restoration Act by forcing class members to choose between purchasing insurance that subsidizes other people's contraception, or foregoing health insurance entirely? This common question of law comprises three other legal questions common to each member of the class: (1) Does the Contraceptive Mandate substantially burden the religious freedom of individual consumers of health insurance who object to contraceptive coverage for sincere religious reasons? *See* Br. in Support of Mot. for Prelim. Inj. at 17–19. (2) Is there a "compelling governmental interest" in enforcing the Contraceptive Mandate in a manner that prevents these objecting individuals from purchasing health insurance that excludes contraceptive coverage from willing insurers? *See id*. at 19–22. (3) Is the Contraceptive Mandate the "least restrictive means" of advancing a "compelling governmental interest"? *See id*. at 22–24.

These questions affect all class members because each of them is unable to obtain health insurance that excludes contraceptive coverage on account of the Mandate—and each is

compelled to choose between purchasing insurance that subsidizes other people's contraception or foregoing health insurance entirely. Each class member will "suffer the same injury" on account of the Contraceptive Mandate, and that is all that needed to satisfy Rule 23(a)(2)'s commonality requirement. *Wal-Mart*, 564 U.S. at 348 (citation and internal quotation marks omitted); *id.* at 360 ("[E]ven a single [common] question will do." (citation and internal quotation marks omitted)); *Deepwater Horizon*, 739 F.3d at 812 (same). And a ruling on these each of these RFRA issues "will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350; *see also M.D.*, 675 F.3d at 840.

### C.    Mr. DeOtte's Claims Are Typical Of The Claims Of The Class

Mr. DeOtte claims that the Contraceptive Mandate violates the Religious Freedom Restoration Act by preventing objecting individuals from purchasing or obtaining health insurance that excludes contraception from willing insurers. *See* Br. in Support of Mot. for Prelim. Inj. at 17–24. This is the identical claim that he seeks to litigate on behalf of the absent class members. Mr. DeOtte's interests are aligned with the interests of his fellow class members, as each of them benefits from a ruling that allows them to acquire health insurance that excludes contraceptive coverage. *See James,* 254 F.3d at 571 ("[T]he test for typicality is not demanding. It focuses on the similarity between the named plaintiffs' legal and remedial theories and the theories of those whom they purport to represent." (citations and quotation marks omitted)); *id.* ("[T]he critical inquiry is whether the class representative's claims have the same essential characteristics of those of the putative class. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." (citations and quotation marks omitted)); *see also Wal-Mart*, 564 U.S. at 350 n.5 ("[T]he commonality and typicality requirements of Rule 23(a) tend to merge." (quoting *Falcon,* 457 U.S. at 157–158 n.13)).

### D.    Mr. DeOtte Will Fairly And Adequately Protect The Interests Of The Class

Mr. DeOtte will fairly and adequately represent the interests of his fellow class members, and there are no conflicts of interest between Mr. DeOtte and other members of this class. The class members consist of individuals who object to contraceptive coverage for sincere religious reasons, and every member of this class benefits from an injunction that enables them to obtain health insurance without subsidizing behaviors that contradict their religious beliefs. There is no conceivable conflict of interest that could arise from Mr. DeOtte's efforts to enforce the rights of objecting individuals on a classwide basis. *See Amchem*, 521 U.S. at 625 ("The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent.").

### E.    The DeOtte Class Satisfies Rule 23(b)(2)

The final criterion for class certification under Rule 23(b)(2) is that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). This requirement is met "when a single injunction or declaratory judgment would provide relief to each member of the class." *Wal-Mart*, 564 U.S. at 360; *see also id*. at 361–62 ("[T]he relief sought must perforce affect the entire class at once"). And Mr. DeOtte is requesting a single injunction that stops the defendants from enforcing the Contraceptive Mandate in a manner that prevents the class members from purchasing health insurance without contraceptive coverage. No one is seeking individualized relief for any class member or for any subset of the class. *Compare with M.D.*, 675 F.3d at 845 (disapproving class certification under Rule 23(b)(2) when individualized relief was sought). Mr. DeOtte is requesting a straightforward, classwide injunction that halts the enforcement of the Contraceptive Mandate against insurers who are willing to provide health insurance that excludes contraceptive coverage to individuals with sincere religious objections to contraception.

The defendant agencies are also "act[ing] . . . on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). The Contraceptive Mandate prevents every class member from purchasing or obtaining health insurance unless they agree to subsidize contraceptive methods that violate their religious beliefs. *See* Br. in Support of Mot. for Prelim. Inj. at 1. The Mandate "appl[ies] generally to the class" because Judge Beetlestone has enjoined the enforcement of the agencies' religious exemptions for individual objectors on a nationwide basis. *See Pennsylvania v. Trump*, No. 2:17-cv-04540-WB (E.D. Pa. Jan. 14. 2019), ECF Nos. 135, 136; App. 425–26, 483–91. And the Mandate violates RFRA to the extent it prevents each of the class members from purchasing health insurance that excludes contraception, which makes "final injunctive relief or corresponding declaratory relief . . . appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *see also Wal–Mart*, 564 U.S. at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.").

Mr. DeOtte is an appropriate class representative because his religious objections to contraceptive coverage are sincere and deeply held. *See* Affidavit of Richard W. DeOtte ¶¶ 4–7; App. 216–17. Mr. DeOtte's attorneys are self-financing this litigation, but the legal issues are straightforward and the case will not be expensive to litigate. *See* Local Rule 23.2(c).

## III.   CLASS DISCOVERY IS NOT NEEDED

The representative plaintiffs believe that class discovery is unnecessary given that the classes unquestionably satisfy the numerosity requirement of Rule 23(a)(1). *See* Local Rule 23.2(f). The plaintiffs' attorneys' fees will be paid on a contingency basis if the action is successful, as RFRA provides for fee-shifting. *See* 42 U.S.C. § 1988(b); Local Rule 23.2(g). The remaining information required by Local Rule 23.2 is inapplicable because certification is sought solely under Rule 23(b)(2) and the representatives are not seeking damages or monetary relief, so notice need not be given to absent class members. *See* Local Rule 23.2(e).

In addition, this is not a diversity action, so there is no need to determine a jurisdictional amount. *See* Local Rule 23.2(d).

## CONCLUSION

The motion for class certification should be granted.

Respectfully submitted.

 /s/ Jonathan F. Mitchell

CHARLES W. FILLMORE
H. DUSTIN FILLMORE
The Fillmore Law Firm, L.L.P.
1200 Summit Avenue, Suite 860
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
chad@fillmorefirm.com
dusty@fillmorefirm.com

Dated: February 5, 2019

JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
106 East Sixth Street, Suite 900
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiffs and
the Proposed Classes*

## CERTIFICATE OF CONFERENCE

I certify that on January 28, 2018, I conferred with Daniel Riess, counsel for the defendants, and he informed me that the defendants reserve the right to object to this motion pending their review of the papers that we file.


 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiffs and*
*the Proposed Classes*


## CERTIFICATE OF SERVICE

I certify that on February 5, 2019, I served this document through CM/ECF upon:

DANIEL RIESS
U.S. Department of Justice
Civil Division, Room 6122
20 Massachusetts Avenue NW
Washington, D.C. 20530
(202) 353-3098
daniel.riess@usdoj.gov

*Counsel for Defendants*


 /s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiffs and*
*the Proposed Classes*