UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| Richard W. DeOtte, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Alex M. Azar II, et al., <br><br> Defendants. | Case No. 4:18-cv-825-O |

## AFFIDAVIT OF STEVEN F. HOTZE

I, Steven F. Hotze, being duly sworn, state as follows:

1. I am over 21 years old and fully competent to make this affidavit. I submit this affidavit in support of the plaintiffs' motion for preliminary injunction.

2. I am the founder and CEO of the Hotze Health & Wellness Center. The Hotze Health & Wellness Center is the DBA ("doing business as") name of Hotze Medical Association, P.A., a Texas professional association, which is taxed as an S Corporation. I am the sole owner of Hotze Medical Association, P.A.

3. The Hotze Health & Wellness Center is not an employer. Instead, the people who work at the Hotze Health & Wellness Center are employed by a company called Braidwood Management, Inc. Braidwood Management, Inc. is owned by a trust called the "David Bradley SFH 2005 Family Trust." I am the sole trustee and beneficiary of that trust. I am also the President, Secretary, Treasurer, and sole member of the Board of Braidwood Management, Inc.

4. Braidwood Management, Inc. employs approximately 70 individuals, and each of those Braidwood employees works at one of the following entities: The Hotze

Health & Wellness Center, Hotze Vitamins, or Physicians Preference Pharmacy International, LLC.

5. Hotze Vitamins is the DBA ("doing business as") name of Physicians Preference, International, L.P. The David Bradley SFH 2005 Family Trust, described in paragraph 3 of this affidavit, owns 99% of Physicians Preference, International, L.P.

6. Physicians Preference Pharmacy, International, LLC, is owned by Medicus Holdings, LLC. Medicus Holdings, LLC., in turn, is owned by Hotze Pharmacy, LP. The David Bradley SFH 2005 Family Trust, described in paragraph 3 of this affidavit, owns 99% of Hotze Pharmacy, LP.

7. The upshot is that I own or control each of these four business entities, and that Braidwood Management, Inc. employs each of the 68 individuals who work at my companies.

8. I am familiar with Braidwood's mission, religious beliefs, and health-insurance policy. The facts set forth are based on my personal knowledge and information available to me, and if I were called upon to testify to them, I would competently do so.

9. I am a Christian and I operate each of my businesses according to Christian beliefs and teaching. Indeed, I believe that as a Christian I am required to run my businesses in accordance with Christian principles. My faith in Christ directs both my personal and business life.

10. The core values of each of my four businesses—the Hotze Health & Wealth Center; Hotze Vitamins; Physicians Preference Pharmacy, International, LLC; and Braidwood Management, Inc.—are described in the document attached as Exhibit 2 in the appendix to the brief supporting the motion for preliminary injunction. Our first core value is "To worship God in our work." Our second core value is "To recognize the intrinsic worth of each individual."

11. We start every weekly staff meeting with a prayer in Christ's name, thanking God for his blessings and praying for those who have entrusted their care to us.

12. I have produced a video entitled "What I Believe," which explains the beliefs and values of my businesses. This video is available at https://www.youtube.com/watch?v=3QfLjCpfRQA. I require each employee of Braidwood to watch this video before they work for our companies. One of our beliefs—which is described in the video—is that the Bible is the inerrant Word of God and that it lays down the principles that regulate all human activity. A transcript of this video is attached as Exhibit 3 in the appendix to the brief supporting the motion for preliminary injunction.

13. One of my most important Christian beliefs, and one of the fundamental principles upon which I operate my business, is that all human life is sacred from the moment of conception until natural death.

14. Because I believe that life begins at conception, and that all human life is sacred, my religious beliefs forbid me or my companies to subsidize or facilitate the use of contraceptive methods that act as abortifacients by preventing the implantation of an already-fertilized egg.

15. I understand that some of the 20 FDA-approved contraceptive methods act as abortifacients. According to my religious beliefs, a contraceptive device that acts in this manner is morally equivalent to abortion.

16. As a Christian I also believe that sexual activity is permissible only in a marriage between one man and one woman.

17. Although I do not object to the use of non-abortifacient contraception by married couples to prevent pregnancy, I am nevertheless unwilling to allow Braidwood's health-insurance plan to cover contraception because it is often (though not always) used to facilitate sexual activity outside of marriage, and the Contraceptive Mandate requires contraception to be provided free of charge regardless of whether the person seeking it is married.

18. Braidwood has more than 50 full-time employees. It is therefore subject to the Affordable Care Act's mandate that large employers provide health insurance plans

to their employees. The failure to provide ACA-compliant health insurance to its employees would subject Braidwood to heavy financial penalties. *See* 26 U.S.C. § 4980D(b); 26 U.S.C. § 4980H.

19. Braidwood has a self-insured health plan that is administered by Entrust.

20. Because of the Contraceptive Mandate, Braidwood has been compelled to cover all 20 FDA-approved contraceptive methods in its self-insured plan, in violation of its sincere religious beliefs.

21. I refuse to use the "accommodation" that was added to the Contraceptive Mandate after the Supreme Court's ruling in *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014). I will not allow my companies to fill out and submit the "self-certification form," because the submission of that form affirmatively assists and facilitates the provision of abortifacient and non-abortifacient contraception, in violation of my sincere religious beliefs. Executing a certification form that enables my employees to obtain and use abortifacient contraceptive methods free of charge, or that enables them to obtain contraception for use in non-marital sexual activity, is as much a violation of my sincerely held religious beliefs as providing the contraception directly.

22. The "accommodation" in the Contraceptive Mandate is doubly unacceptable because it would use my company's plan to provide the contraceptive coverage, even though the third-party administrator is supposed to bear the financial costs. My religious beliefs do not permit my company's health plan to be used in any way to provide free contraception to my employees, even if someone else is covering the costs.

23. My third-party administrator has informed my company that if it invokes the "accommodation" offered in the Contraceptive Mandate, then my plan's infrastructure will be used in providing contraceptive coverage to our employees, and that there is no way to use the "accommodation" without involving my plan in the provision of contraceptive methods that violate my religious beliefs.

24. I therefore sincerely believe that the submission of the self-certification form is sufficiently connected to the destruction of human embryos and non-marital sexual activities as to make it immoral and against my religious beliefs for me or Braidwood to execute or deliver that form.

25. Instead, I have waited for the Trump Administration to issue its long-promised rules that exempt objecting employers from the Contraceptive Mandate. The final rule was announced on November 15, 2018, although it was not scheduled to take effect until January 14, 2019.

26. In anticipation of the final rule's effective date, I directed Braidwood to drop contraceptive coverage from its self-insured health plan effective December 1, 2018. Our third-party administrator prepared a plan document and summary plan description, dated December 20, 2018, and I circulated that document to Braidwood employees to inform them of this decision. A copy of this plan document and summary plan description is attached as Exhibit 4 in the appendix to the brief supporting the motion for preliminary injunction. The document states, in relevant part:

### Preventive Care Services

> As required by the Patient Protection and Affordable Care Act, the Plan covers Preventive care services without cost-sharing to Plan Participants and their eligible and enrolled dependents. However, Braidwood Management, Inc. believes that certain mandates under the Patient Protection and Affordable Care Act violate its religious liberty under the United States Constitution as provided in the *Burwell v. Hobby Lobby* case. As such, the Plan intends to not cover certain preventive services and medications that have been identified as required by the Patient Protection and Affordable Care Act, specifically any abortion or abortifacient contraceptives.

The document goes on to explain the preventive care that will be covered under Braidwood's health plan, and contraceptive methods are not listed. So Braidwood is no longer covering any type of contraception.

27. My company instructed Entrust (our third-party administrator) to produce an additional plan document and summary plan description, dated January 30, 2019, that makes clear that Braidwood's plan no longer covers *any* type of contraception, including non-abortifacients. A copy of this document is attached as Exhibit 5 in the appendix to the brief supporting the motion for preliminary injunction.

28. Judge Beetlestone's nationwide injunction against the final rule of November 15, 2018, has left Braidwood subject to the previous iteration of the Contraceptive Mandate, and Braidwood is now subject to heavy financial penalties for its decision to revoke coverage of contraception effective December 1, 2018.

29. I do not intend, at the time, to instruct Braidwood to restore coverage of contraception in response to Judge Beetlestone's nationwide injunction. Nor do I intend to have Braidwood submit the self-certification form. Instead, I have decided to seek immediate preliminary relief against the enforcement of the Contraceptive Mandate. The fact that Braidwood and I are being forced to choose between violating our sincerely held religious beliefs or subjecting ourselves to heavy financial penalties under 26 U.S.C. § 4980D(b) is a substantial burden on the exercise of our religion— regardless of which choice we decide to make.

This concludes my sworn statement. I swear under penalty of perjury that, to the best of my knowledge, the facts stated in this affidavit are true and complete.

*[signature]*
STEVEN F. HOTZE

Subscribed and sworn to me this 5th day of February, 2018

*[signature]*
NOTARY

GINA TEAFATILLER
NOTARY PUBLIC
ID# 129627108
State of Texas
Comm. Exp. 11-14-2021