IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| RICHARD W. DEOTTE *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 4:18-CV-00825-Y |
| | ) | |
| v. | ) | |
| | ) | |
| ALEX M. AZAR II, in his official | ) | |
| capacity as Secretary of Health and | ) | |
| Human Services *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN RESPONSE TO
MOTION FOR CLASS CERTIFICATION**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

   I.   Plaintiffs Have Failed To Demonstrate That an Identifiable Class Exists........................... 4

   II.   Plaintiffs Cannot Establish Commonality or Typicality...................................................... 9

CONCLUSION .................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prod., Inc. v. Windsor,*
  521 U.S. 591 (1997) .................................................................................................. 15

*Bell Atl. Corp. v. AT & T Corp.,*
  339 F.3d 294 (5th Cir. 2003) ..................................................................................... 4

*Burwell v. Hobby Lobby Stores, Inc.,*
  134 S. Ct. 2751 (2014) ............................................................................................... 2

*California v. HHS,*
  351 F. Supp. 3d 1267 (N.D. Cal. 2019) ..................................................................... 2

*Cejas v. Brown,*
  No. 3:18-cv-00543-WQH-JLB, 2018 WL 3532964 (S.D. Cal. Jul. 20, 2018) .......... 6

*Conrad v. Gen. Motors Acceptance Corp.,*
  283 F.R.D. 326 (N.D. Tex. 2012) .............................................................................. 5

*Davis v. Fort Bend Cty.,*
  765 F.3d 480 (5th Cir. 2014) ................................................................................... 10

*DeBremaecker v. Short,*
  433 F.2d 733 (5th Cir. 1970) ..................................................................................... 5

*Haliye v. Celestica Corp.,*
  No. 06-CV-4769(PJS/JJG), 2009 WL 1653528 (D. Minn. June 10, 2009) ............. 14

*Horton v. Goose Creek Indep. Sch. Dist.,*
  690 F.2d 470 (5th Cir. 1982) ................................................................................... 13

*In re BP, PLC Sec. Litig.,*
  758 F. Supp. 2d 428 (S.D. Tex. 2010) ..................................................................... 15

*In re Delta/AirTran Baggage Fee Antitrust Litig.,*
  317 F.R.D. 675 (N.D. Ga. 2016) ................................................................................ 4

*John v. Nat'l Sec. Fire & Cas. Co.,*
  501 F.3d 443 (5th Cir. 2007) ..................................................................................... 5

*Lindh v. Dir., Fed. Bureau of Prisons,*
  No. 2:14-CV-151-JMS-WGH, 2015 WL 179793 (S.D. Ind. Jan. 14, 2015) ...... 6, 14

*Martin v. Home Depot U.S.A., Inc.,*
  225 F.R.D. 198 (W.D. Tex. 2004) ........................................................................... 11

*McCoy v. Aramark Correctional Services,*
  No. 16-3027, 2018 WL 1366267 (D. Kan. Mar. 16, 2018) ..................................................... 14

*Morrow v. Washington,*
  277 F.R.D. 172 (E.D. Tex. 2011)..................................................................................... 7, 8, 9

*Pennsylvania v. Trump,*
  351 F. Supp. 3d 791 (E.D. Pa. 2019) ................................................................................... 2

*Pfeffer v. HSA Retail, Inc.,*
  No. SA-11-CV-959-XR, 2012 WL 1910034 (W.D. Tex. May 24, 2012) ......................... 7, 8, 9

*Robinson v. Gen. Motors Co.,*
  No. 4:15-CV-158-Y, 2015 WL 13731154 (N.D. Tex. Oct. 21, 2015) .................................... 14

*Robinson v. Tex. Auto. Dealers Ass'n,*
  387 F.3d 416 (5th Cir. 2004) ................................................................................................ 3

*Selby v. Principal Mut. Life Ins. Co.,*
  197 F.R.D. 48 (S.D.N.Y. 2000) ........................................................................................... 7

*Steering Comm. v. Exxon Mobil Corp.,*
  461 F.3d 598 (5th Cir. 2006) ................................................................................................ 3

*Stirman v. Exxon Corp.,*
  280 F.3d 554 (5th Cir. 2002) ................................................................................... 3, 11, 12

*Tagore v. United States,*
  735 F.3d 324 (5th Cir. 2013) .............................................................................................. 10

*Tatum v. Misner,*
  No. 13-CV-44-WMC, 2017 WL 4271657 (W.D. Wis. Sept. 26, 2017) ................................. 6

*Trevino v. Holly Sugar Corp.,*
  811 F.2d 896 (5th Cir. 1987) .............................................................................................. 11

*Unger v. Amedisys Inc.,*
  401 F.3d 316 (5th Cir. 2005) ............................................................................................ 3, 4

*Valenzuela v. Swift Beef Co., Inc.,*
  No. 3:06-CV-2322-N, 2009 WL 10677935 (N.D. Tex. Jan. 13, 2009).................................. 8

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011)................................................................................................... passim

*Washington v. CSC Credit Servs., Inc.,*
  199 F.3d 263 (5th Cir. 2000) ................................................................................................ 4

*Willis v. Behar*,
    No. 4:13-CV-3375, 2015 WL 12942481 (S.D. Tex. Dec. 14, 2015).........................................11

*Xcaliber Int'l Ltd. LLC v. Atty. Gen. State of Louisiana*,
    612 F.3d 368 (5th Cir. 2010) ................................................................................................8

*Yates v. Collier*,
    868 F.3d 354 (5th Cir. 2017) ................................................................................................9

**Statutes**

42 U.S.C. § 300gg-13(a) ..............................................................................................................1

42 U.S.C. § 300gg-13(a)(4) .........................................................................................................1

42 U.S.C. § 2000bb-1(b).............................................................................................................10

42 U.S.C. § 2000bb-1(c).............................................................................................................11

42 U.S.C. § 2000bb-3(a).............................................................................................................11

**Regulations**

45 C.F.R.§ 147.132(a)(2).............................................................................................................12

76 Fed. Reg. 46,621 (Aug. 3, 2011).............................................................................................1

77 Fed. Reg. 8,725 (Feb. 15, 2012) .............................................................................................1

Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under
    the Affordable Care Act,
    83 Fed. Reg. 57,536 (Nov. 15, 2018)...............................................................................2, 11

Moral Exemptions and Accommodations for Coverage of Certain Preventive Services Under the
    Affordable Care Act,
    83 Fed. Reg. 57,592 (Nov. 15, 2018)....................................................................................2

## INTRODUCTION

In 2010, as part of the Affordable Care Act (ACA), Congress required most group health plans and health-insurance issuers that offer group or individual health coverage to provide coverage for certain preventive services without "any cost sharing requirements." 42 U.S.C. § 300gg-13(a). The Act does not specify the types of women's preventive care that must be covered. Instead, as relevant here, the Act requires coverage, "with respect to women," of such "additional preventive care and screenings . . . as provided for in comprehensive guidelines supported by the Health Resources and Services Administration [HRSA]," a component of the Department of Health and Human Services (HHS). *Id.* § 300gg-13(a)(4). In August 2011, HRSA issued guidelines to require coverage of, among other things, all FDA-approved contraceptive methods. *See* 77 Fed. Reg. 8,725, 8,725 (Feb. 15, 2012). At the same time, invoking their authority under 42 U.S.C. § 300gg-13(a)(4), the government recognized that some employers hold sincere religious objections to providing insurance coverage for contraception, and thus decided to exempt some of those employers – churches and their integrated auxiliaries – from the requirement. *See* 76 Fed. Reg. 46,621, 46,623 (Aug. 3, 2011). Other religious employers, as well as employers with nonreligious moral objections, remained subject to the contraceptive mandate ("the mandate") and were left either to violate their sincerely-held religious beliefs or to be liable for significant fines. Years of litigation in dozens of cases followed.

In an effort to address serious religious and moral objections and finally bring the litigation to a close, HHS, Labor, and the Treasury ("the Agencies") issued rules that preserve

1

the mandate, but exempt employers with religious or moral objections.[1]  The rules also allow individuals with religious or moral objections to contraceptive coverage to obtain a health plan that conforms to their beliefs if an issuer is willing to provide it.  However, preliminary injunctions have prevented these rules from going into effect.[2]  The Agencies have appealed the injunctions and are defending the rules on appeal.

Plaintiffs in this action – four individuals and a corporation –brought suit contending that, as applied to them, the mandate violates the Religious Freedom Restoration Act (RFRA).  They seek to certify two nationwide classes, one consisting of individuals who sincerely object to the mandate for religious reasons, and one consisting of employers with similar objections.

The RFRA claims of the proposed class members, however, will require individualized assessments that are not suitable for class certification.  RFRA requires a court to determine whether a plaintiff – and thus each putative class member – possesses a subjective, sincerely-held religious belief that is substantially burdened by government action.  In an action asserting RFRA claims, this determination must be made on a case-by-case basis.  While the Supreme Court held in *Burwell v. Hobby Lobby Stores, Inc*., 134 S. Ct. 2751, 2779 (2014), that the contraceptive mandate, standing alone, imposes a substantial burden on employers with sincere religious objections to providing contraceptive coverage, and the same conclusion is true with respect to individuals with sincere religious objections to the individual mandate requiring them

---

[1] Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 83 Fed. Reg. 57,536, 57,536 (Nov. 15, 2018); Moral Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 83 Fed. Reg. 57,592, 57,592 (Nov. 15, 2018).

[2] *See Pennsylvania v. Trump*, 351 F. Supp. 3d 791 (E.D. Pa. 2019) (nationwide preliminary injunction); *California v. HHS*, 351 F. Supp. 3d 1267 (N.D. Cal. 2019) (preliminary injunction limited in scope to the fourteen plaintiff-states).

to obtain insurance that includes contraceptive coverage, the Court here must determine whether each proposed class member has such a sincerely-held religious objection.  The need for an inquiry into the sincerity and contours of each proposed class member's religious beliefs means that the proposed class is not readily identifiable by reference to objective criteria.  And the individualized assessments that would be necessary to adjudicate each proposed class member's RFRA claim means that the requirements of commonality and typicality also cannot be met.

It bears mention that the question whether the Court may certify a class raising RFRA challenges to the mandate is different from the question whether RFRA authorized (or required) the Agencies to promulgate rules creating a generally applicable exemption from the mandate for those with sincere religious objection – a question posed by separate challenges to those rules. Nothing in RFRA requires the Agencies to await a lawsuit and judicial order requiring them to take specific action to comply with RFRA.

Because Plaintiffs cannot satisfy the applicable requirements of Rule 23, class certification is not available here, and the motion for class certification should be denied.

## ARGUMENT

"The class-action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011).  Therefore, "[a] district court must conduct a rigorous analysis of the rule 23 prerequisites before certifying a class."  *Stirman v. Exxon Corp.*, 280 F.3d 554, 561 (5th Cir. 2002).  *See also Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006); *Unger v. Amedisys Inc.*, 401 F.3d 316, 320 (5th Cir. 2005); *Robinson v. Tex. Auto. Dealers Ass'n*, 387 F.3d 416, 421 (5th Cir. 2004).  "To make a determination on class certification, a district court must conduct an intense factual investigation."  *Robinson*, 387 F.3d at 420.

3

"[G]oing beyond the pleadings is necessary, as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Unger*, 401 F.3d at 321.  The Fifth Circuit has repeatedly "stress[ed] that it is the party seeking certification who bears the burden of establishing that the requirements of Rule 23 have been met." *Bell Atl. Corp. v. AT & T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003).

To proceed as a class, Plaintiffs must show that an ascertainable class exists, and meet all four requirements set forth in Fed. R. Civ. P. 23(a): numerosity, commonality, typicality, and adequacy of representation.  If Plaintiffs can satisfy all these criteria, they must also show that the action is maintainable as a class action under one of Rule 23(b)'s subsections.  *Washington v. CSC Credit Servs., Inc.*, 199 F.3d 263, 265 (5th Cir. 2000).  Here, Plaintiffs have moved to certify non-opt-out classes under Fed. R. Civ. P. 23(b)(2).  Therefore, Plaintiffs also must demonstrate that Defendants have "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriation respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  As explained below, class certification should be denied because Plaintiffs have not satisfied Rule 23's test for ascertainability, commonality, typicality, or adequacy.

## I.      Plaintiffs Have Failed to Demonstrate That an Identifiable Class Exists.

The requirement of a definable class protects absent plaintiffs "by defining who is entitled to relief" and protects defendants "by enabling a final judgment that clearly identifies who is bound by it."  *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 679 (N.D. Ga. 2016) (quoting 1 William B. Rubenstein, *Newberg on Class Actions* § 3:1 (5th ed.)).  Consequently, "[t]he existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23."

*John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007).  "An identifiable class

exists if its members can be ascertained by reference to objective criteria (ascertainability)."

*Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326, 328 (N.D. Tex. 2012); *see also*

*DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970) (per curiam) ("It is elementary that in

order to maintain a class action, the class . . . must be adequately defined and clearly

ascertainable.") (citations omitted); *id*. at 734-35 (affirming dismissal of 23(b)(2) class action

because class was not clearly ascertainable).

> Plaintiffs offer the following definition of the classes to be certified:
>
> Every current and future employer in the United States that objects, based on its sincerely held religious beliefs, to establishing, maintaining, providing, offering, or arranging for: (i) coverage or payments for some or all contraceptive services; or (ii) a plan, issuer, or third-party administrator that provides or arranges for such coverage or payments.
>
> All current and future individuals in the United States who: (1) object to coverage or payments for some or all contraceptive services based on sincerely held religious beliefs; and (2) would be willing to purchase or obtain health insurance that excludes coverage or payments for some or all contraceptive services from a health insurance issuer, or from a plan sponsor of a group plan, who is willing to offer a separate benefit package option, or a separate policy, certificate, or contract of insurance that excludes coverage or payments for some or all contraceptive services.

Br. in Supp. of Mot. for Class Certification at 1, ECF No. 20-1 ("Mot.").

> Neither of these two proposed definitions defines a readily identifiable class.  It is true

that the definitions generally track the religious exemptions that the Agencies codified in the

rules.  If not prevented from doing so by litigation, the Agencies will be able to implement those

rules.  Nevertheless, as relevant to class certification, both definitions are premised an individual

or employer's subjective "object[ion] . . . based on sincerely held religious beliefs" to coverage

or payments for "some or all contraceptive services."  The second class is also premised on

whether a putative class member "would be willing to" buy or obtain health insurance that meets

certain requirements.  Although it is possible to implement the rules without identifying all

potential entities and individuals encompassed by the exemptions, it is not possible to do so

under Rule 23.  Not all employers or individuals that may use the exemptions in the rules are

known to the Agencies, a fact that the Agencies discuss in the preamble of the rules themselves.

Identifying potential class members would thus require the Court to delve into each unidentified

individual's or employer's state of mind as to his or her or its personal religious beliefs or

willingness to purchase certain coverage.  That is a textbook example of an individualized

inquiry that dooms any attempt to properly define the class at the outset.  *See Lindh v. Dir., Fed.*

*Bureau of Prisons*, No. 2:14-CV-151-JMS-WGH, 2015 WL 179793, at \*4 (S.D. Ind. Jan. 14,

2015) (proposed RFRA class of all male Muslim prisoners with sincerely-held religious beliefs

requiring them not to wear pants above the ankle was not sufficiently definite "because class

membership would be based on a putative class member's state of mind" and there was no

evidence that class members "would be ascertainable by reference to objective criteria – *i.e.*, that

male Muslim prisoners ever specifically disclose to the [defendant] their position as to whether

their understanding of Islam requires them to wear their pants above their ankles"); *Cejas v.*

*Brown*, No. 3:18-cv-00543-WQH-JLB, 2018 WL 3532964, at \*4 (S.D. Cal. Jul. 20, 2018)

(denying permissive joinder in case alleging that prison's implementation of religious policies

violated free-exercise rights because "determining whether each individual plaintiff's right under

the First Amendment and the [Religious Land Use and Institutionalized Persons Act] have been

violated will require an individualized consideration of the facts regarding the specific burdens

Defendants allegedly placed on each of their sincerely held religious beliefs and/or practices");

*Tatum v. Misner*, No. 13-CV-44-WMC, 2017 WL 4271657, at \*8 (W.D. Wis. Sept. 26, 2017)

(declining to reconsider denial of class certification in case asserting free-exercise claim because,

*inter alia*, liability and remedy findings were "very much based on the individualized inquiry"

into "the sincerity of [plaintiff's] religious beliefs," an inquiry that is "not amenable to class

treatment").

Additionally, both proposed definitions are too broad and amorphous to define a readily

identifiable class.  First, neither definition contains a sufficiently definite time period.  *See Selby*

*v. Principal Mut. Life Ins. Co*., 197 F.R.D. 48, 56 (S.D.N.Y. 2000) ("[T]he class's definition

must refer to a specific and bounded time frame in order to be workable. . ."); *Pfeffer v. HSA*

*Retail, Inc*., No. SA-11-CV-959-XR, 2012 WL 1910034, at *3 (W.D. Tex. May 24, 2012)

(class certification denied, *inter alia*, because "Plaintiff has not provided a sufficiently definite

time period for his class definition," in that "[w]ithout an exact date on which to cut off class

membership, the Court has no way of properly identifying those consumers who should be

included in the class and those who should be excluded" and thus "the parameters of the class

remain undefined").  Second, the definitions are phrased so broadly that it will not be

administratively feasible for the Court to determine class membership.  *See Morrow v.*

*Washington*, 277 F.R.D. 172, 187 (E.D. Tex. 2011) ("The proposed class must be clearly defined

so that it is administratively feasible for the Court to determine whether a particular individual is

a member.") (citations omitted).  "The Court must be able to make this determination without

having to answer numerous fact-intensive questions."  *Id*. (citations omitted).

Difficulties in identifying class members create problems not only for the Court, but for

Defendants as well.  If the Court were to enter injunctive relief as to the proposed classes, the

Agencies would have no way of determining whether particular employers and individuals are

protected by the injunction or not, placing the Agencies at risk of contempt.  The Agencies'

promulgation of *regulatory* exemptions from the mandate in the rules to protect these same

employers and individuals does not carry the same risk, as the rules are an exercise of the

Agencies' discretion and not backed by a court order.  *Cf. Xcaliber Int'l Ltd. LLC v. Atty. Gen.*

*State of Louisiana*, 612 F.3d 368, 382 (5th Cir. 2010) ("Generally speaking, legislative actions

are non-individualized determinations that affect a wider class of individuals, whereas

adjudicative actions involve individualized assessments that affect a smaller number of people in

a more exceptional manner.") (citations omitted).  Consequently, the Agencies do not need to

know in advance who will use the exemptions, and can explore qualifications for the exemptions

– if necessary – through ordinary administrative and enforcement processes.

 The proposed definitions encompass every single current or future employer in the

United States that has a sincerely-held religious objection to "establishing, maintaining,

providing, offering, or arranging for" (1) "coverage or payments for some or all contraceptive

services" or (2) a plan that provides for some or all contraceptive services.  Mot. at 1.  They also

include every current or future individual in the United States who (1) has an objection to

"coverage or payments for some or all contraceptive services" (2) based on a sincerely-held

religious belief, and (3) would be willing to buy or obtain health insurance that excludes

coverage or payments for some or all such services.  *Id.*  It will be infeasible for the Court to

determine whether any particular individual or employer is a member of these two broad

categories, and that warrants denial of Plaintiffs' motion.  *See Morrow*, 277 F.R.D. at 187;

*Pfeffer*, 2012 WL 1910034, at *3 ("Before a court may certify a class, it must ensure that the

proposed class is clearly defined so that it will be administratively feasible for the court to

determine whether a particular individual is a member.") (citation omitted); *accord Valenzuela v.*

*Swift Beef Co., Inc.*, No. 3:06-CV-2322-N, 2009 WL 10677935, at *1 (N.D. Tex. Jan. 13, 2009).

Moreover, whether a particular employer or individual has a sincerely-held religious belief, and

whether that employer or individual has an objection to particular contraceptive coverage based on that belief, are facts that depend upon the individual circumstances of each case. Establishing the existence of such facts would require individualized mini-hearings simply to determine class membership, undermining any efficiency gained by the use of a class action. *See Morrow*, 277 F.R.D. at 187 ("The Court must be able to make [the] determination [of whether a particular individual is a member of the class] without having to answer numerous fact-intensive questions.") (citations omitted); *Pfeffer*, 2012 WL 1910034, at *3 ("A court must be able to identify class members without resorting to intensive, individualized factual inquiries.") (citation omitted).

In sum, Plaintiffs' proposed class definitions hinge on individualized criteria and are too broad, amorphous, and fact-intensive to encompass a manageable class. Accordingly, Plaintiffs have failed to establish that they represent a readily-identifiable class, and their motion should be denied.

## II.     Plaintiffs Cannot Establish Commonality or Typicality.

Rule 23 also requires that a party moving for class certification establish that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The commonality requirement "demands that the putative class members' claims 'must depend upon a common contention' that 'must be of such a nature that it is capable of class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Yates v. Collier*, 868 F.3d 354, 361 (5th Cir. 2017) (quoting *Wal-Mart*, 564 U.S. at 350). "Thus, what matters for Rule 23(a) 'is not the raising of common questions – even in droves – but, rather the capacity of a class-wide proceeding to generate common answers apt to drive the resolution of the litigation.'" *Yates*, 868 F.3d at 361.

9

It does not suffice "that plaintiffs 'have all suffered a violation of the same provision of law' because laws can be violated in different ways, and so suffering a violation of the same provision of law 'gives no cause to believe that all [the plaintiffs'] claims can productively be litigated at once.'" *Id.* Rather, "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart*, 564 U.S. at 349-50 (citation omitted).

Here, Plaintiffs cannot show commonality, because claims brought under RFRA must be assessed by the Court on a case-by-case basis and are not suitable for class determination. RFRA states that courts must consider "application of the [religious] burden *to the person*." 42 U.S.C. § 2000bb-1(b) (emphasis added). Here, such a consideration requires, among other things, an individualized assessment of each individual's or employer's sincerely-held religious belief. As the Fifth Circuit has explained, in making "the threshold inquiry into a person's beliefs" under RFRA, "each case turns on its particular facts." *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013) (citation omitted); *see also Davis v. Fort Bend Cty.*, 765 F.3d 480, 485 (5th Cir. 2014) ("The sincerity of a person's religious belief is a question of fact unique to each case."). "The specific religious practice must be examined rather than the general scope of applicable religious tenets, and the plaintiff's 'sincerity' in espousing that practice is largely a matter of individual credibility." *Tagore*, 735 F.3d at 328 (citation omitted). Though "the sincerity of a plaintiff's engagement in a particular religious practice is rarely challenged" and "claims of sincere religious belief in a particular practice have been accepted on little more than the plaintiff's credible assertions," *id.*, that does not eliminate the individualized nature of the court's inquiry.[3]

---

[3] The fact that courts must make individualized, case-by-case assessments when adjudicating a particular person's RFRA claim does not mean that an agency cannot rely on RFRA to create generally applicable religious exemptions like those established in the rules, especially where, as

For similar reasons, Plaintiffs cannot demonstrate typicality.  To satisfy the typicality requirement, "the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  "[T]he critical inquiry [for typicality] is whether the class representative's claims have the same essential characteristics of those of the putative class."  *Stirman,* 280 F.3d at 562 (citation omitted).  The Supreme Court has noted that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge" because "[b]oth serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *Wal-Mart*, 564 U.S. at 349 n.5 (citation and internal punctuation omitted).  "However, typicality will be defeated if the court must make a highly individualized factual determination to assess the defendant's liability."  *Willis v. Behar*, No. 4:13-CV-3375, 2015 WL 12942481, at *9 (S.D. Tex. Dec. 14, 2015) (citing 5 *Moore's Federal Practice* § 23.24[4]); *see also Trevino v. Holly Sugar Corp*., 811 F.2d 896, 905 (5th Cir. 1987) (commonality and typicality not met because "[t]he necessity for individualized proof indicates that a class action is not an economical or efficient way of processing the complaints of the proposed class") (citation omitted); *Martin v. Home Depot U.S.A., Inc*., 225 F.R.D. 198, 201 (W.D. Tex. 2004) ("[B]ecause

---

here, the exception the rules extend to employers and individuals apply only where those employers and individuals have sincere religious objections to contraceptive services.  RFRA provides not only "a claim or defense in a judicial proceeding" to a person whose religious exercise allegedly has been substantially burdened, 42 U.S.C. § 2000bb-1(c), but also "applies to all Federal law, *and the implementation of that law*," *id*. § 2000bb-3(a) (emphasis added).  Indeed, nothing required the Agencies here to await a lawsuit and judicial order to comply with RFRA before promulgating the religious exemption.  *See* 83 Fed. Reg. at 57,546 (Agencies' conclusion that RFRA authorizes the religious exemption).  Moreover, the standard for a court to certify a class under Rule 23(a) is distinct from the scope of an agency's authority to promulgate rules.

11

the proof of Plaintiffs' claims and defenses thereto will be dominated by individual evidence, Plaintiffs' certification motion does not satisfy Rule 23(a)(3)'s typicality requirement.").

Here, the proposed class members do not necessarily share the same sincerely-held religious belief.  Rather, the Court would need to make fact-specific, individualized determinations as to whether any particular proposed class member shares the same sincerely-held religious belief as Plaintiffs.  *See, e.g.*, Am. Comp. ¶ 43 (alleging that "Dr. Hotze's Christian beliefs do not oppose the use of non-abortifacient contraception by married couples to prevent pregnancy, [but] Dr. Hotze nevertheless objects to the Contraceptive Mandate's requirement that he provide non-abortifacient contraception to his employees at zero marginal cost because it facilitates sexual activity outside of marriage).  Clearly, this inquiry would turn on factors specific not only to a particular circumstance, but also to a particular putative class member and his, her, or its unique religious views and practices.  The rules acknowledge that exemptions can apply based on objections to "some" or "all" contraceptives, and that exemptions only apply to the extent of the particular objection.  45 C.F.R. § 147.132(a)(2).  At a minimum, the Court would need to determine whether each proposed class member held the same type of religious belief as to the provision of the same specific types of contraceptive services.  As a result, the named plaintiffs' claims cannot be said to have the "same essential characteristics as those of the putative class."  *Stirman*, 280 F.3d at 562.

Furthermore, it is a matter of public record that at least some putative class members have obtained individualized relief as to the contraceptive-coverage mandate because of their sincerely-held religious beliefs through court-issued injunctions.  *See* Order, *Colo. Christian Univ. v. Azar*, No. 1:13-cv-02105-REB-MJW (D. Colo. Jul. 11, 2018) (permanent injunction prohibiting enforcement of mandate against Christian college); Order, *Geneva Coll. v. Azar*, No.

2:12-cv-00207-JFC (W.D. Pa. Jul. 5, 2018) (same); Judgment Order, *Sharpe Holdings, Inc. v.*

*HHS*, No. 2:12-cv-00092-DDN (E.D. Mo. Mar. 28, 2018) (prohibiting enforcement of mandate

against college and non-profit organization); Order, *Ass'n of Christian Schools Int'l v. Azar*, No.

1:14-cv-02966-PAB (D. Colo. Dec. 10, 2018) (prohibiting enforcement against association of

Christian schools, four Christian colleges, and non-profit organization); Order, *Little Sisters of*

*the Poor Home for the Aged v. Azar*, No. 1:13-cv-02611-WJM-BNB (D. Colo. May 29, 2018)

(prohibiting enforcement against four non-profit organizations).  This further demonstrates that

individualized, case-by-case assessments is the appropriate method of adjudicating a particular

person's or entity's RFRA claim, rather than classwide assessment.  Moreover, because the

proposed classes do not exclude entities that have already received such individualized relief,

any relief this Court were to award to the proposed classes could conflict with relief awarded in

other cases.  This potential for intra-class conflict renders Plaintiffs' claims atypical for purposes

of Rule 23(a)(3).  *See Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 486 n.27 (5th Cir.

1982) ("Intraclass antagonism may be analyzed under either Rule 23(a)(4), the adequacy

requirement, or Rule 23(a)(3), the typicality requirement.") (citing 7 Wright & Miller, *Federal*

*Practice & Procedure* §§ 1768, 1769)).

Because of the need for individualized assessments, courts have declined to certify class

actions in cases, such as this one, where RFRA or Free Exercise claims are at issue.  Thus,

another court in this District determined that, as to a proposed class of employees alleging that

their employer had failed to accommodate their requests for unpaid days off to observe religious

holidays, commonality did not exist "because the merits of each class member's claims would

necessarily require individual, fact-specific inquiries," namely, "[f]or each putative class

member, the Court would be required to evaluate each member's religion, that religion's holy

days, and the days for which each individual requested leave." *Robinson v. Gen. Motors Co*.,

No. 4:15-CV-158-Y, 2015 WL 13731154, at *2 n.1 (N.D. Tex. Oct. 21, 2015). There, as here,

"[b]ecause the religious-accommodation claims at issue in this case would require that the Court

engage in individualized analysis, these claims are ill-suited for a class action." *Id*.

Similarly, *Lindh* found that commonality and typicality did not exist with respect to a

proposed class of male Muslim prisoners alleging that a prison policy of requiring them to wear

pants above the ankle violated their sincerely-held religious beliefs. As the court explained,

"[t]he superficial common question of law that Mr. Lindh proposes – whether Defendant's policy

regarding the length of Muslim prisoners' pants violates RFRA – is insufficient because he seeks

to represent all male Muslim prisoners housed by the [defendant] and the undisputed evidence in

the record is that not all male Muslim prisoners share his religious belief on this issue." 2015

WL 179793, at *6. The court also determined that typicality was lacking, explaining that

"[a]nalyzing individualized factors to determine the parameters of individual claims is the

antithesis of typicality." *Id*. (citing authority).

In addition, in *McCoy v. Aramark Correctional Services*, No. 16-3027, 2018 WL

1366267, at *1 (D. Kan. Mar. 16, 2018), an inmate alleged that his prison's decision to stop

serving kosher meals violated the Free Exercise Clause, and sought to certify a class of inmates

affected by the prison's decision. The court found that commonality was not satisfied because,

*inter alia*, the inmate did not "address the fact that the claims he asserts address individual

plaintiffs' sincerely held religious beliefs and require individual plaintiffs to show that his or her

beliefs were substantially burdened by the government" *Id*. at *10. *See also Haliye v. Celestica

Corp*., No. 06-CV-4769(PJS/JJG), 2009 WL 1653528, at *8 (D. Minn. June 10, 2009) (putative

class of Muslim employees alleging that employer failed to accommodate their duty to pray

during the day lacked commonality because the outcome of a religious-accommodation claim "is

highly dependent on the specific facts of the claim" and "[e]stablishing a prima facie case

requires an individualized inquiry into whether the plaintiff has a bona fide religious belief").

Because Plaintiffs cannot satisfy the commonality or typicality requirements of Fed. R.

Civ. P. 23(a), class certification is not appropriate.[4]

## CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court deny

Plaintiffs' motion for class certification.

Dated:  March 8, 2019                              Respectfully submitted,

                                                   JOSEPH H. HUNT
                                                   Assistant Attorney General

                                                   MICHELLE BENNETT
                                                   Assistant Branch Director

                                                     /s/ Daniel Riess
                                                   DANIEL RIESS (Texas Bar # 24037359)
                                                   Trial Attorney
                                                   U.S. Department of Justice
                                                   Civil Division, Rm. 6122
                                                   20 Massachusetts Avenue, NW
                                                   Washington, D.C. 20530
                                                   Telephone: (202) 353-3098
                                                   Fax: (202) 616-8460
                                                   Email: Daniel.Riess@usdoj.gov
                                                   *Attorneys for Defendants*

---

[4] Rule 23(a)'s "adequacy-of-representation requirement tends to merge with the commonality and typicality criteria . . . , which serve as guideposts for determining whether maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997); *see also, e.g.*, *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 437-39 (S.D. Tex. 2010) (discussing typicality and adequacy requirements in tandem, because of the relatedness of the inquiries).  For the same reasons that Plaintiffs have not satisfied the commonality and typicality requirements, they have failed to demonstrate adequacy of representation.

**CERTIFICATE OF SERVICE**

On March 8, 2019, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) or the local rules.

 /s/ Daniel Riess
Daniel Riess