**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **RICHARD W. DEOTTE et al.,** | § | |
| | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No.  4:18-cv-00825-O** |
| | § | |
| **ALEX M. AZAR II et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## <u>ORDER</u>

Before the Court are Plaintiffs' Motion for Class Certification, ECF No. 20, filed February 5, 2019; Defendants' Response and Objection, ECF No. 30, filed March 8, 2019; and Plaintiffs' Reply, ECF No. 31, filed March 15, 2019. Having reviewed the motion, briefing, and applicable law, the Court finds the Motion for Class Certification, ECF No. 20, should be and is hereby **GRANTED**.

## I.    BACKGROUND

In 2010, Congress mandated through the Patient Protection and Affordable Care Act (ACA) that "[a] group health plan and a health insurance issuer offering group or individual health insurance coverage shall . . . provide coverage for and shall not impose any cost sharing requirements for" such "preventive care and screenings" for women "as provided for in comprehensive guidelines supported by the Health Resources and Services Administration [(HRSA)] . . .." 42 U.S.C. § 300gg-13(a)(4). Congress did not make a policy choice about what "preventive care and screenings" must be covered but instead left that determination to HRSA, an agency of the Department of Health and Human Services (HHS). *Id.*

In August 2011, HRSA made the policy choice Congress left open by issuing guidelines requiring coverage of all FDA-approved contraceptive methods—the "contraceptive mandate." *See* 77 Fed. Reg. 8,725, 8,725 (Feb. 15, 2012) ("These preventive health services include, with respect to women, preventive care and screening provided for in the comprehensive guidelines supported by the [HRSA] that were issued on August 1, 2011 . . . As relevant here, the HRSA Guidelines require coverage, without cost sharing, for '[a]ll Food and Drug Administration [(FDA)] approved contraceptive methods . . ..'"). On August 3, 2011, the Departments of the Treasury, Labor, and HHS issued amended interim final rules to "take[] into account the effect on the religious beliefs of certain religious employers if coverage of contraceptive services were required in the group health plans in which employees in certain religious positions participate." 76 Fed. Reg. 46,621, 46,623 (Aug. 3, 2011). Accordingly, the interim final rules created exemptions from the contraceptive mandate for non-profit religious employers, including "churches, their integrated auxiliaries, and conventions or associations of churches, as well as . . . the exclusively religious activities of any religious order." *Id.*

According to Plaintiffs, "To use this accommodation, an entity was required to certify that it is a religious non-profit that objects to covering some or all methods of contraception on religious grounds," at which point "the issuer of the group health insurance used by the religious non-profit must exclude contraceptive coverage from that employer's plan, but the issuer must pay for any contraception used by the non-profit's employees." Am. Compl. 4, ECF No. 19. "The issuer may not shift any of those costs on to the religious non-profit, its insurance plan, or its employee beneficiaries." *Id.* (citing 78 Fed. Reg. 39870, 39896–97 (July 2, 2013)).  Plaintiffs also allege, "If a religious non-profit is self-insured, then its third-party administrator must pay for the employees'

contraception, without shifting any costs on to the religious non-profit, its insurance plan, or its employee beneficiaries." *Id.* (citing 78 Fed. Reg. 39870, 39893 (July 2, 2013)).

The Government represents that, despite these accommodations, "[o]ther religious employers, as well as employers with nonreligious moral objections, remained subject to the contraceptive mandate . . . and were left either to violate their sincerely-held religious beliefs or to be liable for significant fines." Defs.' Resp. Mot. Certification 2, ECF No. 30. In the Government's words, "Years of litigation in dozens of cases followed." *Id.* at 1.

"In an effort to address serious religious and moral objections and finally bring the litigation to a close," the Government explains, the Departments of "HHS, Labor, and the Treasury . . . issued rules that preserve the [contraceptive] mandate, but exempt employers with religious or moral objections." *Id.* at 1–2 (citing Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 83 Fed. Reg. 57,536 (Nov. 15, 2018); Moral Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 83 Fed. Reg. 57,592 (Nov. 15, 2018)). The Government further explains that "[t]he rules also allow individuals with religious or moral objections to contraceptive coverage to obtain a health plan that conforms to their beliefs if an issuer is willing to provide it." *Id.* at 2.

Notably, the Government Departments involved in promulgating the rules expressly noted these exceptions were compelled by the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb–1 (RFRA). *See, e.g.*, 83 Fed. Reg. 57,536, 57,544 (Nov. 15, 2018) ("[W]ith respect to religious employers, the Departments conclude that, without finalizing the expanded exemptions, and therefore requiring certain religiously objecting entities to choose between the [Contraceptive] Mandate, the accommodation, or penalties for noncompliance—or requiring objecting individuals

to choose between purchasing insurance with coverage to which they object or going without insurance—the Departments would violate their rights under RFRA.").

On January 14, 2019, however, the United States District Court for the Eastern District of Pennsylvania issued a nationwide injunction prohibiting the Government from enforcing its rules designed to protect religious liberties. *See Pennsylvania v. Trump*, No. 2:17-cv-04540-WB (E.D. Pa. Jan. 14, 2019) (order granting nationwide preliminary injunction). Plaintiffs thereafter filed this suit, alleging essentially what the Government's promulgating Departments previously published in the Federal Register. *Compare* Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 83 Fed. Reg. 57,536, 57,544 (Nov. 15, 2018) *with* Am. Compl. 1, ECF No. 19 ("This 'Contraceptive Mandate' violates the Religious Freedom Restoration Act because it substantially burdens the religious exercise of employers and individuals who object to contraception and abortifacients.).

"Plaintiffs Richard and Yvette DeOtte and plaintiffs John and Alison Kelley are Christians who believe that life begins at conception" and they "regard the use of abortifacient contraception as morally equivalent to abortion." Am. Compl. 7, ECF No. 19. "Mr. DeOtte and Mr. Kelley are self-employed and responsible for purchasing their own health insurance for themselves and for their families." *Id.* "The DeOttes and the Kelleys have opted to forego health insurance rather than pay for insurance that subsidizes abortifacient contraception." *Id.* at 8. They allege they "would, however, be willing to purchase health insurance if it were possible to buy insurance that excludes contraceptive coverage." *Id.*

Plaintiff "Braidwood Management Inc. employs approximately 70 individuals, and its employees work at one of . . . three business entities, each of which is owned or controlled by Dr. Hotze." *Id.* at 9. "Dr. Hotze is a Christian, and he operates his business according to Christian

principles and teaching." *Id.* "Dr. Hotze believes that life begins at conception, and that the use of abortifacient contraception is tantamount to abortion. Dr. Hotze's beliefs on this matter are rooted in his Christian faith." *Id.* Dr. Hotze also "objects to the Contraceptive Mandate's requirement that he provide non-abortifacient contraception to his employees at zero marginal cost because it facilitates sexual activity outside of marriage." *Id.*

"Braidwood Management Inc. is self-insured and . . . is compelled to offer ACA-compliant health insurance to its employees or face heavy financial penalties." *Id.* Plaintiffs allege that, "[u]nder the Contraceptive Mandate, Braidwood must choose between: (1) Providing contraception to its employees; (2) Executing a self-certification form that leads to the provision of contraception by others; or (3) Paying a tax penalty of $100 per employee per day under 26 U.S.C. § 4980D." *Id.* at 10. "Dr. Hotze refuses to allow Braidwood to execute the self-certification form that the Contraceptive Mandate offers to objecting employers" because he "regards the submission of that form as an act that affirmatively assists and facilitates the provision of abortifacient and non-abortifacient contraception." *Id.* Dr. Hotze had "instructed Braidwood to terminate contraceptive coverage in its self-insured health plan . . . after the religious exemptions had been announced in the final rule of November 15, 2018," but in the wake of the nationwide injunction rolling those religious protections back "Braidwood is now facing substantial tax penalties—$100 per employee per day." *Id.*

Plaintiffs plead two causes of action—RFRA and the Administrative Procedure Act, 5 U.S.C. § 702. *See* Am. Compl. 13, ECF No. 19. Plaintiffs seek to certify two separate classes, one consisting of individuals who sincerely object to the mandate for religious reasons, and one consisting of employers who hold similar objections. *See* Mot. Certification, ECF No. 20.

## II.     LEGAL STANDARD

Plaintiffs move for class certification under Federal Rule of Civil Procedure 23. "To obtain class certification, parties must satisfy Rule 23(a)'s four threshold requirements, as well as the requirements of Rule 23(b)(1), (2), or (3)." *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 523 (5th Cir. 2007).  Rule 23(a)'s four threshold requirements are:

(1)     the class is so numerous that joinder of all members is impracticable;
(2)     there are questions of law or fact common to the class;
(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4)     the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). The four threshold requirements are known as numerosity, commonality, typicality, and adequacy. And here, Plaintiffs claim Rule 23(b)(2) provides the appropriate grounds for certification. Rule 23(b)(2) applies where the four threshold requirements are met and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." FED. R. CIV. P. 23(b)(2).

The parties seeking class certification "bear the burden of proof to establish that the proposed class satisfies the requirements of Rule 23." *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 837 (5th Cir. 2012). "The decision to certify is within the broad discretion of the court, but that discretion must be exercised within the framework of rule 23." *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981)). This Court must "look beyond the pleadings to 'understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues.'" *Stukenberg*, 675 F.3d at 837 (quoting *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 548 (5th Cir. 2003)).

III.    **APPLICATION**

A.      **The Parties' Arguments**

Plaintiffs move to certify two separate classes. Their proposed definition for the first class,

the "Employer Class," is:

> Every current and future employer in the United States that objects, based on its
> sincerely held religious beliefs, to establishing, maintaining, providing, offering, or
> arranging for: (i) coverage or payments for some or all contraceptive services; or
> (ii) a plan, issuer, or third-party administrator that provides or arranges for such
> coverage or payments.

Br. Supp. Mot. Certification 1, ECF No. 20-1. Urging that the Employer Class meets Rule 23(a)'s

numerosity requirement, Plaintiffs point out the "defendants have noted that approximately 87 for-

profit employers have filed lawsuits challenging the Contraceptive Mandate, and approximately

122 nonprofit employers have challenged the accommodation process." *Id.* at 3 (citing 83 Fed.

Reg. 57,536, 57,575 (Nov. 15, 2018)). Plaintiffs also cite the "5,158 Catholic elementary schools

and 1,194 Catholic secondary schools in the United States," noting many of these entities are not

exempt as integrated auxiliaries of the Church. *Id.* at 2. Looking to this and other data, Plaintiffs

continue, "one can confidently estimate that the Braidwood class members number in the hundreds

or even thousands, but it is difficult to come up with a more precise calculation." *Id.* at 2–3.

As to commonality, Plaintiffs claim the following legal question is common to all members

of the Employer Class:

> Does the Contraceptive Mandate violate the Religious Freedom Restoration Act by
> compelling objecting employers to choose among the following three options: (1)
> Provide contraceptive coverage in their employees' health insurance; (2) Fill out
> and submit a form that leads directly to the provision of objectionable contraception
> by their insurer or third-party administrator; or (3) Pay a heavy financial penalty[?]

*Id.* at 3. Plaintiffs allege this common legal question breaks into three common parts: (1) Does the

contraceptive mandate burden the religious freedom of employers in the Employer Class; (2) Is

there a compelling governmental interest behind enforcing the contraceptive mandate against

employers in the Employer Class; and (3) Is the contraceptive mandate the least restrictive means of serving that compelling governmental interest? *Id.* at 3–4.

Plaintiffs next argue the Employer Class satisfies the typicality requirement because "Braidwood contends that the Contraceptive Mandate violates the Religious Freedom Restoration Act as applied to employers who object to contraceptive coverage for sincere religious reasons— the precise claim that it seeks to litigate on behalf of the absent class members." *Id.* at 4. And as to adequacy, Plaintiffs claim "Braidwood will fairly and adequately represent the interests of its fellow class members, and there are no conflicts of interest between Braidwood and the other members of this class." *Id.* at 5. Finally, Plaintiffs contend Rule 23(b)(2) provides the grounds for certifying the Employer Class because Braidwood seeks "[a] single injunction that stops the defendants from enforcing the Contraceptive Mandate against each of the class members." *Id.* at 6; *see also id.* ("The Supreme Court has held that this requirement is satisfied 'when a single injunction or declaratory judgment would provide relief to each member of the class.'" (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011))).

Plaintiffs' proposed definition for the second class, the "Individual Class," is:

> All current and future individuals in the United States who: (1) object to coverage or payments for some or all contraceptive services based on sincerely held religious beliefs; and (2) would be willing to purchase or obtain health insurance that excludes coverage or payments for some or all contraceptive services from a health insurance issuer, or from a plan sponsor of a group plan, who is willing to offer a separate benefit package option, or a separate policy, certificate, or contract of insurance that excludes coverage or payments for some or all contraceptive services.

*Id.* Plaintiffs argue "[t]he number of individuals who meet this description far exceeds the numerosity threshold," suggesting "one can confidently estimate that the 'approximate number of class members' exceeds one million." *Id.* at 7–8 (quoting Local Rule 23.2(b)(1)); *see also id.* at 8 ("[I]f one considers only the number of Catholic objectors, the class exceeds 5.6 million . . . But

even if we cut the number in half to account for [those with public insurance], the class far exceeds the numerosity threshold.").

Plaintiffs then assert the question of law common to all members of the Individual Class is: "Does the Contraceptive Mandate violate the Religious Freedom Restoration Act by forcing class members to choose between purchasing insurance that subsidizes other people's contraception, or foregoing health insurance entirely?" *Id.* at 8. This common legal question allegedly breaks into three common parts: (1) Does the contraceptive mandate burden the religious freedom of individuals in the Individual Class; (2) Is there a compelling governmental interest behind enforcing the contraceptive mandate against members of the Individual Class; and (3) Is the contraceptive mandate the least restrictive means of serving that compelling interest? *Id.*

Plaintiffs next argue typicality is satisfied because the claim Plaintiff Richard DeOtte raises "is the identical claim that he seeks to litigate on behalf of the absent class members" and because "Mr. DeOtte's interests are aligned with the interests of his fellow class members, as each of them benefits from a ruling that allows them to acquire health insurance that excludes contraceptive coverage." *Id.* at 9. As to adequacy, Plaintiffs contend "Mr. DeOtte will fairly and adequately represent the interests of his fellow class members, and there are no conflicts of interest between Mr. DeOtte and other members of this class." *Id.* at 10. And Plaintiffs finally argue the Individual Class satisfies Rule 23(b)(2) because "Mr. DeOtte is requesting a single injunction that stops the defendants from enforcing the Contraceptive Mandate in a manner that prevents the class members from purchasing health insurance without contraceptive coverage." *Id.*

Defendants challenge Plaintiffs' certification arguments on some, but not all, of the available grounds. *See, e.g.*, Defs.' Resp. 4, ECF No. 30 ("As explained below, class certification should be denied because Plaintiffs have not satisfied Rule 23's test for ascertainability,

commonality, typicality, or adequacy.").[1] Most of Defendants' arguments center on the assertion that "[t]he RFRA claims of the proposed class members . . . will require individualized assessments that are not suitable for class certification." *Id.* at 2.

Defendants first argue Plaintiffs fail to meet the Fifth Circuit's requirement that a class be ascertainable. *See id.* at 5 ("An identifiable class exists if its members can be ascertained by reference to objective criteria (ascertainability)." (quoting *Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326, 328 (N.D. Tex. 2012))). Defendants assert one reason the classes are unascertainable is that "both definitions are premised on an individual or employer's subjective" religious beliefs. *Id.* Defendants also claim the classes are unascertainable because "neither definition contains a sufficiently definite time period" and because "the definitions are phrased so broadly that it will not be administratively feasible for the Court to determine class membership." *Id.* at 7. As a result, Defendants argue, the proposed definitions "would require individualized mini-hearings simply to determine class membership, undermining any efficiency gained by the use of a class action." *Id.* at 9.

Defendants next argue the classes lack both commonality and typicality. *See id.* at 9–15. Here again, Defendants contend "Plaintiffs cannot show commonality, because claims brought under RFRA must be assessed by the Court on a case-by-case basis and are not suitable for class determination." *Id.* at 10. Specifically, Defendants urge that Plaintiffs' RFRA claims necessitate "an individualized assessment of each individual's or employer's sincerely-held religious belief."

---

[1] Defendants do not separately brief the issue of adequacy, but they include a footnote suggesting "Rule 23(a)'s 'adequacy-of-representation requirement tends to merge with the commonality and typicality criteria'" and argue that, "[f]or the same reasons that Plaintiffs have not satisfied the commonality and typicality requirements, they have failed to demonstrate adequacy of representation." Defs.' Resp. 15 n.4, ECF No. 30 (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997)). Therefore, through addressing Defendants' commonality and typicality arguments below, the Court simultaneously addresses Defendants' incorporated adequacy arguments.

*Id.* And such an assessment, Defendants insist, requires an examination of an employer's or individual's "specific religious *practice*." *Id.* (emphasis added).

"For similar reasons," Defendants continue, "Plaintiffs cannot demonstrate typicality." *Id.* at 11. Defendants say this is because "the proposed class members do not necessarily share the *same* sincerely-held religious belief." *Id.* at 12 (emphasis added). Defendants suggest that, "[a]t a minimum, the Court would need to determine whether each proposed class member held the same type of religious belief as to the provision of the same specific types of contraceptive services." *Id.* "As a result, the named plaintiffs' claims cannot be said to have the 'same essential characteristics as those of the putative class.'" *Id.* (citation omitted). For support, Defendants point out that "another court in this District determined that, as to a proposed class of employees alleging that their employer had failed to accommodate their requests for unpaid days off to observe religious holidays, commonality did not exist 'because the merits of each class member's claims would necessarily require individual, fact-specific inquiries.'" *Id.* at 13 (quoting *Robinson v. Gen. Motors Co.*, No. 4:15-CV-158-Y, 2015 WL 13731154, at *2 n.1 (N.D. Tex. Oct. 21, 2015)).

Plaintiffs first reply that the "'ascertainability' doctrine allows courts to deny certification to vague or poorly defined classes," Pls.' Reply 2, ECF No. 31 (citing *John v. National Security Fire & Casualty Co.*, 501 F.3d 443, 445 (5th Cir. 2007), and argue "[t]here is nothing vague or imprecise about the proposed class definitions" because they "describe[] a clear and specific objection: Opposition to the compelled coverage of *some or all* contraceptive services, based on religious belief." *id.* (emphasis added). Plaintiffs thus contend that "[b]oth the *beliefs*—and the *actions* that inevitably follow from those beliefs—are clearly set forth in the proposed class definitions." *Id.* (emphasis in original). They also suggest "the Fifth Circuit has certified classes that require *far* more difficult and complex 'individualized inquiries' to determine membership,"

including "the certification of 'fail-safe' classes . . . 'defined in terms of the ultimate question of liability.'" *Id.* at 2–3 (quoting *In re Rodriguez*, 695 F.3d 360, 369–70 (5th Cir. 2012)). Plaintiffs argue the case law "make[s] clear that there is no problem in the Fifth Circuit with class definitions that require difficult and complex 'individualized inquiries' to determine whether someone is a member—so long as the class *definition* is precise and avoids . . . vague and indeterminate criteria." *Id.* at 4 (emphasis in original). Plaintiffs also insist "the Fifth Circuit . . . has recognized that the ascertainability requirement is greatly relaxed in the (b)(2) context." *Id.* (citing *In re Monumental Life Ins. Co.*, 365 F.3d 408, 413 n.6 (5th Cir. 2004)).

Next, Plaintiffs reply that "[c]ertified classes defined by members' subjective beliefs are common in RFRA and RLUIPA litigation." *Id.* at 5 (citing *Gartrell v. Ashcroft*, 191 F. Supp. 2d 23, 24, 40–41 (D.D.C. 2002)). And the cases from Indiana and Wisconsin that Defendants cite, Plaintiffs argue, "were litigated in the Seventh Circuit, which flatly prohibits class definitions that turn on an individual's subjective state of mind." *Id.* at 6. Plaintiffs contend "[n]o such prohibition exists in the Fifth Circuit—and it does not exist in the other circuits where district courts have certified RFRA or RLUIPA classes that are defined by reference to their members' actual religious beliefs." *Id.* Plaintiffs also submit that "even if the defendants were correct to oppose certification on this ground, the proper response is . . . to redefine the classes so that membership turns on one's outward conduct rather than internal thoughts." *Id.* (citing *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660 (7th Cir. 2015)).

Plaintiffs then contest Defendants' "claim that the classes of religious objectors should be limited to a 'sufficiently definite time period,'" and argue "[t]he Fifth Circuit has repeatedly approved classes" that include unnamed future members. *Id.* at 8 (collecting cases). And to the extent Defendants argue the proposed classes would not be administratively feasible, Plaintiffs

reply that "no such requirement exists in the Fifth Circuit." *Id.* (citing William B. Rubenstein, *Newberg on Class Actions* § 3:3 (5th ed. 2011)).

Finally, Plaintiffs conclude by suggesting "[t]he defendants do not deny" Plaintiffs' legal claims are common to and typical of all class members but instead "insist that the need to determine the sincerity of an individual's religious beliefs defeats any possible showing of commonality or typicality." *Id.* at 9. Yet "[t]he classes," Plaintiffs urge, "*by definition* include only those who hold sincere religious objections to the Contraceptive Mandate." *Id.* (emphasis in original).

## B.    The Classes Are Ascertainable

The Court finds the proposed classes are sufficiently ascertainable. Defendants primarily rely on *Robinson*, where the district court found there was "no way to ascertain the class under Plaintiffs' definition since the requested class include[d] *any* GM employee who *might* request unpaid religious leave in the future." *Robinson*, 2015 WL 13731154, at *2 (emphasis in original). The *Robinson* court reasoned, "Although individual class members need not be ascertained prior to certification, the class itself must be ascertainable." *Id.* And because the proposed class definition in *Robinson* "would require the Court to wade through thousands of leave requests and evaluate each individual's circumstance," the court found the "class [was] not adequately defined or ascertainable." *Id.*

The proposed class in *Robinson* is distinguishable for several reasons. First, the *Robinson* plaintiffs proposed a class of individuals "who *might* request unpaid religious leave in the future." *Id.* (emphasis in original). Here, Plaintiffs propose class definitions that invite only a "current and future employer in the United States that *objects*" to the Government's allegedly offending conduct and only those "individuals in the United States who: (1) *object* to coverage or payments for some or all contraceptive services . . . and (2) *would be* willing to purchase or obtain" accommodating

13

coverage. Pls.' Mot. Certification 1, ECF No. 20 (emphasis added). In other words, rather than

calling for employers and individuals who *might* object to the contraceptive mandate and *might* be

willing to avail themselves of other options, Plaintiffs specifically call for only those employers

and individuals who *do* so object and *would* so avail themselves. This helps ensure the class

"members can be ascertained by reference to objective criteria." *Robinson*, 2015 WL 13731154,

at *2 (quoting MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.222 (2004)).

Second, *Robinson* did not involve the kind of immediate, concrete, and common injury

alleged by Plaintiffs here. *See, e.g.*, *id.* ("[D]etermining individual class members would require

the Court to wade through thousands of leave requests and evaluate each individual's circumstance

(e.g., whether the request was based on religion, whether the employee requested unpaid leave,

whether volunteer replacements were available)."); *id.* at *2 n.1 ("For each putative class member,

the Court would be required to evaluate each member's religion, that religion's holy days, and the

days for which each individual requested leave."). Indeed, the proposed *Robinson* class would

have captured employees who might not even be scheduled to work on holy days—i.e., it is not

clear every class member could attest they had been or would be forced to violate their sincerely

held religious beliefs. Here, in contrast, there is no dispute the contraceptive mandate currently

compels coverage of *all* FDA-approved contraceptives and that any employer in the Employer

Class and any individual in the Individual Class—whether opposed to all or only some

contraceptives—is therefore currently compelled to violate their beliefs.

But Defendants argue certification is still inappropriate because religious beliefs are

inherently subjective. *See, e.g.*, Defs.' Resp. 6, ECF No. 30 ("Identifying potential class members

would thus require the Court to delve into each unidentified individual's or employer's state of

mind as to his or her or its personal religious beliefs or willingness to purchase certain coverage.

That is a textbook example of an individualized inquiry that dooms any attempt to properly define the class at the outset."). It is true a person's religious beliefs are deeply personal and subjective. But from the Court's perspective, the contours of those beliefs are purely objective. *See, e.g.*, *United States v. Lee*, 455 U.S. 252, 257 (1982) ("It is not within 'the judicial function and judicial competence,' . . . to determine whether appellee or the Government has the proper interpretation of the Amish faith; '[c]ourts are not arbiters of scriptural interpretation.'" (quoting *Thomas v. Review Bd. of Indiana Employment Security Div.*, 450 U.S. 707, 716 (1981))). And as Plaintiffs argue, "[b]oth the *beliefs*—and the *actions* that inevitably follow from those beliefs—are clearly set forth in the proposed class definitions." Pls.' Reply 2, ECF No. 31 (emphasis in original). The Court, therefore, need not—indeed, *may not*—"delve into each unidentified individual's or employer's state of mind." So long as those employers and individuals who opt into the proposed classes contend that the contraceptive mandate is forbidden by their sincerely held religious beliefs, the Court must accept those contentions. *Lee*, 455 U.S. at 257 ("We therefore accept appellee's contention that both payment and receipt of social security benefits is forbidden by the Amish faith."); *see also Soc'y of Separationists, Inc. v. Herman*, 939 F.2d 1207, 1212 (5th Cir. 1991), *on reh'g*, 959 F.2d 1283 (5th Cir. 1992) ("[T]he plaintiff's sincere belief that an affirmation has a religious nature is sufficient to implicate free exercise concerns.").

It may be true some employers and individuals could *in*sincerely claim to hold the religious belief that the use of abortifacient contraceptives facilitate the taking of human life and/or that non-abortifacient contraceptives wrongly facilitate extramarital sexual activity. But whether the contraceptive mandate violates a *sincerely* held religious belief is a merits question under the RFRA analysis. And "district courts do not err by failing to ascertain at the Rule 23 stage whether the class members include persons and entities who have suffered 'no injury at all.'" *In re*

*Deepwater Horizon*, 739 F.3d 790, 811 (5th Cir. 2014). "As the Supreme Court explained, a 'contention' regarding the class members' injury is sufficient to satisfy Rule 23." *Id.* Plaintiffs contend the contraceptive mandate violates their sincerely held beliefs, and they have designed the class definitions so any employer or individual who opts in will necessarily have contended the same.

In sum, the Fifth Circuit requires that Plaintiffs "demonstrate—at some stage of the proceeding—that the class is adequately defined and clearly ascertainable." *Seeligson v. Devon Energy Production Co., L.P.*, F. App'x 225, 230 (5th Cir. 2018) (cleaned up). The Court finds Plaintiffs have done so with respect to both the Employer Class and the Individual Class.

## C.     The Classes Have Commonality

"In order to satisfy commonality under *Wal–Mart,* a proposed class must prove that the claims of every class member 'depend upon a common contention . . . that is capable of classwide resolution.'"[2] *Stukenberg*, 675 F.3d at 838 (quoting *Wal-Mart*, 131 S.Ct. at 2551). This occurs where "the contention is 'of such a nature . . . that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Id.* (quoting *Wal-Mart*, 131 S.Ct. at 2551). Put plainly, "Rule 23(a)(2) requires that all of the class member[s'] claims depend on a common issue of law or fact whose resolution 'will *resolve* an issue that *is central to the validity* of each one of the [class member's] claims in one stroke.'" *Id.* at 840 (quoting *Wal–Mart,* 131 S.Ct. at 2551). And this Court's "obligation to perform a 'rigorous

---

[2] *See Stukenberg*, 675 F.3d at 839 (noting "the *Wal–Mart* decision has heightened the standards for establishing commonality under Rule 23(a)(2)"). While the *Wal-Mart* "opinion is most famous (or infamous, depending on your point of view) for ratcheting up the requirement in Federal Rule 23(a)(2) that all members of a class have at least one question of fact or law in common before the class can be certified," some scholars find "the account of this part of his opinion overstated" because "there was really very little difference between how Justice Scalia interpreted 'commonality' and how Justice Ginsburg did so in dissent." Brian T. Fitzpatrick, *Justice Scalia and Class Actions: A Loving Critique*, 92 Notre Dame L. Rev. 1977, 1979 (2017) (footnotes omitted).

analysis'" of the commonality prong may "entail some overlap with the merits of [Plaintiffs']

underlying claim." *Id.* (quoting *Wal-Mart*, 131 S.Ct. at 2551).

The Court finds both of Plaintiffs' proposed class definitions meet the Fifth Circuit's post-

*Wal-Mart* interpretation of Rule 23(a)(2)—and tracing the analysis in *Stukenberg* helps elucidate

why. In *Stukenberg*, the Fifth Circuit reversed the district court's finding of commonality, most

relevantly here, because "the district court's analysis supporting its finding that the class claims

raised common *questions of law* did not comply with the requirements of Rule 23(a)(2) for several

reasons." *Id.* at 842 (emphasis added).

"First, the formulation of [the] common questions of law [was] too general to allow for

effective appellate review." *Id.* The *Stukenberg* plaintiffs' formulation of their allegedly common

questions of law was that "numerous 'systemic deficiencies'" subjected all children in Texas's

conservatorship "to various harms or to the risk of experiencing those harms." *Id.* The plaintiffs

"further contend[ed] that these harms violate[d] the constitutional rights of every child in [Texas's

conservatorship] in various ways." *Id.*

Here, there is nothing general or vague about the questions of law common to either of

Plaintiffs' two proposed classes. Quite apart from the "numerous" actions or deficiencies

challenged in *Stukenberg*, Plaintiffs here challenge only one specific regulatory requirement—the

contraceptive mandate. And as to each proposed class, the common question of law arising from

that challenge is clear. For example, Plaintiff Braidwood raises the following question of law

common to all employers who would join the Employer Class: "Does the Contraceptive Mandate

violate [RFRA] by compelling objecting employers to choose among the following three options:

(1) Provide contraceptive coverage in their employees' health insurance; (2) Fill out and submit a

form that leads directly to the provision of objectionable contraception by their insurer or third-

party administrator; or (3) Pay a heavy financial penalty[?]" Br. Supp. Mot. Certification 3, ECF No. 20-1. And Plaintiff Richard DeOtte raises the following question of law common to all individuals who would join the Individual Class: "Does the Contraceptive Mandate violate [RFRA] by forcing class members to choose between purchasing insurance that subsidizes other people's contraception, or foregoing health insurance entirely?" *Id.* at 8. For each class, the single underlying legal question is plainly put and clearly common.

Second, whereas the *Stukenberg* plaintiffs complained of "various harms," "the risk of experiencing those harms," and the violation of constitutional rights "in various ways," *Stukenberg*, 675 F.3d at 842, Plaintiffs here speak with precision and uniformity, *see, e.g.*, Am. Compl. 11, ECF No. 19 ("All class members are consumers of health insurance who object on religious grounds to the coverage of contraception, yet are forced to choose between participating in an insurance policy or plan that subsidizes and provides for objectionable contraception in violation of their religious beliefs, or foregoing health insurance entirely. The common legal questions are whether this substantially burdens the religious freedom of the class members, and whether this burden represents the least restrictive means of advancing a compelling governmental interest."). And rather than an "85–page complaint" asserting a "diverse array of claims," *Stukenberg*, 675 F.3d at 842, Plaintiffs have here filed a 16-page amended complaint asserting one cause of action common to all members of each class, Am. Compl. 13, ECF No. 19.

The court also reasoned in *Stukenberg* that "the district court must . . . ensure that 'dissimilarities within the proposed class' do not 'have the potential to impede the generation of common answers.'" *Stukenberg*, 675 F.3d at 843 (quoting *Wal-Mart,* 564 U.S. at 351). "The district court failed to meet these requirements" in *Stukenberg* "by declining to analyze Texas's

argument that dissimilarities within the proposed class precluded commonality with specific reference to the elements or defenses for establishing the class claims." *Id.*

Here, no dissimilarities in the proposed classes will impede the generation of common answers or otherwise preclude commonality. The proposed classes, by definition, beckon only those employers and individuals who presently have the same legal claim. And Defendants' suggestion that commonality is lacking because some employers and individuals might object to different contraceptives is unavailing. *See, e.g.*, Defs.' Resp. 8–9, ECF No. 30. Plaintiffs' definitions encompass employers and individuals who object to "some or all contraceptive services." Mot. Certification 1, ECF No. 20. The contraceptive mandate compels coverage of *all* FDA-approved contraceptives. *See* 77 Fed. Reg. 8,725, 8,725 (Feb. 15, 2012). As a result, every member of each class will have the same bottom-line RFRA claim because each member of each class objects—due to their sincerely held religious beliefs—to some or all of the activity the contraceptive mandate compels.

The Fifth Circuit has said Rule 23(a)(2) commonality is met where "all of the class member[s'] claims depend on a common issue of law or fact whose resolution will resolve an issue that is central to the validity of each one of the class member's claims in one stroke." *Stukenberg*, 675 F.3d at 838 (cleaned up). Here, it is not only true all members of each class raise claims that "depend on a common issue of law" that "will resolve an issue that is central to the validity of each one of the class member's claims in one stroke." More forcefully, the common issue of law raised by all members of each class—i.e., whether their same RFRA rights are violated by the same regulation—*is* "each one of the class member's claims." And for that reason, answering the one question raised by each class will resolve the claims of all members of each class "in one stroke."

More to the point, answering whether "the Contraceptive Mandate violate[s] the Religious Freedom Restoration Act by compelling objecting employers to choose among the [identified] three options," Br. Supp. Mot. Certification 3, ECF No. 20-1, will immediately achieve "classwide resolution" for the Employer Class. And answering whether "the Contraceptive Mandate violate[s] the Religious Freedom Restoration Act by forcing [individuals] to choose between purchasing insurance that subsidizes other people's contraception, or foregoing health insurance entirely," *id.* at 8, will immediately achieve "classwide resolution" for the Individual Class.

The Court therefore finds Plaintiffs have satisfied Rule 23(a)(2)'s requirement of commonality.

### D.    The Classes Have Typicality

"The commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). "Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."[3] *Id.*

Like in *Wal-Mart*, "[t]he crux of this case is commonality" and typicality is essentially redundant of that assessment. *Wal-Mart*, 564 U.S. at 349. To the extent Defendants raise a typicality-specific argument, that arguments is as follows: "Here, the proposed class members do not necessarily share the same sincerely-held religious belief. Rather, the Court would need to make fact-specific, individualized determinations as to whether any particular proposed class

---

[3] "Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." *Falcon*, 457 U.S. at 158 n.13.

member shares the same sincerely-held religious belief as Plaintiffs." Defs.' Resp. 12, ECF No. 30. The Court, however, has already addressed this line of argument.

As described above, because the contraceptive mandate requires coverage of *all* FDA-approved contraceptives, there is no legally significant difference, for example, between a class member who opposes only two types of contraception and a class member who opposes all types of contraception. Either way, the mandate requires both class members to do something to which they are opposed due to their sincerely held religious beliefs. And the RFRA inquiry is therefore the same for both class members: Does the contraceptive mandate violate a person's religious liberty by requiring them to do something to which they are opposed due to sincerely held religious beliefs?

The bottom-line question under commonality and typicality is whether the relief the named plaintiffs seek from the Court will resolve all class members' legal claims. The answer here is "yes" because Plaintiffs seek a declaration "that the Contraceptive Mandate violates the rights of the plaintiffs and their fellow class members under the Religious Freedom Restoration Act." Am. Compl. 14, ECF No. 19. That relief, by definition, would resolve all class members' claims by clarifying that the contraceptive mandate violates the RFRA rights of *all* class members, whether they object to some or all contraceptives. Contrary to the Government's argument, Plaintiffs' claims therefore have the "same essential characteristics as those of the putative class," *Stirman*, 280 F.3d at 562—namely, that the contraceptive mandate violates RFRA by requiring Plaintiffs and class members to do something to which they are opposed due to sincerely held religious beliefs.

The Court therefore finds Plaintiffs have satisfied Rule 23(a)(3)'s requirement of typicality.

## IV.    CONCLUSION

Rule 23(a)'s "four requirements . . . effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Wal-Mart*, 564 U.S. at 349 (quoting *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 156 (1982)) (quotation marks omitted). Here, the classes are defined to include only those employers and individuals who sincerely hold a minimum, common religious belief—an objection to subsidizing or facilitating coverage for *at least some* contraceptives—that the contraceptive mandate—which mandates coverage for *all* FDA-approved contraceptives—requires them to violate. This inherently limits the class claims to the claims raised by Plaintiffs. And because of this, the declaration and injunction Plaintiffs seek would provide relief to all class members, satisfying the demands of Rule 23(b)(2). *See id.* at 360 ("Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class.").

Accordingly, Plaintiffs' Motion for Class Certification, ECF No. 20, is **GRANTED**.

**SO ORDERED** on this **30th day** of **March, 2019**.


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**