IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **RICHARD W. DEOTTE** *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 4:18-CV-00825-Y |
| | ) | |
| v. | ) | |
| | ) | |
| **ALEX M. AZAR II**, in his official capacity as Secretary of Health and Human Services *et al.*, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION
FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION**

TO THE HONORABLE REED O'CONNOR, UNITED STATES DISTRICT JUDGE PRESIDING:

Defendants respectfully respond to Plaintiffs' motion for summary judgment and permanent injunction, ECF No. 34 ("Plaintiffs' motion").

1. On March 30, 2019, the Court certified two classes of plaintiffs in this action. ECF No. 33. The first class, the "Employer Class," consists of "[e]very current and future employer in the United States that objects, based on its sincerely held religious beliefs, to establishing, maintaining, providing, offering, or arranging for: (i) coverage or payments for some or all contraceptive services; or (ii) a plan, issuer, or third-party administrator that provides or arranges for such coverage or payments." *Id.* at 7. The second class, the "Individual Class," comprises

> [a]ll current and future individuals in the United States who: (1) object to coverage or payments for some or all contraceptive services based on sincerely held religious beliefs; and (2) would be willing to purchase or obtain health insurance that excludes coverage or payments for some or all contraceptive services from a health insurance issuer, or from a plan sponsor of a group plan, who is willing to offer a separate benefit package option, or a separate policy, certificate, or contract of insurance that excludes coverage or payments for some or all contraceptive services.

1

*Id*. at 8.

These two classes of plaintiffs have moved for summary judgment and a permanent injunction against certain federal requirements affecting the classes (by operation of statutes, regulations, and guidance) concerning contraceptive coverage in health plans ("the Mandate"). The Mandate requires all group health plans and health insurance issuers that offer non-grandfathered group or individual health coverage to provide coverage, without cost-sharing, for all Food and Drug Administration-approved contraceptive methods, sterilization procedures, and related patient education and counseling for women with reproductive capacity, unless certain exemptions apply. Through 2015, the federal government issued regulations specifying an exemption for churches and their integrated auxiliaries. The regulations also created an accommodation process whereby employers with religious objections to the Mandate could comply, and their employees would receive coverage through those employers' health insurance issuers or third party administrators (unless the employers provided coverage through certain self-insured church plans, in which case the third party administrators were not required to provide the coverage to employees). *See* 45 C.F.R. § 147.130(a)(1)(iv); 29 C.F.R. § 2590.715–2713(a)(1)(iv); 26 C.F.R. § 54.9815–2713(a)(1)(iv). These regulations proved insufficient to satisfy the religious objections raised by some employers. *See* 83 Fed. Reg. 57,536, 57,542 (Nov. 15, 2018).

In November 2018, the federal government promulgated Final Rules to amend the regulations and expand the exemptions. The Final Rules expand the religious exemption to nongovernmental plan sponsors, as well as institutions of higher education in their arrangement of student health plans, to the extent that those entities have sincere religious objections to providing contraceptive coverage. *See* 83 Fed. Reg. at 57,558-65. The Final Rules retain the accommodation as a voluntary option. *See id.* at 57,537-38. The Final Rules' religious exemption also provides for an "individual exemption" that allows—but does not require—willing employers and insurers to offer plans omitting contraceptive coverage to individuals with religious objections to such coverage. *See, e.g.*, *id*. at 57,567-69. The Final

Rules were set to go into effect on January 14, 2019, but enforcement of those Rules has been preliminarily enjoined by two district courts. *See California v. Health and Human Servs.*, 351 F. Supp. 3d 1267 (N.D. Cal. 2019) (issuing preliminary injunction against implementation of Final Rules in fourteen plaintiff-states); *Commonwealth of Pennsylvania v. Trump*, 351 F. Supp. 3d 791 (E.D. Pa. 2019) (entering nationwide preliminary injunction). The government has appealed both decisions. *See California v. Health and Human Servs.*, No. 19-15118 (9th Cir. Jan. 24, 2019); *Commonwealth of Pennsylvania v. President of the United States*, No. 19-1189 (3d Cir. Jan. 24, 2019).

    2. Although Defendants do not agree with all of the statements and arguments in Plaintiffs' motion, Defendants are not raising a substantive defense of the Mandate or the accommodation process with respect to Plaintiffs' Religious Freedom Restoration Act ("RFRA") challenge. Defendants agree that requiring employers with sincerely held religious objections to comply with the Mandate or the accommodation process would violate RFRA. *See* 83 Fed. Reg. at 57,544. Defendants similarly agree that the Mandate would violate RFRA with respect to individuals who hold sincere religious objections to contraceptive coverage and would be able to obtain a plan that omits contraception from a willing employer or issuer, but cannot obtain one solely because of the Mandate's prohibition on an employer and/or issuer providing them with such a plan. *See, e.g.*, *id*.

    Accordingly, while reserving their objections to class certification, Defendants do not oppose an order by this Court entering partial summary judgment on the legal question whether any employers or individuals who in fact fall within the certified classes have stated a valid RFRA claim. Defendants likewise take no position on whether the named plaintiffs, who have established their sincere religious objections to the Mandate and thus their class membership, are entitled to a declaratory judgment on these grounds. And, with the important caveats that "'the scope of injunctive relief is dictated by the extent of the violation established,' and an injunction must be *narrowly tailored to remedy the specific action necessitating the injunction*," *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F. 3d 1150, 1161 (5th Cir.

3

2006) (citing cases) (emphasis added), Defendants also take no position on whether permanent injunctive relief is appropriate in this case with respect to the named plaintiffs. The preliminary injunctions in *Pennsylvania* and *California* do not purport to interfere with this case or other existing litigation challenging the prior rules. *See Pennsylvania*, 351 F. Supp. 3d at 829-30 ("A preliminary injunction will maintain the status quo: those eligible for exemptions or accommodations prior to October 6, 2017 will maintain their status; those with injunctions preventing enforcement of the Contraceptive Mandate will maintain their injunctions; those alleging RFRA violations may pursue 'Judicial Relief;' and those with coverage will maintain their coverage as well." (footnote omitted)); *California*, 351 F. Supp. 3d at 1299 n.16 (observing that "many [entities] are subject to court orders prohibiting the Federal Defendants from enforcing the mandate or accommodation requirements against them. Those orders (and any other similar orders) are unaffected by the injunction entered here.").

    3. But Defendants oppose Plaintiffs' motion to the extent it seeks additional relief beyond the named plaintiffs *at this time*. The putative unnamed class members have not yet established that they in fact have a sincere religious objection to the Mandate. That, however, is an essential requirement of both class membership and of proving a claim on the merits, *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013 ("The sincerity of a plaintiff's belief in a particular religious practice is an essential part of the plaintiff's prima facie case under . . . RFRA."); moreover, because the identity of the certified class has not yet been resolved, class-wide injunctive relief would be overly vague under Fed. R. Civ. P. 65 and pose a risk that Defendants will be subject to contempt of court for unintentionally violating such an injunction. The entry of court-ordered relief requires more certainty for Defendants than administrative protections like those set forth in the Final Rules themselves.

    The Departments of Health and Human Services, Labor, and the Treasury ("the Agencies") explained in the Final Rules, in response to comments asking the Agencies not to apply religious

exemptions unless they first receive notice that an entity or individual satisfies the conditions of the exemption, that the Agencies

> believe it is appropriate to not require exempt entities to submit a self-certification or notice.  The previous exemption did not require a self-certification or notice, and the Departments did not collect a list of all entities that used the exemption.  The Departments believe the approach under the previous exemption is appropriate for the expanded exemption.  Adding a self-certification or notice to the exemption process would impose an additional paperwork burden on exempt entities that the previous regulations did not impose, and would also involve additional public costs if those certifications or notices were to be reviewed or kept on file by the government.
>
> The Departments are not aware of instances where the lack of a self-certification under the previous exemption led to abuses or to an inability to engage in enforcement.  The Mandate is enforceable through various mechanisms in the [Public Health Service] Act, the [Internal Revenue] Code, and ERISA.  Entities that insincerely or otherwise improperly operate as if they are exempt would do so at the risk of enforcement under such mechanisms.  The Departments are not aware of sufficient reasons to believe those measures and mechanisms would fail to deter entities from improperly operating as if they are exempt.

83 Fed. Reg. at 57,558.

The Agencies stand by this conclusion with respect to operation of the exemptions set forth in the Final Rules.  Agencies may promulgate *rules* creating a generally applicable exemption from the Mandate for those with sincere religious objections, even though the identities of all employers and individuals who will invoke those exemptions are unknown in advance (and, in many cases, may never come to the Agencies' attention).  But it is a different matter for the Agencies to be subjected to *court-ordered final relief*—let alone injunctive relief enforceable on pain of contempt—with respect to a class whose membership has not yet been proven.  *See generally Xcaliber Int'l Ltd. LLC v. Atty. Gen. State of Louisiana*, 612 F.3d 368, 382 (5th Cir. 2010) (explaining the distinction between state action "properly characterized as legislative or adjudicative" and noting that, "[g]enerally speaking, legislative actions are non-individualized determinations that affect a wider class of individuals, whereas adjudicative actions involve individualized assessments that affect a smaller number of people in a more exceptional manner.") (citations omitted).  In class actions, even assuming that "[t]he court need not know the

5

identity of each class member before certification," the class must be sufficiently ascertainable, such that "the court [is] able to identify class members at some stage of the proceeding." *Frey v. First Nat'l Bank Southwest*, 602 F. App'x 164, 168 (5th Cir. 2015) (quoting NEWBERG ON CLASS ACTIONS § 3.3 (5th ed. 2011)); *accord* ECF No. 33 at 16 (citing *Seeligson v. Devon*, 753 F. App'x 225, 230 (5th Cir. 2018). That is not the case here. Consequently, under the analysis proper to the class-action context, relief extending beyond the named plaintiffs would not be proper on the evidentiary record that exists at this time.

In particular, putative class members have not yet established that they in fact have a sincere religious objection to the Mandate. Absent a showing of "a *sincerely* held religious belief," and an opportunity for the Defendants to contest such a showing if there are sufficiently serious grounds to believe any objections are insincere, the unnamed class members have failed to prove their membership in the class and to establish "a merits question under the RFRA analysis," as this Court itself previously recognized. ECF No. 33 at 15. Indeed, it appears that this Court contemplated that employers and individuals would need to "opt into the proposed classes," *id.*, which makes sense as it would be the only way to establish actual class membership given that the class definitions turn on the sincerity of religious belief. Although the certified class is entitled at this time to partial summary judgment—because any actual class member would have a valid RFRA claim—the class is not yet entitled to declaratory relief, because putative class members must first establish that they in fact have a sincere religious objection to the Mandate in order to prove actual class membership and thus the final element of their RFRA claim.

Moreover, "an injunction is overly vague if it fails to satisfy the specificity requirements set out in Rule 65(d)(1)." *Scott v. Schedler*, 826 F.3d 207, 211 (5th Cir. 2016). At bottom, because "'vagueness' is a question of notice, *i.e.*, procedural due process," Rule 65(d) "embodies the elementary due process requirement of notice." *Id*. (quoting *U.S. Steel Corp. v. United Mine Workers of Am.*, 519

F.2d 1236, 1246 nn.19-20 (5th Cir. 1975)); *see also Moore v. Tangipahoa Par. Sch. Bd.*, 864 F.3d 401, 407 (5th Cir. 2017) (stating that "individuals and entities subject to injunctions must have fair notice of the terms of the injunction"). Rule 65(d) requires that "[e]very order granting an injunction" must "state its terms specifically" and "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Simply put, "[a]n injunction must simply be framed so that those enjoined will know what conduct the court has prohibited." *Scott*, 826 F.3d at 213 (quoting *Meyer v. Brown & Root Constr. Co.*, 661 F.2d 369, 373 (5th Cir. 1981)). The drafting standard has been described as "that an ordinary person reading the court's order should be able to ascertain from the document itself exactly what conduct is proscribed." *U.S. Steel Corp.*, 519 F.2d at 1246 n.20.

The specificity requirement of Rule 65 "was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Scott*, 826 F.3d at 212 (quoting *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974)). "The judicial contempt power is a potent weapon. When it is founded upon a decree too vague to be understood, it can be a deadly one. Congress responded to that danger by requiring that a federal court frame its orders so that those who must obey them will know what the court intends to require and what it means to forbid." *Schmidt*, 414 U.S. at 476 n.2 (citation omitted). Thus, courts have found injunctions too vague when they failed to provide sufficient notice of the individuals or entities against whom conduct was enjoined. *See, e.g.*, *Am. Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407, 1411 (11th Cir. 1998) (injunction prohibiting entity from contacting "any donor whose name is contained on Plaintiff's [trade secret donor] lists" impermissibly vague because enjoined party had "no way to determine whether a given member of the public might happen to appear on" a list not in its possession); *NLRB v. Teamsters*, 419 F.2d 1282, 1283 (6th Cir. 1970) (injunction directing employers to cease from restraining or coercing the employees of a specified company "or the employees of any other employer within its jurisdictional territory" was too vague where, *inter alia*, the injunction failed to

define the specified jurisdiction "and thus it provides no means of defining the people for whom protection is sought").

Here, as explained by Defendants in prior briefing, not all employers or individuals that are class members are known to Defendants. ECF No. 30 at 6. Although the class definition sets forth criteria for membership in the class generally, and that criteria tracks the definitions applicable to the exemptions in the Final Rules (where no advance identification of exempt status is necessary), the actual membership of the class is not readily ascertainable by Defendants under the terms of the proposed injunction. Defendants do not themselves possess the necessary facts to make such a determination. As noted, a key element of class membership is the sincerity of the putative member's religious beliefs, as well as the scope of any particular class member's religious objections. Both are information in possession of employers and individuals, not Defendants—especially since, as described above, Defendants do not require exempt entities or individuals to submit notices of their exempt status. Accordingly, the proposed injunction puts Defendants at risk of contempt when enforcing the Mandate, if they inadvertently apply it to an employer or individual who happens to be a class member or if there is a dispute over whether an employer or individual is, in fact, a class member.

Again, to be clear, Defendants do not dispute that any employer or individual who actually falls within the class definition has stated a valid RFRA claim, for the reasons the Agencies themselves provided in the Final Rules. Moreover, the Agencies do not contend that, when the Final Rules are in effect, the Agencies need advance knowledge of the sincerity of an exempt entity's or individual's religious beliefs, or the scope of their religious objections, in order to implement the exemptions in the Final Rules or otherwise enforce the Mandate. As noted above, the Mandate's enforcement mechanisms exist under the Public Health Service Act, the Internal Revenue Code, and ERISA (in addition to the Affordable Care Act). "Entities that insincerely or otherwise improperly operate as if they are exempt would do so at the risk of enforcement under such mechanisms." 83 Fed. Reg. at 57,558. This presents

minimal risk to the Agencies, because they intend to apply the exemptions faithfully when the Final Rules are in effect.  And if they enforce the Mandate without the knowledge that an entity or individual is exempt, the entity or individual can call attention to their exempt status, and the Agencies can then take that information into account during their enforcement process without being subject to significant liability for not having advance notice of that information.  In other words, when the Final Rules are in effect, risk that may exist due to uncertainty about an entity's or individual's exempt status does not fall upon the Agencies in the first instance.

But the risk to the Agencies is fundamentally different under an injunction.  The fatal problem under Plaintiffs' injunction motion is that it is unknown and unknowable on the record before this Court which employers and individuals in the country in fact fall within the class definition—information necessary in order for the Agencies to know how to avoid contempt of court.  Plaintiffs have provided no means of identifying the members of the class. Defendants thus have been denied any means of contesting class membership, and even assuming the classes were properly certified for litigation, this Court is *not* "able to identify class members at [any] stage of the proceeding." *Frey*, 602 F. App'x at 168.

In sum, Plaintiffs are improperly proposing that this Court enter final judgment at this time on behalf of employers and individuals who have not yet established their actual membership in the certified classes—thereby awarding relief on behalf of putative class members who have not yet established a valid merits claim and further requiring Defendants to enforce the Mandate under a continuing threat of contempt and necessitating collateral litigation to resolve any disputes over whether a particular employer or individual is actually a class member in the first place.  All this puts the cart before the horse: courts may not enter judgment first and ask basic questions later about who actually has a valid merits claim and is covered by the class judgment.  Consequently, Defendants respectfully oppose the entry of any final relief at this time that extends beyond the named plaintiffs, unless and until

any unnamed employers and individuals establish their sincere religious objection to the mandate—and thus their actual class membership and the final element of their otherwise-valid RFRA claim.

  4. Without waiving such objections, in the event that the Court nonetheless grants final relief that extends beyond the named plaintiffs, Defendants respectfully request that, at a minimum, any final relief issued by the Court—and especially any injunctive relief—expressly state that Defendants shall not be deemed to be out of compliance with the Court's order unless a putative class member objects to Defendants' enforcement of the Mandate against it, the Court determines after an adversarial hearing that the objector is in fact a member of the class, and Defendants nonetheless continue to enforce the Mandate against the class member. Additionally, Defendants respectfully request that, with respect to each class member, any relief be limited to the provision of sterilization or contraceptive drugs, devices, or procedures and related education and counseling to which such class member has established a sincerely held religious objection.

  Finally, though Defendants take no position as to whether declaratory or injunctive relief is appropriate with respect to the named plaintiffs, Defendants respectfully preserve all appeal rights, including with respect to the Court's March 30, 2019 Order granting Plaintiffs' motion for class certification.

Dated: April 15, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

  /s/ Daniel Riess
DANIEL RIESS (Texas Bar # 24037359)
Trial Attorney
U.S. Department of Justice
Civil Division
1100 L Street, NW
Washington, D.C. 20005

                                        Telephone: (202) 353-3098
                                        Fax: (202) 616-8460
                                        Email: Daniel.Riess@usdoj.gov
                                        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

      On April 15, 2019, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) or the local rules.

                                            /s/ Daniel Riess