UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|   |   |
|---|---|
| **Richard W. DeOtte**, et al., <br><br> Plaintiffs, <br><br> v. <br><br> **Alex M. Azar II**, et al., <br><br> Defendants. | Case No. 4:18-cv-825-O |

### PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION

The defendants are unopposed to the entry of judgment and permanent injunctive relief with respect to the named plaintiffs. But they oppose relief that extends to the absent class members—even though the absent class members are suffering the same violations of their federally protected rights.

The defendants oppose a classwide injunction because they claim that they do not know the identity of the class members, and they fear that they might be held in contempt if they inadvertently enforce the Contraceptive Mandate against a sincere religious objector. That is no reason to deny relief to the absent class members. The defendants' concerns can be easily addressed by crafting an injunction that creates explicit safe harbors for government officials who enforce the Contraceptive Mandate in good faith while taking the precautions needed to respect the class members' rights under the Religious Freedom Restoration Act. The plaintiffs have attached a proposed injunction of that sort, and it fully accommodates the concerns that the defendants have raised. *See* Proposed Entry of Judgment and Permanent Injunction

(ECF No. 39-1).[1] The plaintiffs have no desire for an injunction that sets a trap for conscientious government officials; they are seeking only to restore the protections that the Religious Freedom Restoration Act—and the defendants' final rule of November 15, 2108—confer on all objecting employers and individuals.

I. **THE CLASSWIDE INJUNCTION SHOULD BE CRAFTED TO PROTECT GOVERNMENT OFFICIALS WHO MUST DETERMINE WHETHER AN EMPLOYER OR INDIVIDUAL IS A MEMBER OF THE CERTIFIED CLASSES**

The defendants' primary objection to a classwide injunction is that they will not know whether a particular employer or individual is a member of the protected classes. And they contend that this information asymmetry will make any classwide injunction "overly vague" and expose the defendants to contempt if they unintentionally violate the court's injunction. *See* ECF No. 38 at 4. The defendants acknowledge that these same information asymmetries arose under the final rule of November 15, 2018, which does not require religious objectors to certify their status or notify the defendants of their objections to the Contraceptive Mandate. *See* ECF No. 38 at 5 (quoting Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 83 Fed. Reg. 57,536, 57,558 (Nov. 15, 2018)). But the defendants say it is "a different matter" when these religious exemptions are incorporated into a classwide injunction that is "enforceable on pain of contempt." ECF No. 38 at 5.

The proper response to these concerns is not deny relief to the absent class members, who are indisputably suffering violations of their rights under the Religious Freedom Restoration Act. Instead, the Court should simply make clear in its injunction that the defendants may take steps necessary to ensure that employers and individuals who refuse to comply with the Contraceptive Mandate are sincere religious objectors—just as the defendants would

---

1. We have conferred with counsel for the defendants and informed them that we would include this proposal for injunctive relief as an attachment to our reply. The defendants do not oppose our inclusion of this proposed order, and the plaintiffs have agreed not to oppose the defendants' request to file a sur-reply if they decide to seek permission for it.

have done had their final rule been allowed to take effect. Under the final rule, the defendants would have been similarly unaware of whether an employer or individual was a sincere religious objector, because the final rule did not require religious objectors to certify their status or notify the defendants of their objections. *See* Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 83 Fed. Reg. 57,536, 57,558 (Nov. 15, 2018) ("The Departments believe it is appropriate to not require exempt entities to submit a self-certification or notice."). So the onus would have been on the defendants to ask whether a non-compliant employer or individual was departing from the requirements of the Contraceptive Mandate for sincere religious reasons. If a non-compliant employer or individual were to admit that he had no religious objections to contraceptive coverage, then the defendants would enforce the Contraceptive Mandate against that person or entity. And if the defendants doubted the sincerity of an asserted religious objection, then either they or the objector could bring a declaratory-judgment action and ask a court to resolve the sincerity of the stated religious belief.

The same enforcement regime should be allowed under the proposed classwide injunction. The Court's order should explicitly allow the defendants to: (1) Inquire into whether an employer or individual that fails to comply with the Contraceptive Mandate is a sincere religious objector; (2) Enforce the Contraceptive Mandate against employers or individuals who admit that they are not sincere religious objectors; and (3) Bring a declaratory-judgment action against an employer or individual if the defendants reasonably and in good faith doubt the sincerity of its asserted religious objections. The proposed order attached to this brief clearly and unequivocally states that actions of this sort do not violate the injunction and do not expose the defendants to contempt. And if the defendants believe that these safe harbors are insufficient to enable them to enforce the Contraceptive Mandate as they would have done under the final rule of November 15, 2018, then they should tell the Court what additional protections are needed and draft a proposed order that incorporates those protections.

The Court has a responsibility to enforce the Religious Freedom Restoration Act as "the supreme Law of the Land"—and it must provide relief to the absent class members if it believes that the Contraceptive Mandate violates their rights under the statute. *See* U.S. Const. art. IV, § 2. The defendants' desire to be shielded from contempt proceedings when they act in good faith to enforce the Mandate is understandable, but it is easily resolved by establishing safe harbors for the defendants' enforcement actions in the injunction. It is no reason to leave the absent class members in the cold.

## II. The Defendants' Remaining Arguments Against Classwide Relief Are Without Merit

In several places the defendants claim that classwide relief is inappropriate because the absent class members have not yet established that they have sincere religious objections to contraceptive coverage. *See* ECF No. 38 at 4 ("The putative class members have not yet established that they in fact have a sincere religious objection to the Mandate."); *id*. at 6 ("[P]utative class members have not yet established that they in fact have a sincere religious objection to the Mandate."); *id*. at 9 ("Plaintiffs are improperly proposing that this Court enter final judgment at this time on behalf of employers and individuals who have not yet established their actual membership in the certified classes"). The certified classes, however, are defined to include only those employers and individuals who *in fact* hold sincere religious objections to contraceptive coverage. *See* Order Amending Class-Certification Order and Setting Briefing Schedule, ECF No. 37 at 2–3;[2] *see also In re Rodriguez*, 695 F.3d 360, 369–

---

2. *See* Order Amending Class-Certification Order and Setting Briefing Schedule, ECF No. 37 at 2 (defining the Braidwood class to include "[e]very current and future employer in the United States that objects, *based on its sincerely held religious beliefs*, to establishing, maintaining, providing, offering, or arranging for: (i) coverage or payments for some or all contraceptive services; or (ii) a plan, issuer, or third-party administrator that provides or arranges for such coverage or payments." (emphasis added)); *id*. at 2–3 (defining the DeOtte class to include "[a]ll current and future individuals in the United States who: (1) object to coverage or payments for some or all contraceptive services *based on sincerely held religious beliefs*; and (2) would be willing to purchase or obtain health insurance that excludes coverage or payments for some or all contraceptive services from a health insurance issuer, or from a plan sponsor of a group plan, who is willing to offer a separate

70 (5th Cir. 2012) (approving the certification of "fail-safe" classes "whose membership can only be ascertained by a determination of the merits of the case"). So there is no need for the absent class members to "establish" the sincerity of their religious objections because an absent class member—by definition—is a person or entity who *in fact* objects to contraceptive coverage for sincere religious reasons. And a classwide injunction will—by its very terms—extend only to those *actually* hold sincere religious objections to contraceptive coverage. There is no possiblility that a classwide injunction will overshoot by protecting employers or individuals who turn out not to be sincere religious objectors.[3]

The defendants' complaint that the defined class is insufficiently "ascertainable" is an attempt to relitigate the class-certification question, and it cannot serve as basis for denying classwide relief. *See* ECF No. 38 at 6 ("[T]he class must be sufficiently ascertainable . . . . That is not the case here."). This Court has already held that the classes are ascertainable. *See* Order Granting Motion to Certify Class, ECF No. 33 at 13 ("The Court finds the proposed classes are sufficiently ascertainable."). The defendants may appeal that ruling if they disagree, but they should not ask this Court to withhold classwide relief on a ground that directly contradicts its previous ruling.

The defendants are also wrong to propose an "opt in" class—which would require the absent class members to take affirmative steps to join the class and establish the sincerity of their religious objections. *See* ECF No. 38 at 6 ("[I]t appears that this Court contemplated that employers and individuals would need to 'opt into the proposed classes,' . . . which makes sense as it would be the only way to establish actual class membership given that the class definitions turn on the sincerity of religious belief."). First, this court has already certified the classes—and it has defined them to include all employers and individuals who hold

---

benefit package option, or a separate policy, certificate, or contract of insurance that excludes coverage or payments for some or all contraceptive services." (emphasis added)).
3. *See, e.g.*, ECF No. 38 at 6 ("[R]elief extending beyond the named plaintiffs would not be proper on the evidentiary record that exists at this time.").

sincere religious objections to contraceptive coverage. So there is no need for religious objectors to "opt in" to the classes. They are *already in* the classes, and they became class members at the moment the Court issued its certification order on March 30, 2019. Second, a requirement to "opt in" would violate RFRA by substantially burdening the religious freedom of objecting employers and individuals. Because the enforcement of the final rule has been enjoined, a religious objector would be unable to vindicate his rights under RFRA unless he retains counsel and takes affirmative steps to secure his rights by "opting in" to this litigation. That by itself imposes a substantial burden on the objector's religious freedom.

The defendants' claim that a classwide injunction will be impermissibly vague under Rule 65(d) is equally groundless. *See* ECF No. 38 at 6–7. The proposed injunction clearly describes the prohibited acts and the defendants who must comply with the order. The defendants' *only* vagueness-related grievance is that they will not necessarily know whether a particular employer or individual is a member of the certified classes. But the solution to that problem is to provide safe harbors in the injunction that allow the defendants to investigate and determine whether a non-compliant employer or individual is a religious objector or a lawbreaker. *See* Section I, *supra*. More importantly, if the defendants are concerned about vagueness or a lack of fair notice, then they should offer a proposed injunction that alleviates those problems, as the plaintiffs have done, rather than acting as though it is impossible to provide any type of classwide relief that complies with Rule 65(d)—especially when the defendants have *agreed* that the Contraceptive Mandate violates RFRA as applied to the absent class members. *See* Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 83 Fed. Reg. 57,536 (Nov. 15, 2018).[4] *American Red Cross v. Palm Beach Blood Bank, Inc.*, 143 F.3d 1407 (11th Cir. 1998), is inapplicable because the defendants in that case had "*no way to determine* whether a given

---

4. *See also* ECF No. 38 at 8 ("Defendants do not dispute that any employer or individual who actually falls within the class definition has stated a valid RFRA claim, for the reasons the Agencies themselves provided in the Final Rules.").

member of the public" was protected by the district court's injunction. *Id.* at 1411 (emphasis added). In this case, the defendants have an *easy* way to determine whether a non-complaint employer or individual is a religious objector: They can ask them.[5] And if they suspect that someone is feigning a religious objection, then they can file a declaratory-judgment action and have a court determine whether the objector falls inside or outside the protected classes. The proposed injunction attached to this brief specifically allows the defendants to take these steps, and it shields them from any possibility of contempt for undertaking these efforts to enforce the Mandate against non-class members.

Finally, there is no reason to be concerned that a classwide injunction might produce "collateral litigation" over whether a particular employer or individual falls within the protected classes. *See* ECF No. 38 at 9. There will be far more collateral litigation in a world in which classwide relief is denied, which would leave *every* objecting employer and individual to fend for themselves and bring their own separate claims for injunctive relief against the defendants. The only "collateral litigation" that will occur after a classwide injunction, by contrast, will be limited to the *subset* of religious objectors who are suspected of insincerity, and the defendants' final rule expects these situations to be rare. *See* Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 83 Fed. Reg. 57,536, 57,558 (Nov. 15, 2018) ("Entities that insincerely or otherwise improperly operate as if they are exempt would do so at the risk of enforcement under such mechanisms. The Departments are not aware of sufficient reasons to believe those measures

---

5. The defendants are careful to avoid asserting that they have no way to determine whether an employer or individual is a sincere religious objector. Instead, they make the more limited claim that the class members are "unknown and unknowable *on the record before this Court*." ECF No. 38 at 9 (emphasis added).

and mechanisms would fail to deter entities from improperly operating as if they are exempt."). That is especially true when there does not appear to be any monetary or financial gain from exempting oneself from the Contraceptive Mandate.[6]

Indeed, it is hard to understand how anyone benefits from a ruling that denies classwide relief and leaves the objecting employers and individuals to litigate their RFRA claims on a case-by-case basis. The defendants are not willing to defend the legality of the Mandate as applied to religious objectors, so the inevitable result in each of these piecemeal lawsuits will be an entry of judgment for the plaintiffs—along with an award of attorneys' fees. This imposes obvious burdens and inconveniences on the absent class members. But it also imposes costs on the defendants, who must divert scarce time and resources toward responding to each of these individual lawsuits, as well as taxpayers who must foot the bill for each of the separate fee awards. All of this to leave in place a policy that the defendants *admit* is illegal and needs to be changed—and that they have tried to change but have been thwarted from doing so by injunctions issued by federal courts in Pennsylvania and California.

## III. THE DEFENDANT'S FALLBACK PROPOSAL FOR CLASSWIDE RELIEF SHOULD BE REJECTED

At the end of their brief, the defendants ask the Court to consider a classwide injunction that applies only if: (1) An absent class member objects to Defendants' enforcement of the Mandate; and (2) The Court determines after an adversarial hearing that the objector is in fact a member of one of the certified classes. *See* ECF No. 38 at 10. Then and only then would the Court's injunction protect the absent class member from the Contraceptive Mandate. The defendants make clear that they are offering this only as a fallback proposal, and

---

6. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 731 n.38 (2014) ("HHS has concluded that insurers that insure eligible employers opting out of the contraceptive mandate and that are required to pay for contraceptive coverage under the accommodation will not experience an increase in costs because the 'costs of providing contraceptive coverage are balanced by cost savings from lower pregnancy-related costs and from improvements in women's health.'" (citing 78 Fed. Reg. 39877)).

only if the Court rejects their request to limit relief to the representative plaintiffs. This fallback proposal is unacceptable and should be rejected.

The problem with this proposal is that it empowers the government to compel every religious objector to prove the sincerity of their convictions in court before they can claim the mantle of RFRA's protections. Not every religious objector has the resources or wherewithal to hire an attorney (or find an attorney willing to represent them pro bono) and then take to the time to sit for a deposition, travel to Fort Worth, and prove to the satisfaction of this Court that they truly are a sincere religious objector. It would also impose enormous administrative burdens on this Court, as the estimated number of objecting employers extends into the hundreds or even thousands, and the estimated number of objecting individuals extends well into the millions. *See* Mot. for Class Cert. Br. in Support (ECF No. 20-1) at 3, 8. Even more concerning is that this proposal would enable a future administration that is hostile to religious liberty to deploy scorched-earth litigation tactics against any absent class member who seeks the protection of this Court's injunction. They could issue subpoenas and use the tools of discovery to wear down and deter anyone who makes an attempt to establish their class membership in court.

For these and other reasons, the burden should remain on the government to initiate court proceedings if it wishes to dispute the sincerity of a purported religious objector. That is the regime that was established in the final rule of November 15, 2018. There is no reason to impose a different regime in the classwide injunction. The defendants should be allowed to enforce the Contraceptive Mandate exactly as they would have enforced it under their final rule, but there is no justification for this Court to create a different regime that is more restrictive of the plaintiffs' religious freedom.

### IV. A DENIAL OF CLASSWIDE RELIEF WILL HAVE RES JUDICATA EFFECT ON THE ABSENT CLASS MEMBERS

There is one final problem with the defendants' position: A denial of classwide relief will forever preclude the absent class members from asserting a RFRA challenge to the Contraceptive Mandate. Because the Court has already certified the classes, the absent class members will be bound by the Court's judgment and they cannot take a second bite at the apple in another court proceeding. *See Richardson v. Wells Fargo Bank, N.A.*, 839 F.3d 442, 449 (5th Cir. 2016) ("[A]bsent class members are also bound by the doctrine of res judicata."). So if the Court enters a final judgment that denies relief to the absent class members, it will be denying them the ability to *ever* obtain judicial relief on their federal RFRA claims.

That prospect may not be troubling if this Court disagrees with the plaintiffs' and defendants' interpretation of the Religious Freedom Restoration Act. But if this Court believes that the absent class members have meritorious RFRA claims, it would be unconscionable to deny them relief *after* a decision to certify the classes, which locks the absent class members into whatever this Court decides and prohibits them from raising or litigating the RFRA claims in another court.[7]

## CONCLUSION

The Court should enter a classwide, permanent injunction that fully protects the rights of the plaintiffs and their fellow class members under the Religious Freedom Restoration Act.

---

7. The plaintiffs agree with the defendants that relief should be limited to the specific contraceptive methods that a particular class member objects to for sincere religious reason. *See* ECF No. 38 at 10. The protections in the defendants' final rule were similarly limited, and the proposed injunction incorporates those limits.

|  |  |
|---|---|
|  | Respectfully submitted. |
|  | /s/ Jonathan F. Mitchell |
| CHARLES W. FILLMORE | JONATHAN F. MITCHELL |
| H. DUSTIN FILLMORE | Texas Bar No. 24075463 |
| The Fillmore Law Firm, L.L.P. | Mitchell Law PLLC |
| 1200 Summit Avenue, Suite 860 | 106 East Sixth Street, Suite 900 |
| Fort Worth, Texas 76102 | Austin, Texas 78701 |
| (817) 332-2351 (phone) | (512) 686-3940 (phone) |
| (817) 870-1859 (fax) | (512) 686-3941 (fax) |
| chad@fillmorefirm.com | jonathan@mitchell.law |
| dusty@fillmorefirm.com |  |
|  | *Counsel for Plaintiffs and* |
| Dated: April 19, 2019 | *the Certified Classes* |

## CERTIFICATE OF SERVICE

    I certify that on April 19, 2019, I served this document through CM/ECF upon:

Daniel Riess
U.S. Department of Justice
Civil Division, Room 6122
20 Massachusetts Avenue NW
Washington, D.C. 20530
(202) 353-3098
daniel.riess@usdoj.gov

*Counsel for Defendants*

                                              /s/ Jonathan F. Mitchell
                                              Jonathan F. Mitchell
                                              *Counsel for Plaintiffs and*
                                              *the Certified Classes*