IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| RICHARD W. DEOTTE, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ALEX M. AZAR, *et al.*, <br><br> Defendants. | CIVIL ACTION NO. 4:18-cv-00825-O |

**BRIEF IN SUPPORT OF MOTION TO INTERVENE
BY THE STATE OF NEVADA**

Pursuant to Federal Rule of Civil Procedure 24, the State of Nevada (hereinafter "Nevada" or "Proposed Intervenor") respectfully submits this Brief in support of their Motion to Intervene as a defendant.

AARON FORD
  Attorney General
HEIDI PARRY STERN (Bar No. 08873)
  Solicitor General
CRAIG A. NEWBY (Bar No. 8591)
  Deputy Solicitor General (*pro hac vice* to follow)
State of Nevada
Office of the Attorney General
100 North Carson Street
Carson City, NV 89701-4717
(775) 684-1100 (phone)
(775) 684-1108 (fax)
hstern@ag.nv.gov
cnewby@ag.nv.gov

*Attorneys for Proposed Intervenor
State of Nevada*

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ ii-iv

INTRODUCTION ..................................................................................................................... 1

I.   Nevada Is Entitled to Intervene as a Matter of Right............................................................ 2

   A.   Nevada's Motion Is Timely Because It Was Filed Six Weeks After this Court Granted Its Amended Class Certification Order, Converted Pending Motions into Dispositive Motions, and the Federal Government Stated it Would not Defend the ACA Provisions .................... 3

   B.   Nevada Has Direct, Substantial, and Legally Protectable Interests that Will Likely be Impaired by this Litigation ......................................................... 4

   C.   This Suit Will Impair Nevada's Ability to Protect Its Interests in the ACA's Contraception Provisions...................................................................... 7

   D.   The Federal Defendants Do Not Adequately Represent Nevada's Interests ............. 8

      1.   No Party Has Defended Current Federal Statute ................................................ 8

      2.   No Presumption of Adequate Representation Applies Here............................... 9

      3.   The Federal Defendants Have Adversity of Interest or Nonfeasance Here......... 9

II.  In the Alternative, Nevada Should Be Granted Permissive Intervention ........................ 10

CONCLUSION......................................................................................................................... 11

CERTIFICATE OF SERVICE ................................................................................................. 12

## TABLE OF AUTHORITIES

**PAGE**

### *CASES*

*Alfred L. Snapp & Son v. Puerto Rico*,
   458 U.S. 592, 607-608 (1982) ............................................................................................... 7

*Association of Professional Flight Attendants v Gibbs*,
   804 F.2d 318, 320–21 (5th Cir. 1986) ................................................................................... 4

*Blumfield v. Dodd*,
   749 F.3d 339, 341, 344-346 (5th Cir. 2014) ............................................................... 2,8,9,10

*East Texas Baptist Univ. v. Burwell*,
   793 F.3d 449 (5th Cir. 2015) ............................................................................................. 1, 8

*Edwards v. City of Houston*,
   78 F.3d 983, 999, 1000, 1005 (5th Cir. 1996) (*en banc*) ...................................................... 3,8

*Entergy Gulf States La., LLC v. E.P.A.*,
   817 F.3d 198, 203, 204-205 (5th Cir. 2016) ..................................................................... 9, 10

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*,
   229 F.R.D. 126, 131 (S.D. Tex. 2005) ................................................................................. 10

*In re Lease Oil Antitrust Litig.*,
   570 F.3d 244, 248 (5th Cir. 2009) ......................................................................................... 3

*Kneeland v. Nat'l Collegiate Athletic Ass'n*,
   806 F.2d 1285, 1289 (5th Cir. 1987) ................................................................................... 10

*League of United Latin American Citizens, District 19 v. City of Boerne*,
   659 F.3d 421, 434 (5th Cir. 2011) ......................................................................................... 5

*Massachusetts v. E.P.A.*,
   549 U.S. 497, 519-20 (2007) ................................................................................................. 7

*Sierra Club v. Espy*,
   18 F.3d 1202, 1205,1206, 1207 (5th Cir. 1994) ............................................................ 3,4,8,10

*Stallworth v. Monsanto Co.*,
   558 F.2d 257, 264–66 (5th Cir. 1977) ................................................................................... 3

*Texas v. United States*,
   805 F.3d 653, 657, 663 (5th Cir. 2015) .........................................................................*Passim*

**PAGE**

*Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*,
  834 F.3d 562, 565, 566, 568, 569 (5th Cir. 2016) ............................................................*Passim*

*Zubik v. Burwell*,
  136 S. Ct. 1557, 194 L.Ed. 2d 696 (2016) ................................................................................ 8

## *STATUTES*

42 U.S.C. § 300gg-13(a)(4) ................................................................................................ 1

Nev. Rev. Stat. §§ 689A.0418 ............................................................................................. 1

## *OTHER AUTHORITIES*

*Contraceptive Needs and Services*, 2014 Update, New York: Guttmacher Institute, 2016,
  https://www.guttmacher.org/sites/default/files/report_pdf/contraceptive-needs-and-services-
  2014_1.pdf ............................................................................................................................. 6

*Medicaid Income Eligibility for Adults as a Percent of the Federal Poverty Level*, State Health
  Facts, 2018,
https://www.kff.org/health-reform/state-indicator/medicaid-income-eligibility-limits-for-adults-
  as-a-percent-of-the-federal-poverty-level .............................................................................. 5

*Public Costs from Unintended Pregnancies and the Role of Public Insurance Programs in
  Paying for Pregnancy-Related Care*: *National and State Estimates for 2010*, New York:
  Guttmacher Institute, 2015,
https://www.guttmacher.org/report/public-costs-unintended-pregnancies-and-role-public-
  insurance-programs-paying-pregnancy ................................................................................ 7

*U.S. Dep't of Labor, Emp. Benefits Sec. Admin.*, FAQs About Affordable Care Act
  Implementation Part 36, (Jan. 9, 2017) ................................................................................. 9

*Unintended Pregnancy Rates at the State Level*: *Estimates for 2010 and Trends Since 2002*,
  New York: Guttmacher Institute, 2015,
https://www.guttmacher.org/report/unintended-pregnancy-rates-state-level-estimates-2010-and-
  trends-2002 ............................................................................................................................ 7

| *RULES* | **PAGE** |
|---|---|
| 26 C.F.R. § 54.9815-2713(a)(1)(iv) | 1 |
| 29 C.F.R. § 2590.715 – 2713(a)(1)(iv) | 1 |
| 45 C.F.R. § 147.130(a)(1)(iv) | 1 |
| Rule 24(a) | 5 |
| Rule 24(a)(2) | 2, 4 |
| Rule 24(b)(2) | 10 |

## INTRODUCTION

Plaintiffs seek nationwide class relief establishing that the Religious Freedom Restoration Act excuses "every current and future" employer or individual who has a "sincerely held religious belief" from "establishing, maintaining, providing, offering, or arranging for" contraception coverage, without regard to the health needs or beliefs of insured employees. (*See* ECF No. 37 at 2). Plaintiffs' Motion for Class Certification was granted on March 30, 2019 (*See* ECF No. 33) and Plaintiffs' Motion for Preliminary Injunction was ordered to be treated as a motion for summary judgment and permanent injunction by this Court on April 11, 2019. (*See* ECF No. 37). This has all happened without Defendants providing a merits-based defense to what this Court has termed the "Contraceptive Mandate,"[1] notwithstanding binding United States Supreme Court precedent on religious exercise, as persuasively analyzed by the Fifth Circuit on this issue. *See East Texas Baptist Univ. v. Burwell*, 793 F.3d 449 (5th Cir. 2015).

Plaintiffs seek to impose their nationwide class onto Nevada with no consideration of the ACA's existing contraception provisions or Nevada's statutorily-expressed compelling interests in insuring similar protections for its citizens. Nevada statutes specifically require Nevada-licensed insurance plans to provide coverage for contraception services, except for those *affiliated with a religious organization* that objects on religious grounds. *See* Nev. Rev. Stat. §§ 689A.0418 (individual health care plans), 689B.0378 (group and blanket health care plans), 689C.1676 (health insurance for small employers), 695A.1865 (fraternal benefit societies), 695B.1919 (nonprofit corporations for hospital, medical and dental services), and 695C.1696 (health maintenance organizations) (emphasis added). Plaintiffs disregard these statutes and the harms to Nevada's citizens and budget that would be caused by implementation of such nationwide class relief. These harms include increased unintentional pregnancy, reversal of significant decreases in abortions,

---

[1] Codified at 42 U.S.C. § 300gg-13(a)(4), 45 C.F.R. § 147.130(a)(1)(iv), 29 C.F.R. § 2590.715 – 2713(a)(1)(iv), and 26 C.F.R. § 54.9815-2713(a)(1)(iv),

1

increased state-borne health care costs, and unsustainable reliance on federal Title X funds designed to provide contraceptives and family planning support to low income women.

Under these circumstances, mandatory intervention pursuant to Rule 24(a)(2) is warranted. Nevada has a sovereign interest in the provision of preventive care equitably, including contraceptive care, to ensure public health and safety. Resolution of this case without Nevada's intervention impedes Nevada's ability to protect those interests. Respectfully, the Federal Defendants are not defending Nevada's sovereign interest in its right to provide contraceptive care to its citizens, as provided for by the ACA's preventive care provisions. This Motion is timely, based on this Court's recent conversion of a motion for preliminary injunction into a motion for summary judgment and permanent injunction where the Federal Defendants have not yet *answered or otherwise responded* to Plaintiffs' original or amended complaint and only recently stated they would not defend existing law on the merits. In the alternative, Nevada should be permitted to intervene pursuant to Rule 24(b).

This Motion is based upon the following Memorandum of Points and Authorities, the pleadings and papers on file in this matter, the Declaration of Beth Handler (**Exhibit A**), the Declaration of Kathryn Kost (**Exhibit B**), any oral argument that the Court may wish to entertain, and any other matters the Court deems appropriate to consider.

I.      **Nevada Is Entitled to Intervene as a Matter of Right.**

A party is entitled to intervene as a matter of right if: (1) its motion is timely; (2) it has an interest "relating to the property or transaction which is the subject of the action;" (3) the outcome of the action may, "as a practical matter, impair or impede his ability to protect that interest;" and (4) the existing parties cannot adequately represent that interest. *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016). This test applies whether a party seeks to intervene as a plaintiff or a defendant. *See Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015).

Rule 24 is "liberally construed" in favor of intervention. *Blumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014). "[D]oubts [are] resolved in favor of the proposed intervenor." *In re Lease*

2

*Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir. 2009). Intervention as a matter of right "must be measured by a practical rather than a technical yardstick," and the inquiry is a "flexible one" focused on the "particular facts and circumstances" of each case. *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996) (*en banc*). "Federal courts should allow intervention where no one would be hurt and the greater justice could be obtained." *Texas*, 805 F.3d at 657; *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994).

Nevada satisfies all four requirements.

### A. Nevada's Motion Is Timely Because It Was Filed Six Weeks After this Court Granted Its Amended Class Certification Order, Converted Pending Motions into Dispositive Motions, and the Federal Government Stated it Would not Defend the ACA Provisions.

Here, a court considers four factors when evaluating the timeliness of a motion to intervene:

(1) The length of time the applicants knew or should have known of their interest in the case;

(2) Prejudice to existing parties caused by the applicant's delay;

(3) Prejudice to the applicant if the motion is denied; and

(4) Any unusual circumstances.

*Stallworth v. Monsanto Co.*, 558 F.2d 257, 264–66 (5th Cir. 1977). Each factor here demonstrates the timeliness of Nevada's motion under the circumstances of this case.

The first inquiry is contextual, as "absolute measures of timeliness should be ignored." *Espy*, 18 F.3d at 1205. The clock beings to run when the applicants knew or reasonably should have known of their interests, or from the time they became aware that their interests would no longer be protected by the existing parties to the lawsuit. *Edwards*, 78 F.3d at 1000; *Espy*, 18 F.3d at 1206.

Nevada files this motion less than six weeks after the Federal Government Defendants filed their "Response to Plaintiffs' Motion for Summary Judgment and Permanent Injunction," by which they stated they "do not oppose an order by this Court entering partial summary judgment on the legal question whether any employers or individuals who in fact fall within the certified classes

3

have stated a valid RFRA claim." (ECF No. 38 at 3).  This is so even though the Defendants have not yet filed a responsive pleading to Plaintiffs' original or amended complaint and no discovery appears to have taken place.  The Fifth Circuit has found motions to intervene to be timely even when filed at substantially later points in litigation.  *Wal-Mart*, 834 F.3d at 565–66 (finding intervention timely after denial of motion to dismiss, three months after answer was filed, and "before discovery progressed"); *Association of Professional Flight Attendants v Gibbs*, 804 F.2d 318, 320–21 (5th Cir. 1986) (finding intervention timely following a five month delay when all *Stallworth* factors considered).

None of the other *Stallworth* factors weigh against Nevada.  Prejudice to the existing parties is measured by any delay in seeking intervention (of which there is none), not based on potential inconvenience of permitting Nevada from participating in the litigation.  *Espy*, 18 F.3d at 1206.  This action has not advanced to a stage where any existing party would be prejudiced.  To the contrary, this Court has issued an "Unopposed Motion for Temporary Restraining Order" to shield class representatives from tax penalties pending briefing on the pending motions.  (ECF Nos. 28-29 at 2).  No unusual circumstances weigh against a finding of timeliness.

As described below, Nevada will be significantly prejudiced if not permitted to intervene.  This Court must permit Nevada to defend the merits of existing federal law, and to explain the effects of nationwide relief on Nevada law, which balance religious objections with the compelling interest Nevada has financially and for its citizens' health outcomes resulting from providing contraceptive care to its citizens.  Courts should permit intervention "where no one would be hurt and the greater justice could be attained." *Espy*, 18 F.3d at 1205.  The motion satisfies Rule 24(a)(2)'s timeliness requirement.

      **B.**    **Nevada Has Direct, Substantial, and Legally Protectable Interests that Will Likely be Impaired by this Litigation.**

Nevada also satisfies Rule 24's requirement that intervenors must have a "direct, substantial, legally protectable interest in the proceedings." *Texas*, 805 F.3d at 657.  This requires a showing that Nevada has a "stake in the matter" beyond a "generalized preference

4

that the case come out a certain way." *Id.* Property or pecuniary interests are the "most elementary type[s] of right[s]" protected by Rule 24(a) and "are almost always adequate." *Id.* at 658. Rule 24(a) also safeguards less tangible interests, however, such as a right to vote. *See, e.g., League of United Latin American Citizens, District 19 v. City of Boerne*, 659 F.3d 421, 434 (5th Cir. 2011).

Nevada meets this test. Plaintiffs propose a nationwide class that would circumvent existing federal statutes and allow employers to not provide contraception coverage, reversing significant reductions in unplanned pregnancies and abortions in Nevada, necessitating significant additional spending in Nevada on contraception access and corresponding increased hospital costs for said unplanned pregnancies. This increase in spending constitutes a sufficiently adequate injury to establish Nevada's interest in this litigation. *See, e.g., Wal-Mart*, 834 F.3d at 568 ("[W]e have continued to hold that economic interests can justify intervention when they are directly related to the litigation.").

In Nevada, more than 379,000 women of child bearing age (aged 15–44) receive private insurance coverage and could be affected by Plaintiffs' proposed class action relief. (Ex. A at ¶ 2). In Nevada, some women who would be impacted by Plaintiffs' proposed nationwide class action would not qualify for Medicaid or Title X because they would not meet the income eligibility requirements for coverage or subsidized care under these programs. (*Id.; see also* Kaiser Family Foundation, *Medicaid Income Eligibility for Adults as a Percent of the Federal Poverty Level*, State Health Facts, 2018, https://www.kff.org/health-reform/state-indicator/medicaid-income-eligibility-limits-for-adults-as-a-percent-of-the-federal-poverty-level). For example, in Nevada, childless adults and parents are eligible for full-benefit Medicaid only if they have incomes at or below 138% of the federal poverty level. *Id.* As a result, some women would be at increased risks of unintended pregnancy, either because they are not able to afford the contraception methods that work best for them or because cost would force them to forgo contraception use entirely. (Ex. A at ¶ 4). Even based on the calculations in the Federal

5

Government's proposed Final Rules, between 600 to 1,200 Nevadan women would be harmed from implementation of Plaintiffs' proposed class relief. (*Id.* at ¶ 5).

Even Nevada women eligible for publicly funded family planning services through Medicaid and Title X could be denied the ability to obtain contraceptive counseling and services from their desired provider at the same time they receive other primary and preventive care. This situation would increase the time, effort, and expense involved in getting needed contraception while interfering with health care providers' ability to holistically managing these women's health conditions. (*Id.* at ¶ 6).

Finally, the increase in Nevada women relying on publicly funded services would strain Nevada's existing family planning programs and providers, making it more difficult for them to meet the current need for care. For instance, in 2014, 194,000 women were in need of publicly funded family planning in Nevada, with the existing state family planning network only able to meet 10% of this need. (*Id.* at ¶ 5; Ex. B at § 59;[2] *see also* Frost JJ, Frohwirth L and Zolna MR, *Contraceptive Needs and Services*, 2014 Update, New York: Guttmacher Institute, 2016, https://www.guttmacher.org/sites/default/files/report_pdf/contraceptive-needs-and-services-2014_1.pdf).

Nevada is particularly concerned that loss of access to contraception would lead to unintended pregnancies and abortions. According to the Centers for Disease Control and Prevention ("CDC"), unintended pregnancy is associated with an increased risk of health problems for the mother and child, resulting in increased healthcare costs relative to intended pregnancies. (Ex. A at ¶ 8). Before implementation of the Affordable Care Act, 29,000 unintended pregnancies occurred in 2010 among Nevada residents, a rate of 54 per 1,000 women of child bearing age. (*Id.* at ¶ 9; Ex. B at ¶ 60; *see also* Kost K, *Unintended Pregnancy*

---

[2] Ms. Kost, is the Acting Vice President for Domestic Research at the Guttmacher Institute, having served in various capacities there for nearly 30 years. Ex. B at § 1. Her declaration describes harms associated with Plaintiffs' proposed permanent injunction, both on a nationwide and Nevada-specific basis.

*Rates at the State Level*: *Estimates for 2010 and Trends Since 2002*, New York: Guttmacher Institute, 2015, https://www.guttmacher.org/report/unintended-pregnancy-rates-state-level-estimates-2010-and-trends-2002). Of those unintended pregnancies that ended in birth, 60% were paid for by Medicaid and other public insurance programs, costing Nevada $37 million and the federal government $66 million in 2010. (Ex. A at ¶ 10; Ex. B. at 61; *see also* Sonfield A and Kost K, *Public Costs from Unintended Pregnancies and the Role of Public Insurance Programs in Paying for Pregnancy-Related Care*: *National and State Estimates for 2010*, New York: Guttmacher Institute, 2015, https://www.guttmacher.org/report/public-costs-unintended-pregnancies-and-role-public-insurance-programs-paying-pregnancy).

Further, the CDC notes that women with unintended pregnancies are more likely to delay prenatal care, with is imperative to positive birth outcomes. Implementation of the ACA resulted in a 35% decrease in Nevada's abortion rate among women aged 15 to 19 and a 10% decrease amount women aged 20 to 24 between 2012 to 2017. Ex. A at ¶ 11. Plaintiffs' proposed class action would increase Nevada expenditures while harming the public heath of Nevada women. *Id.* at ¶ 12.

In addition to Nevada's proprietary injuries, the Supreme Court has recognized that States have a quasi-sovereign interest in the physical and economic well-being of their residents. *See, e.g., Alfred L. Snapp & Son v. Puerto Rico*, 458 U.S. 592, 607-608 (1982), *Massachusetts v. E.P.A.*, 549 U.S. 497, 519-20 (2007). Nevada has demonstrated the extensive harm to itself and its residents that would flow from Plaintiffs' unopposed prosecution of this lawsuit.

### C. This Suit Will Impair Nevada's Ability to Protect Its Interests in the ACA's Contraception Provisions.

If Plaintiffs prevail, the proposed nationwide class action would "impair or impede" Nevada's ability to protect its interests detailed above. *Wal-Mart*, 834 F.3d at 565. Without regard to Nevada's interests, Plaintiffs seek to impose nationwide restrictions outside the ongoing federal rulemaking process—a process that requires opportunities for interested parties to participate.

7

Significant numbers of Nevadan women will lose access to necessary healthcare, reversing significant public health gains achieved following adoption of the ACA.

Nevada should not be forced to "wait on the sidelines" while a court decides issues "contrary to their interests." *Brumfield*, 749 F.3d at 344–45. Rather, the "very purposes of intervention is to allow interested parties to air their views so that a court may consider them *before* making potentially adverse decisions." *Id.* at 345 (emphasis added). Indeed, the mere "*stare decisis* effects of the district court's judgment" sufficiently impairs Nevada's interests to allow it to intervene now. *Espy*, 18 F.3d at 1207.

D. **The Federal Defendants Do Not Adequately Represent Nevada's Interests.**

1. **No Party Has Defended Current Federal Statute.**

No current party represents Nevada's interests in defense of current law. The Federal Defendants:

- Have not filed a formal response to Plaintiffs' original or amended complaint;

- Did not oppose Plaintiffs' motion for a temporary restraining order; and

- Do not oppose partial summary judgment or a permanent injunction on the legal question of whether any employers or individuals who in fact fall within the certified classes have stated a valid RFRA claim.

Federal Defendants take this position even though this Circuit has concluded that similarly situated Plaintiffs have not shown and are not likely to show that the Contraception Mandate substantially burdens their religious exercise. *See East Texas Baptist Univ. v. Burwell*, 793 F.3d 449 (5th Cir. 2015).[3] These circumstances more than satisfy the "minimal" requirement that the Federal Defendants' representation of Nevada's interests "may be inadequate." *Edwards*, 78 F.3d at 1005.

---

[3] Nevada recognizes that the United States Supreme Court vacated this Circuit's decision in *Zubik v. Burwell*, 136 S. Ct. 1557, 194 L.Ed. 2d 696 (2016), to allow the parties to those cases to explore whether further modifications to the existing accommodation procedure could resolve the asserted objections while still ensuring affected women receive full and equal health coverage, including contraceptive coverage. Based in part on comments that the process described in *Zubik*

8

### 2. No Presumption of Adequate Representation Applies Here.

Further, no presumptions associated with adequate representation apply here. Federal Defendants are neither "charged by law" with representing Nevada's interests, nor do they share the same "ultimate objective" in this case. *See Entergy Gulf States La., LLC v. E.P.A.*, 817 F.3d 198, 203 (5th Cir. 2016). In particular, Federal Defendants do not share Nevada's "ultimate objective" to preserve the balance of religious beliefs and public health created in the ACA's contraception provisions, which this Circuit previously recognized complied with RFRA. As made clear throughout this case and others throughout the United States, the Federal Defendants do not support existing law.

### 3. The Federal Defendants Have Adversity of Interest or Nonfeasance Here.

Any presumption that the Federal Defendants adequately represent Nevada's interests is defeated by the demonstration of "adversity of interest" or "nonfeasance" by the Federal Defendants in this case. *Id.* Here, as demonstrated by the case's docket, the Federal Defendants demonstrate nonfeasance by their inactions and concessions in this case. Further, to demonstrate an "adversity of interest," Nevada needs to only show that its "interests may not align precisely" with the Federal Defendants. *Brumfield*, 749 F.3d at 345. This Circuit has repeatedly held that "the lack of unity in *all* objectives, combined with real and legitimate additional or contrary arguments, is sufficient to demonstrate that the representation *may* be inadequate. *Id.* at 346 (emphasis added).

The Federal Defendants inadequately represent Nevada's interests. Thus, Nevada itself must protect the public health of its citizens and preserve millions of dollars no longer spent on

---

would not resolve the concerns of religious objectors, the Departments concluded that there was no feasible approach "identified at this time." *See* U.S. Dep't of Labor, Emp. Benefits Sec. Admin., FAQs About Affordable Care Act Implementation Part 36, (Jan. 9, 2017), attached hereto as **Exhibit C**. The Departments further noted that they "continue to believe the existing accommodation regulations are consistent with RFRA" based on the prior holdings by eight other Circuits (including this one) that the requirement does not substantially burden their exercise of religion. *Id.* Nevada submits (and would argue, upon intervention) that the prior analysis undertaken by this Circuit should govern this Court's analysis of that legal question.

9

unplanned pregnancies, as accounted for under the ACA's contraception provisions. Nor do the Federal Defendants defend existing federal statutes in this case, as previously upheld by this Circuit. Rather, they seek to alter those statutes through the rulemaking process presently challenged in other federal courts. Again, the Federal Defendants do not represent Nevada's interest.

Because Nevada has identified "particular ways in which their interests diverge" from the Federal Defendants, they are entitled to intervene. *Texas*, 805 F.3d at 663. This Circuit has repeatedly held that intervention is required under these circumstance, where the proposed intervenor sought intervention as a defendant, rebutted the presumption of adequate representation, and showed adversity of interest from divergent interests and legal arguments from the existing defendants. *See Brumfield*, 749 F.3d at 346, *Texas*, 805 F.3d at 663, *Entergy Gulf States*, 817 F.3d at 204–205; *Wal-Mart*, 834 F.3d at 569. Because Nevada has met those requirements, this Court should grant it intervention as a matter of right.

## II. In the Alternative, Nevada Should Be Granted Permissive Intervention.

Alternatively, Nevada is entitled to permissive intervention under Rule 24(b), which permits the Court to use its discretion to grant intervention where the application is timely, there is a common question of law or fact, and there will be no undue delay or prejudice to the original parties. *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987); *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 229 F.R.D. 126, 131 (S.D. Tex. 2005). Rule 24(b)(2) further allows a state such as Nevada to intervene on a timely motion where a claim is premised on "a statute or executive order administered by [Nevada]." The Fifth Circuit has also instructed that "[f]ederal courts should allow intervention where no one would be hurt and the greater justice could be obtained." *Texas*, 805 F.3d at 657 (citing *Epsy*, 18 F.2d at 1205).

First, as discussed above, Nevada's motion is timely. Second, it is clear that Nevada, without a final determination of the merits, has asserted a defense that shares a question of law

with Plaintiffs pertaining to whether the ACA's contraception provisions constitute a RFRA violation. Third, given the existing temporary restraining order protecting named Plaintiffs and the ability of any other class member to seek similar relief, the intervention would not cause undue delay or prejudice to the original parties. This Court should allow Nevada to file its proposed opposition, and provide Plaintiffs an opportunity to file a reply. Under these circumstances, full and adequate briefing on all sides of this case will not cause prejudice. *Cf. Texas*, 805 F.3d at 657 (where greater justice can be obtained, intervention should be permitted).

## CONCLUSION

For the foregoing reasons, Nevada respectfully requests this Court to grant their motion to intervene as of right, or alternatively for permissive intervention, allowing them to intervene in this lawsuit as defendants. As part of its Appendix to this Brief, Nevada submits a proposed Order granting this Motion (**Exhibit D**), its proposed Opposition to Plaintiffs' Motion for Summary Judgment and Permanent Injunction (**Exhibit E**), and a proposed Brief supporting said Opposition (**Exhibit F**).

DATED: May 24, 2019.

                                  AARON D. FORD
                                  Attorney General

                                By: /s/ *Craig A. Newby*
                                  HEIDI PARRY STERN (NV Bar No. 8873)
                                  Solicitor General
                                  CRAIG A. NEWBY (NV Bar No. 8591)
                                  Deputy Solicitor General

**CERTIFICATE OF SERVICE**

      I hereby certify that I electronically filed the foregoing by using the CM/ECF system on the 24th day of May, 2019.

                                     By:    /s/ *Sandra Geyer*
                                                 Sandra Geyer, Employee of the Office
                                                 of the Attorney General