IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **RICHARD W. DEOTTE et al.,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:18-cv-00825-O** |
| | § | |
| **ALEX M. AZAR II et al.,** | § | |
| | § | |
| **Defendants.**[1] | § | |
| | § | |

## ORDER

Before the Court are the State of Nevada's Motion to Intervene and Brief in Support (ECF Nos. 62, 63), filed May 24, 2019; Plaintiffs' Brief in Opposition to Nevada's Motion to Intervene (ECF No. 77), filed June 14, 2019; and the State of Nevada's Reply in Support of Motion to Intervene (ECF No. 82), filed June 28, 2019. Also before the Court are several briefs filed by *amici curiae* in support of the State of Nevada's Motion to Intervene. *See* ECF Nos. 93, 94, and 95. Having considered the motion, briefing, record, and applicable law, and for the reasons that follow, the Court **DENIES** the State of Nevada's Motion to Intervene (ECF No. 62).

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court set forth the extensive statutory, regulatory, and procedural background to this case in its June 5, 2019 Order granting Plaintiffs' Motion for Summary Judgment and Permanent Injunction. *See* ECF No. 76 at 1–7. Factual background pertinent to this motion is set out in detail

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court hereby substitutes Patrick Pizzella, Acting Secretary of Labor, as Defendant, in place of Defendant Rene Alexander Acosta, who retired from the position effective July 19, 2019.

in that order. In the instant motion, Nevada seeks to intervene in this case as a matter of right or, in the alternative, permissively.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 24(a) permits a party to seek intervention as of right while Rule 24(b) allows a party to seek permissive intervention. FED. R. CIV. P. 24. "Although the movant bears the burden of establishing its right to intervene, Rule 24 is to be liberally construed." *Wal-Mart Stores, Inc. v. Texas Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (citation omitted). "Federal courts should allow intervention when no one would be hurt and the greater justice could be attained." *Id.* (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994)) (internal quotation marks omitted).

### A.    Intervention as of Right

Rule 24(a)(2) of the Federal Rules of Civil Procedure provides that:

> [o]n timely motion, the court must permit anyone to intervene who. . .claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

A proposed intervenor is entitled to intervene if all the following elements are satisfied:

> (1) the application for intervention must be timely; (2) the applicant must have an interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit.

*Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (quoting *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co (NOPSI)*, 732 F.2d 452, 463 (5th Cir. 1984) (en banc)). "Failure to satisfy one requirement precludes intervention of right." *Haspel & Davis Milling & Planting Co.*

*v. Bd. of Levee Comm'rs of the Orleans Levee Dist.*, 493 F.3d 570, 578 (5th Cir. 2007); *see also Espy*, 18 F.3d at 1205.

### B.      Permissive Intervention

Federal Rule of Civil Procedure 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3). Permissive intervention under Rule 24(b) "is wholly discretionary with the [district] court. . .even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *Kneeland v. Nat'l Collegiate Athletic Ass'n*, 806 F.2d 1285, 1289 (5th Cir. 1987). Intervention is appropriate when: "(1) timely application is made by the intervenor, (2) the intervenor's claim or defense and the main action have a question of law or fact in common, and (3) intervention will not unduly delay or prejudice the adjudication of the rights of the original parties." *Frazier v. Wireline Solutions, LLC*, 2010 WL 2352058, at *4 (S.D. Tex. June 10, 2010) (citation omitted); *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 229 F.R.D. 126, 131 (S.D. Tex. 2005).

## III.    ANALYSIS

The State of Nevada argues it is entitled to intervention as of right under Rule 24(a)(2) or, in the alternative, to permissive intervention under Rule 24(b). Plaintiffs have filed an opposition to Nevada's Motion to Intervene, arguing that Nevada has failed to show it is entitled to mandatory intervention and that the Court should deny its request for permissive intervention. Defendants have not taken a position on Nevada's Motion to Intervene.

### A.      Intervention as of Right

While Rule 24(a) is interpreted in favor of the proposed intervenor, Nevada has not shown it is entitled to intervene as a matter of right. The Court begins with whether Nevada has Article III standing to intervene in this lawsuit, a matter upon which the parties' briefing is silent.

In 2017, the Supreme Court held "an intervenor of right must have Article III standing in order to pursue relief that is different from that which is sought by a party with standing." *See Town of Chester, N.Y. v. Laroe Estates, Inc.*, __ U.S. __, 137 S. Ct. 1645, 1651 (2017). Nevada does not address its Article III standing. This alone is a basis to deny Nevada's Motion to Intervene following the Supreme Court's decision in *Town of Chester*, *supra*. To avoid further delay, however, the Court will address Nevada's standing *sua sponte*.[2] Because Nevada did not provide a proposed complaint-in-intervention or answer-in-intervention as required under Rule 24(c), the Court is left to engage in some level of guesswork concerning Nevada's posture as a litigant in this case and the relief it seeks. The Court has before it only Nevada's arguments in support of its Motion to Intervene and attached exhibits (which includes its proposed opposition to summary judgment), and the Declarations of Beth Handler and Kathryn Host. *See* ECF Nos. 62, 62-1, and 62-2.

After considering Nevada's arguments in support of intervention, the Court finds that no party is seeking Nevada's desired relief—a ruling that the contraceptive mandate as applied to the two certified classed does not violate RFRA. Nevada must, therefore, demonstrate independent standing under the Supreme Court's holding in *Town of Chester*, *supra*.

---

[2] A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) (A "federal court may raise subject matter jurisdiction *sua sponte*.") (citation omitted).

Article III of the Constitution limits the exercise of the judicial power to "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 1. This fundamental limitation preserves the "tripartite structure" of the federal government, prevents the federal judiciary from intruding upon the powers given to the other branches, and confines the federal courts to a proper judicial role. *Town of Chester*, 137 S. Ct. at 1650 (citation and internal punctuation omitted). "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *Id.* (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006)).

"Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Id.* (citation omitted). "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Id.* (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013)). "Our standing doctrine accomplishes this by requiring a party seeking relief from the Court to 'alleg[e] such a personal stake in the outcome of the controversy as to. . .justify [the] exercise of the court's remedial powers on [their] behalf.'" *Id.* (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 38 (1976) (internal quotation marks omitted)). "The party invoking federal jurisdiction bears the burden of establishing" that it has standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). There are three requirements for Article III standing. A party seeking relief in federal court must demonstrate: (1) an injury in fact which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical"; (2) that the injury is "fairly traceable to the challenged action"; and (3) that it is "likely. . .that the injury will be redressed by a favorable decision." *Id.* at 560 (cleaned up). "In response to a summary judgment motion," the "specific facts" set forth by a party "will be taken as true." *Id.* at 561.

In its proposed opposition, Nevada appears to argue that granting the Individual Class and the Employer Class the relief they seek in the First Amended Complaint and subsequent motions will spark a chain of events via which Nevada will eventually be injured economically due to impacts on public health and a drain on the public fisc. Nevada's theory of harm proceeds in steps: first, it argues that Plaintiffs' nationwide class and the permanent injunction, if granted, would circumvent existing federal statutes and allow employers to abstain from providing contraceptive coverage, causing women in Nevada to lose their contraceptive coverage; second, Nevada argues that it will have to spend more on contraceptive access and the resulting increased hospital costs for unplanned pregnancies; and third, it argues that the increase in Nevada women relying on publicly funded services would strain Nevada's existing family planning programs and providers, making it more difficult for them to meet the current need. *See* App. Supp. Mot. Intervene Ex. E (Prop. Br. of Opposition to Pls.' Mot. Summ. J.), App. 56–80, ECF No. 62-2. According to Nevada, some of these women will then obtain state-funded contraceptive services or prenatal and postnatal care for unintended pregnancies, and Nevada will incur additional costs as a result. As for those women who go forward with unintended pregnancies, Nevada asserts they are more likely to delay prenatal care, imperative to positive birth outcomes, thereby increasing Nevada's expenditures while harming the health of Nevada women. *See* Br. Supp.  Mot. Intervene 5–7,ECF No. 62-1.

After considering Nevada's Motion to Intervene and the exhibits attached thereto, the Court concludes that Nevada has failed to satisfy the first prong for standing: an injury in fact which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical…" *Lujan*, 504 U.S. at 560. The imminence requirement is met "if the threatened injury is 'certainly impending' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper*, 568 U.S. at 409). The imminence concept,

6

while far reaching, is bounded by its Article III purpose: "to ensure that the alleged injury is not too speculative." *Lujan*, 504 U.S. at 564 n.2.

As summarized above, Nevada is asking the Court to allow it to intervene as of right because a classwide injunction might create a ripple effect, causing employers and women in Nevada to make independent choices that might ultimately lead to larger expenditures by Nevada and threaten its sovereign interests. These asserted injuries rely on a sequence of events that are simply too attenuated to conclude that the risk of injury is "imminent."

Even assuming Nevada had satisfied the requirement that its asserted injury is "imminent," the next question is whether the imminent injury alleged is "concrete and particularized." *See Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1548 (2016). Concreteness requires something "real, and not abstract." *Id.* (internal quotation marks omitted). "A 'concrete' injury must be '*de facto*', that is, it must actually exist." *Id.* (quoting BLACK'S LAW DICTIONARY 479 (9th ed. 2009)). A sufficiently particularized injury "affect[s] the plaintiff in a personal and individual way." *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1). Here, for the reasons previously stated, the abstract risk of the alleged financial harm and threats to Nevada's sovereign interests are not concrete and particularized imminent injuries.

Causation and redressability are the final two requirements for Article III standing. *Lujan*, 504 U.S. at 561–62. As to causation, the Court finds that the asserted fiscal injury and threats to sovereignty are not "fairly traceable to the challenged action," *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010), as any increase in Nevada's spending will be related to independent decisions made by women and employers, as well as by Nevada if it chooses to fund programs to pay for women's contraceptive care. An injury is not "fairly traceable" to a challenged law when "an independent act of a third party was a necessary condition of the harm's occurrence,

and it was uncertain whether the third party would take the required step." *Texas v. United States*, 809 F.3d 134, 160 n.68 (5th Cir. 2015) (citing *Clapper*, 133 S. Ct. at 1147–50) (explaining that, for a provision of the Foreign Intelligence Surveillance Act to have resulted in the monitoring of the plaintiffs' communications, the Attorney General and the Director of National Intelligence would have had to authorize the collection of the communications, the Foreign Intelligence Surveillance Court would have had to approve the government's request, and the government would have had to intercept the communications successfully). In addition, a state lacks standing when the injury to its fisc arises from its legislative decision to pay monies. *See Pennsylvania v. New Jersey*, 426 U.S 660, 664 (1976) (per curiam) (holding that harm to the fisc of a plaintiff state because of its own statute is "self-inflicted," and therefore not "traceable to the challenged conduct of the defendant.").

As to redressability, a determination by the Court that the contraceptive mandate does not violate RFRA—the argument urged by Nevada—would make it more likely that the economic harms of which Nevada complains will not occur, for as long as the November 15, 2018 Religious Exemption is enjoined.[3] *See Pennsylvania v. Trump*, 351 F. Supp. 3d 791 (E.D. Pa. 2019) (order granting nationwide preliminary injunction), *aff'd sub nom Pennsylvania v. President United States*, No. 17-3752, __ F.3d __, 2019 WL 3057657 (3d Cir. July 12, 2019).

---

[3] *See* Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 83 Fed. Reg. 57,536 (Nov. 15, 2018); 45 C.F.R. § 147.132 ("Religious Exemption"). The Religious Exemption expanded the categories of employers who are permitted to invoke the exemption from the contraceptive mandate to include all non-profit, for-profit, and publicly-held companies. The Religious Exemption also made participation in the Accommodation process voluntary, relieving employers from the need to "file notices or certifications of their exemption." 83 Fed. Reg. at 57,558; *see also id.* at 57,537, 57,562. The Religious Exemption has been enjoined nationwide. *See Pennsylvania v. Trump*, 351 F. Supp. 3d 791 (E.D. Pa. 2019), *aff'd sub nom Pennsylvania v. President United States*, No. 17-3752, __ F.3d __, 2019 WL 3057657 (3d Cir. July 12, 2019).

For these reasons, the Court holds that Nevada has not demonstrated Article III standing to enforce the contraceptive mandate against Plaintiffs' RFRA challenge based on an imminent fiscal injury that would be fairly traceable to granting Plaintiffs the relief they seek.[4] Although Nevada's alleged injury could be redressed by the relief it seeks at this time, Nevada has failed to meet the other requirements to establish Article III standing, *i.e.* (1) an injury in fact which is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," and (2) that the injury is "fairly traceable to the challenged action…" *Lujan*, 504 U.S. at 560.

Even assuming, arguendo, that Nevada had satisfied the requirements of Article III standing to intervene as of right, Nevada has not shown it is entitled to intervene under the four-factor test summarized by the Fifth Circuit in *Texas v. United States*, 805 F.3d at 657. The Court addresses those factors next.

### 1.  Nevada's Motion to Intervene is Timely

The timeliness inquiry "is contextual; absolute measures of timelines should be ignored." *Wal-Mart*, 834 F.3d at 565 (quoting *Espy*, 18 F.3d at 1205). "Timeliness is not limited to chronological considerations but is to be determined from all the circumstances." *Id.* (internal quotation marks and citation omitted). After consideration of the parties' arguments and the circumstances presented, the Court concludes that Nevada's motion is timely, and rejects Plaintiffs' contention to the contrary.

---

[4] The State of Nevada is also barred from asserting the rights of its citizens in *parens patriae* against the federal government. *See Massachusetts v. Mellon*, 262 U.S. 447 (1923). "[I]t is the United States, and not the state, which represents them as *parens patriae*, when such representation becomes appropriate." *Id.* at 485–86. Nevada seeks to protect citizens from the application of RFRA and Plaintiffs' free exercise of religion, arguing that a RFRA exemption violates other laws. As the Supreme Court has confirmed, however, such a suit is precisely "what *Mellon* prohibits," namely a suit by a State "to protect her citizens from the operation of federal statutes." *Massachusetts. v. EPA*, 549 U.S. 497, 520 n.17 (2007).

The Court, at the behest of the parties, converted a potential motion for preliminary injunction into a motion for summary judgment and permanent injunction. *See* Order Amending Class-Certification Order 1, ECF No. 37. The parties briefed the issue the week of April 15th. *See* ECF Nos. 38–39. In its "Response to Plaintiffs' Motion for Summary Judgment and Permanent Injunction," the federal government stated it "do[es] not oppose an order by this Court entering partial summary judgment on the legal question whether any employers or individuals who in fact fall within the certified classes have stated a valid RFRA claim." Defs.' Resp. Pls.' Mot. Summ. J. 3, ECF No. 38. Nevada asserts that it would have been impossible to know the Court was considering summary judgment or a permanent injunction prior to the briefing on the merits concluding during those next nine days.   Nevada contends it only learned of the federal government's position in this case following the week of April 19th, after which it prepared the pending motion and proposed opposition to the pending motion for summary judgment.

For these reasons, and in light of the unique procedural developments, the Court finds that Nevada sought intervention without undue delay after learning of the federal government's position in this lawsuit. Accordingly, the Court concludes that Nevada's motion is timely. *See Espy*, 18 F.3d at 1205–06 (concluding intervention to appeal after entrance of injunction was timely because inadequacy of representation did not become apparent until then even though intervenor had actual knowledge of suit).[5]

---

[5] The Court notes that the State of Nevada did not attach an intervenor's answer or complaint as an exhibit to its Motion to Intervene. Plaintiffs submit that for this reason alone the Court should deny the Motion to Intervene, as Rule 24(c) requires that "[t]he motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." FED. R. CIV. P. 24(c). However, "[t]he circuits appear to be split in their approach to enforcement of Rule 24(c), with a majority favoring a permissive interpretation of the rule." *Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, 2017 WL 6059303, at *7 (E.D. Tex. Dec. 7, 2017) (citation omitted).  For example, the Fifth Circuit has permitted intervention even in the absence of a motion to intervene. *Farina v. Mission Inv. Tr.*, 615 F.2d 1068, 1075 (5th Cir. 1980) ("Although FDIC did not formally file a motion to intervene, as specified in Rule 24(c), it was within the discretion of the District Court to treat the motion to remove as

2.      Nevada Does Not Have a Protectable Interest

The Court now turns to whether Nevada satisfies the "interest" requirement of Rule 24(a)(2), which requires that intervenors "claim[ ] an interest relating to the property or transaction that is the subject of the action." FED. R. CIV. P. 24(a)(2). For the reasons that follow, the Court agrees with Plaintiffs that Nevada failed to satisfy this requirement.

The Fifth Circuit has held that Rule 24(a)(2) requires that an applicant to intervene have a "direct, substantial, legally protectable interest in the proceedings." *Texas*, 805 F. 3d at 657 (cleaned up). Whether an applicant has a legally protectable interest in the main action "turns on whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way. So, an intervenor fails to show a sufficient interest when he seeks to intervene solely for ideological, economic, or precedential reasons; that would-be intervenor merely prefers one outcome to the other." *Id.* Although defining a "legally protectable interest" can be a "a tautological exercise—a party may intervene if its interest is legally protectable and its interest is legally protectable if it can intervene"—the Fifth Circuit's cases provide guidance on what constitutes a sufficient interest for purposes of Rule 24(a)(2). *Wal-Mart*, 834 F.3d at 568.

Fifth Circuit precedent provides that an applicant holds a legally protectable interest if the applicant is subject to the regulations at issue in an action or if it is the beneficiary of the regulations at issue. *Id.* at 568–69; *Texas*, 805 F.3d at 660–61. For example, a non-profit organization holds a legally protectable interest when in the "unique" circumstance that the organization "engineered the drive that led to" the regulation at issue being enacted. *City of Houston v. Am. Traffic Sols., Inc.*, 668 F.3d 291, 294 (5th Cir. 2012). On the other hand, a "purely economic interest" is

---

also a motion to intervene, both of which were granted by the Court in its obvious acceptance of FDIC as a party in the suit.") In light of what appears to be a permissive interpretation of Rule 24(c) by the Fifth Circuit, the Court declines to preclude the State of Nevada's intervention on this basis.

insufficient. *NOPSI*, 732 F.2d at 466 (denying intervention to city officials in an action between a utility and a natural gas company based on the city official's interest in price it paid for gas); *see also Texas*, 805 F.3d at 658 (explaining that the *NOPSI* applicant's "generalized" interest was insufficient and observing that "every electricity consumer. . .yearns for lower electric rates.") (citation and quotation marks omitted).

The Court agrees with Plaintiffs that Nevada fails to establish it has a "direct, substantial, legally protectable interest in the proceedings." *See Texas*, 805 F.3d at 657. First, Nevada is asserting a mere economic interest not directly related this litigation, which is insufficient to warrant intervention under *NOPSI*, 732 F.2d at 466.[6]   Second, it has failed to establish a "direct" interest in the outcome of these proceedings.  Instead, as discussed in the standing section, Nevada argues that the classwide injunction Plaintiffs seek will have ripple effects, leading others to make choices that will ultimately result in an economic burden on the State. This is an attenuated interest. The Court agrees with Plaintiffs that "[t]hese effects on the State's fisc—even if one assumes that they will actually occur—are far too attenuated to qualify as a 'direct' interest in the outcome of this lawsuit." Pls.' Opp. Mot. Intervene 7, ECF No. 77. As the Court previously summarized *supra* in concluding that Nevada lacked standing, Nevada appears to argue that granting the Individual

---

[6] Nevada misinterprets the Fifth Circuit's decision in *Wal-Mart* when it argues that, following *Wal-Mart*, "mere economic interests can justify intervention." *See* Reply (ECF No. 82 at 5). In *Wal-Mart*, the Fifth Circuit stated that "NOPSI did not create a bar preventing all intervention premised on 'economic interests.' Such a rule would be inconsistent with Supreme Court precedent. Our own cases applying *NOPSI* have not imposed anything approaching the broad bar Wal-Mart advances. Those cases have instead suggested that an economic interest is not sufficiently direct when the intervenor's interest will only be vindicated by a separate legal action or, as in *NOPSI*, when the intervenor's relationship is too removed from the dispute. After *NOPSI*, we have continued to hold that economic interests can justify intervention when they are directly related to the litigation." 834 F.3d at 568 (internal citations and footnotes omitted). Here, as the Court describes in the subsequent section, Nevada fails to show that its economic interests are "directly related to this litigation."

Class and the Employer Class the relief they seek in the First Amended Complaint and subsequent

motions:

> will spark a chain of events via which it will eventually be injured economically
> due to impacts on public health and a drain on the public fisc. Nevada's theory of
> harm proceeds in steps: first, it argues that Plaintiffs' nationwide class and the
> permanent injunction, if granted, would circumvent existing federal statutes and
> allow employers to not provide contraceptive coverage, causing women in Nevada
> to lose their contraceptive coverage; second, Nevada argues that it will have to
> spend more on contraceptive access and corresponding increased hospital costs for
> unplanned pregnancies that would result; and third, it argues that the increase in
> Nevada women relying on publicly funded services would strain Nevada's existing
> family planning programs and providers in Nevada, making it more difficult for
> them to meet the current need. According to Nevada, some of these women will
> then obtain state-funded contraceptive services or prenatal and postnatal care for
> unintended pregnancies, and thus Nevada will incur costs as a result. As for those
> women who go forward with unintended pregnancies, Nevada asserts they are more
> likely to delay prenatal care, imperative to positive birth outcomes, thereby
> increasing Nevada's expenditures while harming the health of Nevada women. *See*
> Br. Supp. Mot. Intervene 5–7, ECF No. 62-1.

The Court agrees with Plaintiffs that "the 'increase in spending' that Nevada predicts would

not be the '*direct*' result of this Court's classwide injunction—even if one accepts Nevada's. . .

contention that this increased spending will occur." Pls.' Opp. Mot. Intervene 8, ECF No. 77.

The Court also concludes that Nevada has failed to establish a "substantial" interest in the

outcome of these proceedings because it does not estimate the amount of additional spending the

State will incur. For example, citing to the Declaration of Beth Handler, Nevada asserts that

"between 600 to 1,200 Nevadan women would be harmed from implementation of Plaintiffs'

proposed class relief." Br. Supp. Mot. Intervene 6, ECF No. 62-1 (citing App. Supp. Mot. Intervene

Ex. A. (Handler Decl. ¶ 5), App. 2, ECF No. 62-2.). The Court is unable to determine the basis for

this estimate. In its opening brief, Nevada asserts that the estimate was "based on the calculations

in the Federal Government's proposed Final Rules." Br. Supp. Mot. Intervene 6, ECF No. 62-1.

In its reply brief, Nevada contends the calculation "is simple math." *See* Reply Supp. Mot.

Intervene 4 n.4, ECF No. 82. The Court has reviewed the Religious Exemptions and Accommodations for Coverage of Certain Preventive Services Under the Affordable Care Act, 83 Fed. Reg. 57,536 (Nov. 15, 2018), and is unable to discern the basis for the calculations contained in Handler's Declaration. While the well-pleaded facts presented by Nevada are taken as true, the Court is not required to accept conclusory assertions. *See* 7A The Late Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1914 (3d ed. 2005) ("The general rules on testing a pleading are applicable here. The pleading is construed liberally in favor of the pleader-intervenor and the court will accept as true the *well-pleaded allegations* in the pleading.") (collecting cases) (emphasis added); *Gilyard v. Texas Laurel Ridge Hosp. LP*, 2009 WL 10670038, at *2 (W.D. Tex. Feb. 18, 2009) ("The Court must accept as true the *non-conclusory allegations* made in support of an intervention motion.") (emphasis added) (citing *Mendenhall v. M/V Toyota Maru No. 11*, 551 F.2d 55, 56 n.2 (5th Cir. 1977)); *see also Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001) ("[A] district court is required to accept as true the *non-conclusory allegations* made in support of an intervention motion.") (emphasis added); *Lake Inv'rs Dev. Grp. v. Egidi Dev. Grp.*, 715 F.2d 1256, 1258 (7th Cir. 1983) ("In evaluating the motion to intervene, the district court must accept as true the *non-conclusory allegations* of the motion and cross-complaint.") (citation omitted) (emphasis added); *Costa v. Marotta, Gund, Budd & Dzera, LLC*, 281 F. App'x 5, 9 (1st Cir. 2008) ("[A] court need only accept as true the *non-conclusory allegations* made in support of an intervention motion.") (cleaned up) (emphasis added)).

Even assuming that between 600 to 1,200 women would no longer have full contraceptive coverage as a result of the relief sought by Plaintiffs, "it still does not follow that any of these

14

women will make demands on the state's treasury in response to their employer's decision." Pls.'

Opp. Mot. Intervene 10, ECF No. 77.[7]

For the foregoing reasons, the Court determines that Nevada's asserted interests are

insufficient to warrant intervention as of right. To reiterate, intervention as of right requires a party

to have a "direct, substantial, legally protectable interest in the proceedings." *NOPSI*, 732 F.2d at

463. This Nevada has not shown. Moreover, courts have consistently found interests "too

contingent, speculative, or remote from the subject of the case" insufficient to justify intervention.

*Bear Branch, LLC v. HeartBrand Beef, Inc.*, 286 F.R.D. 313, 316 (S.D. Tex. 2012); *see also Texas

v. Dep't of Energy*, 754 F.2d 550, 552–53 (5th Cir. 1985); *NOPSI*, 732 F.2d at 454–55; *Adams v.

Consol. Wood Prods. Emp. Benefit Plan*, 2011 WL 665821 (E.D. Tex. Feb. 14, 2011).

At best, the State of Nevada asserts hypothetical, or future, interests. Those interests fail to

satisfy its burden, as they are not "direct, substantial" interests.

### 3.   The Disposition of this Action Will Impair or Impede Nevada's Ability to Protect Its Interests

In support of intervention, Nevada contends that if Plaintiffs prevail, the proposed

nationwide class would "impair or impede" its ability to protect its interest in the ACA's

contraceptive provisions. According to Nevada, "the mere *stare decisis* effects of the district

court's judgment" sufficiently impairs Nevada's interests to allow it to intervene now." Br. Supp.

Mot. Intervene 8, ECF No. 62-1. In their opposition brief, Plaintiffs do not specifically address

---

[7] The Departments included a regulatory impact analysis in the Interim Final Rules (the "Regulatory Impact Analysis"). *See* 82 Fed. Reg. at 47,815-28; 82 Fed. Reg. at 47,856-59. In their Regulatory Impact Analysis, the Departments estimated that, nationwide, between about 31,700 and 120,000 women would be affected by the expanded exemptions. *See* 82 Fed. Reg. at 47,821-23. In the event Plaintiffs may be referring the Regulatory Impact Analysis, it is still unclear how any national numbers yield estimates for Nevada alone, let alone an estimate that is reliable.

this argument. Accordingly, the Court concludes that Plaintiffs concede that Nevada has satisfied this factor.

> 4.   Nevada's Interests are Inadequately Represented by the Current Parties to the Action

With respect to the fourth element, the Court must determine whether the existing parties adequately represent Nevada's interests. *Brumfield v. Dodd*, 749 F.3d 339, 345 (5th Cir. 2014). This burden is "minimal," and a proposed intervenor meets the test by showing they "may be" inadequately represented. *Espy*, 18 F.3d at 1207. Although the Fifth Circuit has characterized the intervenors' burden as "minimal," *Wal-Mart*, 834 F.3d at 569 (quoting *Edwards v. City of Houston*, 78 F.3d 983, 1005 (5th Cir. 1996)), "it cannot be treated as so minimal as to write the requirement completely out of the rule." *Cajun Elec. Power Co-op., Inc. v. Gulf States Utils., Inc.*, 940 F.2d 117, 120 (5th Cir. 1991) (internal quotation marks omitted); *see Veasey v. Perry*, 577 F. App'x 261, 263 (5th Cir. 2014) ("[T]his requirement must have some teeth."). Accordingly, Fifth Circuit "jurisprudence has created two presumptions of adequate representation" that intervenors must overcome in appropriate cases. *Edwards*, 78 F.3d at 1005. One presumption arises when "the would-be intervenor has the same ultimate objective as a party to the lawsuit." *Id.* Another presumption arises "when the putative representative is a governmental body or officer charged by law with representing the interests of the [intervenor]." *Id.* If the "same ultimate objective" presumption applies, "the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party to overcome the presumption." *Id.* Similarly, if the government-representative presumption applies, the intervenor must show "that its interest is in fact different from that of the [governmental entity] and that the interest will not be represented by [it]." *Id.* (alterations in original) (internal quotation marks omitted). Here, it is clear that Nevada does not have the same ultimate objective as Defendant and, therefore, no presumption of adequate

16

representation applies. Accordingly, the Court concludes that Nevada is not adequately represented by any party to this lawsuit.

But because all four factors have not been met, intervention as a matter of right is denied. Accordingly, the Court **DENIES** Nevada's Rule 24(a) motion.

### B.        Permissive Intervention (Rule 24(b))

Nevada alternatively moves for intervention under Rule 24(b), which provides that "[o]n timely motion, the court may permit anyone to intervene who: (A) is given a conditional right to intervene by a federal statute; or (B) has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1). The Fifth Circuit has also instructed that "[f]ederal courts should allow intervention where no one would be hurt and the greater justice could be obtained." *Texas*, 805 F.3d at 657 (citing *Espy*, 18 F.3d at 1205). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3). Permissive intervention under Rule 24(b) "is wholly discretionary with the [district] court. . .even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied." *Kneeland*, 806 F.2d at 1289.

First, as discussed above, Nevada's Motion to Intervene was timely. As to the second factor, however, the Court concludes that Nevada failed to assert a *claim* or *defense* that shares a common question of law or fact with the main action. FED. R. CIV. P. 24(b). In its brief, Nevada's summary of Rule 24(b) omits mention of the "claim or defense" language, stating: "Rule 24(b). . .permits the Court to use its discretion to grant intervention when the application is timely, there is a common question of law or fact, and there will be no undue delay or prejudice to the original parties." *See* Br. Supp. Mot. Intervene 10, ECF No. 62-1. While Nevada contends in its Motion

17

to Intervene that it shares a common question of law, namely, whether the contraceptive mandate

violates RFRA, this is not the equivalent of having "*a claim or defense*" that shares with the main

action "a common question of law or fact," as required by Rule 24(b). On this point, Plaintiffs

argue persuasively:

> Nevada has no "claim" because it is not suing any of the litigants. And Nevada has
> no "defense" because it will not be required to do anything—nor will it be
> restrained from doing anything—by the relief that the plaintiffs are seeking against
> the federal government. *See* Caleb Nelson, *Intervention*, 106 Va. L. Rev.
> (forthcoming April 2020) ("[A] 'defense' is a particular type of legal argument that
> the targets of a claim assert to explain why the court should not grant relief against
> them."), available at https://ssrn.com/abstract=3380589; *Amchem Products, Inc. v.
> Windsor*, 521 U.S. 591, 623 n.18 (1997) ("The words 'claims or defenses' . . . in
> the context of Rule 24(b)(2) governing permissive intervention—manifestly refer
> to the kinds of claims or defenses that can be raised in courts of law as part of an
> actual or impending law suit." (citation and internal quotation marks omitted)).
> Nevada does not "have" a claim or defense against any of the litigants, so it has no
> grounds for permissive intervention.

Pls.' Opp. Mot. Intervene 17–18, ECF No. 77.  In its reply brief, Nevada contends for the first time

that its "claim or defense in this case is simple and clear from the face of its filings: Plaintiffs are

not entitled to the relief they seek because the challenged ACA preventive health care coverage

provisions comply with RFRA, as previously analyzed by the Fifth Circuit *in East Texas Baptist

Univ. v. Burwell*, 793 F.3d 449 (5th Cir. 2015) (vacated on other grounds)." Reply Supp. Mot.

Intervene 2, ECF No. 82.

      The Court rejects Nevada's argument that it has asserted a "claim or defense" for purposes

of permissive intervention into this lawsuit. The words "claim or defense" in the context of Rule

24(b) have been interpreted by the Supreme Court as follows:

> The words "claim or defense" manifestly refer to the kinds of claims or defenses
> that can be raised in courts of law as part of an actual or impending law suit, as is
> confirmed by Rule 24(c)'s requirement that a person desiring to intervene serve a
> motion stating "the grounds therefor" and "accompanied by a pleading setting forth
> the claim or defense for which intervention is sought.". . . [Permissive intervention]
> plainly does require an interest sufficient to support a legal claim or defense which

is "founded upon [that] interest" and which satisfies the Rule's commonality requirement.

*Diamond v. Charles*, 476 U.S. 54, 76-77 (1986) (O'Connor, J., concurring in part and concurring in judgment); *see also* Caleb Nelson, *Intervention*, 106 Va. L. Rev. (forthcoming April 2020) ("If [claim and defense] mean the same thing in Rule 24(b) that they mean elsewhere in the Federal Rules of Civil Procedure, then an outsider cannot use Rule 24(b) to become a party to a case simply because the outsider has a practical stake in the outcome.  Instead, the outsider needs to be a proper party to a claim for relief.").

Nevada simply has no claim or defense in this sense. It asserts no actual, present interest that would permit it to sue or be sued by the parties or anyone else, in an action sharing common questions of law or fact with those at issue in this litigation. The Court recognizes it has the discretion to nevertheless grant permissive intervention but declines to do so on the record before it. While no party technically "would be hurt," some delay would ensue due to the further briefing that would be required for the parties to respond to Nevada's opposition brief.  Under these circumstances, the Court cannot conclude that "greater justice could be obtained" by allowing permissive intervention. *See Texas*, 805 F.3d at 657 (citing *Espy*, 18 F.3d at 1205).

The Court therefore exercises its discretion and **DENIES** the State of Nevada's motion to intervene under Rule 24(b).

## C.     Nevada's Proposed Brief Opposing Plaintiffs' Motion for Summary Judgment and Permanent Injunction

Although the Court denied Nevada's Motion to Intervene, the Court will consider Nevada's Proposed Brief Opposing Plaintiffs' Motion for Summary Judgment and Permanent Injunction as if its motion were granted out of an abundance of caution.  *See* App. Supp. Mot. Intervene Ex. E (Prop. Br. Opposition Pls.' Mot. Summ. J.), App. 56–80, ECF No. 62-2.

Relying heavily on the Fifth Circuit's decision in *East Texas Baptist*, Nevada contends that the Individual Class and the Employer Class are not entitled to summary judgment or a permanent injunction, asserting:

> This Circuit has previously analyzed the acts required to comply with the "accommodation" provided for under the Contraception Mandate in *E. Tex. Baptist Univ. v. Burwell*, 793 F.3d 449 (5th Cir. 2015), *vacated, Zubik*, 136 S. Ct. 1557, 1561 (2016). There, this Circuit held that "the acts [objectors] are required to perform do not include providing or facilitating access to contraceptives." *Id.* at 459. Accordingly, because "RFRA confers no right to challenge the independent conduct of third parties," [this Circuit joined other circuits]in concluding that the plaintiffs have not shown a substantial burden on their religious exercise." *Id.* Stated differently, this Circuit held that "RFRA does not entitle [objectors] to block third parties from engaging in conduct with which they disagree." *East Texas Baptist University*, 793 F.3d at 461.

*Id.* at 8. According to Nevada, Plaintiffs mistakenly ignore the holding in *East Texas Baptist*. The Court rejects Nevada's argument.

At the May 29, 2019 hearing on Plaintiffs' Motion for Summary Judgment and Permanent Injunction, the Court questioned counsel at length concerning the effect of the *East Texas Baptist* decision on the pending motion. After considering counsel's responses to the Court's questions on this issue, as well as the regulatory changes since the decision was published, the Court articulated at length "why the reasoning of the vacated opinion addresses facts that are different tha[n] what is presented here." Order 13–18, ECF No. 76. Nothing in Nevada's proposed opposition brief persuades the Court that its reasoning is faulty with respect to *East Texas Baptist*. Accordingly, for the reasons set forth in its June 5, 2019 Order, the Court rejects Nevada's arguments in opposition to Plaintiffs' Motion for Summary Judgment and Permanent Injunction that are predicated on its understanding of the holding in *East Texas Baptist*, and its impact on the outcome of this case. *See id*.

In addition to arguing that Plaintiffs misinterpret and ignore existing Fifth Circuit precedents, Nevada contends that Plaintiffs are not entitled to summary judgment because: (1) the contraceptive mandate does not substantially burden the religious freedom of members of the certified classes; (2) there is a compelling governmental interest in ensuring equal access to preventive health care, including contraception; and (3) present law accommodates these competing interest through the least restrictive means possible. The Court rejects these arguments for the reasons set forth in its June 5, 2019 Order. *See id.* at 11–27.

Moreover, under the plain language of RFRA, Nevada's contention that the federal government has a "compelling government interest" or that the contraceptive mandate represents the "least restrictive alternative" is of no moment. As Plaintiffs point out, RFRA assigns the burden of proof on these questions to the federal government. Pls.' Opp. Mot. Intervene 20, ECF No. 77. The statute provides that the federal government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a). If the government substantially burdens a person's exercise of religion, that person is entitled to an exemption from the rule unless the Government "demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.* § 2000bb-1(b). "[T]he term 'government' includes a branch, department, agency, instrumentality, and official (or person acting under color of law) of the United States, or a covered entity[.]" *Id.* § 2000bb-2.

The text of the statute makes plain that only the federal government can "demonstrate" that this burden is "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.* § 2000bb-1(b). For this reason, Nevada's argument that the contraceptive mandate, insofar that it burdens the exercise of

religion, is justified under the strict scrutiny standard described in § 2000bb-1(b), is contrary to Defendant's position, and it is Defendant's obligation to carry this burden.[8]

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** the State of Nevada's Motion to Intervene (ECF No. 62). A final judgment will issue in a separate document.

**SO ORDERED** on this **29th day** of **July, 2019**.


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[8] The Department of Health and Human Services, the Department of Labor, and the Department of Treasury (the "Departments"), *not the individual states*, are responsible for implementing the ACA and issuing regulations requiring coverage of preventative services contained in the Health Resources and Services Administration's guidelines. The relevant statutory provisions enacted as part of the Health Insurance Portability and Accountability Act of 1996 (HIPAA) specify:

> The Secretary, consistent with section 104 of the Health [Insurance] Portability and Accountability Act of 1996, may promulgate such regulations as may be necessary or appropriate to carry out the provisions of this subchapter. The Secretary may promulgate any interim final rules as the Secretary determines are appropriate to carry out this subchapter.

26 U.S.C. § 9833; 29 U.S.C. § 1191c; 42 U.S.C. § 300gg-92. When enacting the ACA, Congress codified the contraceptive coverage requirement in the same chapters of the United States Code as those provisions. *See also* 45 C.F.R. § 147.130(a)(1)(iv) (DHHS regulation).